B 1 (Official Form 1) (4/10)

| United States Bankruptcy Court<br>District of Delaware | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Caribbean Petroleum Corporation** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**N/A** |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): **CAPECO** | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>**N/A** |
| Last four digits of Soc. Sec. or Indvidual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): **EIN 25-1407836** | Last four digits of Soc. Sec. or Indvidual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all):<br>**N/A** |

| Street Address of Debtor (No. and Street, City, and State):<br>**Road #28, Industrial Luchetti**<br>**Bayamón, Puerto Rico**     ZIP CODE **00961** | Street Address of Joint Debtor (No. and Street, City, and State):<br>**N/A**     ZIP CODE |
|---|---|
| County of Residence or of the Principal Place of Business: **Bayamón** | County of Residence or of the Principal Place of Business:<br>**N/A** |
| Mailing Address of Debtor (if different from street address):<br>**PO Box 361988**<br>**San Juan, Puerto Rico**     ZIP CODE **00936** | Mailing Address of Joint Debtor (if different from street address):<br>**N/A**     ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above): **N/A**     ZIP CODE | |

| Type of Debtor<br>(Form of Organization)<br>(Check one box.) | Nature of Business<br>(Check one box.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☒ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in<br>11 U.S.C. § 101(51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other  <u>Import, offloading, storage and</u><br><u>distribution of petroleum products</u> | ☐ Chapter 7    ☐ Chapter 15 Petition for<br>☐ Chapter 9        Recognition of a Foreign<br>☒ Chapter 11      Main Proceeding<br>☐ Chapter 12    ☐ Chapter 15 Petition for<br>☐ Chapter 13      Recognition of a Foreign<br>               Nonmain Proceeding |

Tax-Exempt Entity
(Check box, if applicable.)

☐ Debtor is a tax-exempt organization
under Title 26 of the United States
Code (the Internal Revenue Code).

Nature of Debts
(Check one box.)

☐ Debts are primarily consumer    ☒ Debts are primarily
debts, defined in 11 U.S.C.        business debts.
§ 101(8) as "incurred by an
individual primarily for a
personal, family, or house-
hold purpose."

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached.<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach<br>signed application for the court's consideration certifying that the debtor is<br>unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br><br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to<br>insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of<br>creditors, in accordance with 11 U.S.C. § 1126(b) |

| Statistical/Administrative Information | THIS SPACE IS FOR<br>COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for<br>distribution to unsecured creditors. | |

Estimated Number of Creditors (Consolidated with affiliated Debtors)

| ☐<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☒<br>200-999 | ☐<br>1,000-<br>5,000 | ☐<br>5,001-<br>10,000 | ☐<br>10,001-<br>25,000 | ☐<br>25,001-<br>50,000 | ☐<br>50,001-O<br>100,000 | ☐<br>ver<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets (Consolidated with affiliated Debtors)

| ☐<br>$0 to $50,000 | ☐<br>0,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☒<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities (Consolidated with affiliated Debtors)

| ☐<br>$0 to $50,000 | ☐<br>0,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☒<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): **Caribbean Petroleum Corporation** | |
|---|---|---|

| All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: **See Attached Schedule 1** | Case Number: **See Attached Schedule 1** | Date Filed: **See Attached Schedule 1** |
| Location<br>Where Filed: **N/A** | Case Number: **N/A** | Date Filed: **N/A** |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor: **See Attached Schedule 2** | Case Number: **Pending** | Date Filed: **August 12, 2010** |
| District: **District of Delaware** | Relationship: **Affiliates** | Judge: **Pending** |

| Exhibit A | Exhibit B |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>**NOT APPLICABLE**<br><br>☐  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>**NOT APPLICABLE**<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>    Signature of Attorney for Debtor(s)     (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☒  Yes, and Exhibit C is attached and made a part of this petition.

☐  No.

**Exhibit D**

**NOT APPLICABLE**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

    ☐  Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

    ☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor – Venue**
(Check any applicable box.)

    ☒  Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

    ☒  There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

    ☐  Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

    ☐  Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

        _____
            (Name of landlord that obtained judgment)

        _____
            (Address of landlord)

    ☐  Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was enforced, and

    ☐  Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

    ☐  Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

| Voluntary Petition | Name of Debtor(s): **Caribbean Petroleum Corporation** |
| *(This page must be completed and filed in every case.)* | |

Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X _____<br>Signature of Debtor | X _____<br>(Signature of Foreign Representative) |
| X _____<br>Signature of Joint Debtor | _____<br>(Printed Name of Foreign Representative) |
| _____<br>Telephone Number (if not represented by attorney) | _____<br>Date |
| Da*'- | |

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|
| X _____<br>Signature of Attorney for Debtor(s)<br><br>Mark D. Collins (No. 2981)          George A. Davis<br>Printed Name of Attorney for Debtor(s)<br><br>Richards, Layton & Finger, P.A.    Cadwalader, Wickersham & Taft LLP<br>Firm Name<br><br>One Rodney Square                  One World Financial Center<br>Address<br><br>Wilmington, DE 19801               New York, NY 10281<br>Telephone Number<br><br>(302) 651-7700                     (212) 504-6000<br><br>_____<br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br><br>_____<br>Address<br><br>X _____<br>_____<br>Date |
| **Signature of Debtor (Corporation/Partnership)** | Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above. |
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Authorized Individual<br><br>Nicolás López Peña<br>Printed Name of Authorized Individual<br><br>Chief Financial Officer<br>Title of Authorized Individual<br><br>August 12, 2010<br>Date | Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

## Schedule 1

Caribbean Petroleum Corporation has not commenced a case under title 11 of the United States Code (the "Bankruptcy Code") within eight years of the date of the attached voluntary petition. However, on December 17, 2001, predecessors in interest of Caribbean Petroleum Corporation and certain of its affiliates commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases are currently open and pending before United States Bankruptcy Court Judge Kevin Gross. The debtors and respective case numbers in those cases are: Caribbean Petroleum LP (Case No. 01-11657-KG); Caribbean Oil LP (Case No. 01-11659-KG); Caribbean Petroleum Refining LP (Case No. 01-11658-KG); Gulf Petroleum (Puerto Rico) Corporation (Case No. 01-11661-KG); and Caribbean Petroleum Corporation (Case No. 01-11660-KG). On March 13, 2003, the Court entered an order confirming the "Fourth Amended Joint Plan of Reorganization of Caribbean Petroleum LP, Caribbean Oil LP, Caribbean Petroleum Refining LP, Gulf Petroleum (Puerto Rico) Corporation and Caribbean Petroleum Corporation Under Chapter 11 of the Bankruptcy Code" (the "Plan"), and on March 24, 2003, the Plan became effective.

## Schedule 2

**PENDING BANKRUPTCY CASES CONCURRENTLY FILED BY THIS DEBTOR AND AFFILIATED DEBTORS IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| Name of Debtor: | Case No. | Date Filed: |
|---|---|---|
| Caribbean Petroleum Corporation | 10-_____ (   ) | August 12, 2010 |
| **District:** | **Relationship:** | **Judge:** |
| District of Delaware | Affiliate | Pending |

| Name of Debtor: | Case No. | Date Filed: |
|---|---|---|
| Caribbean Petroleum Refining, L.P. | 10-_____ (   ) | August 12, 2010 |
| **District:** | **Relationship:** | **Judge:** |
| District of Delaware | Affiliate | Pending |

| Name of Debtor: Gulf Petroleum Refining (Puerto Rico) Corporation | Case No. | Date Filed: |
|---|---|---|
| | 10-_____ (   ) | August 12, 2010 |
| **District:** | **Relationship:** | **Judge:** |
| District of Delaware | Affiliate | Pending |

On the date hereof, each of the affiliated entities listed above (including the debtor in this chapter 11 case) filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). A motion has been filed with the Court requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------x

In re

CARIBBEAN PETROLEUM CORP.,

                          Debtor.

:    Chapter 11

:

:    Case No. 10-_____ ( )

:

:    Joint Administration Requested

---------------------------------------------------------------------x

## EXHIBIT "C" TO VOLUNTARY PETITION

        1.     Identify and briefly describe all real or personal property owned by or in possession of the debtor that, to the best of the debtor's knowledge, poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

        Caribbean Petroleum Corporation, Caribbean Petroleum Refining, L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation (collectively, the "Debtors") own and operate certain facilities in Bayamón, Puerto Rico for the import, offloading, storage and distribution of petroleum products. The Debtors' facilities include, among other things, (i) the only privately-owned deepwater dock in San Juan Harbor (the "Dock"); (ii) a tank farm (the "Tank Farm") consisting of numerous petroleum storage tanks; (iii) six pipelines that connect the Dock to the Tank Farm; and (iv) a currently non-operational crude oil refinery. Certain of these facilities are the subject of a "Unilateral Administrative Order for Removal Activities," dated February 19, 2010 (the "EPA Order"), issued by the United States Environmental Protection Agency, in response to alleged environmental hazards attributable to explosions that occurred on and about October 23, 2009. These events and the subsequent remediation efforts are described in more detail in the EPA Order and the "Declaration of Nicolás López Peña in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings," filed concurrently herewith.

No statement contained herein constitutes an admission that any of the property owned by or in possession of the Debtors poses a threat of imminent and identifiable harm to the public health or safety.

2.　　With respect to each parcel of real property or item of personal property identified in question 1, describe the nature and location of the dangerous condition, whether environmental or otherwise, that poses or is alleged to pose a threat of imminent and identifiable harm to the public health or safety (attach additional sheets if necessary):

The explosions at the Debtors' facilities on and about October 23, 2009 resulted in severe damage to the Debtors' petroleum storage tanks, certain surrounding infrastructure, and fuel transfer pipelines, as well as certain alleged environmental hazards described in the EPA Order.

No statement contained herein constitutes an admission that any of the property owned by or in possession of the Debtors poses a threat of imminent and identifiable harm to the public health or safety.

**CARIBBEAN PETROLEUM CORPORATION**

**SECRETARY'S CERTIFICATE**

The undersigned does hereby certify on behalf of Caribbean Petroleum Corporation, a Delaware corporation (the "Company"), that:

1.      The undersigned has been duly elected, appointed and qualified and is presently serving as Secretary of the Company and, as such, is authorized to execute and deliver this Certificate on behalf of the Company;

2.      The Board of Directors of the Company, in accordance with the applicable provisions of the Delaware General Corporation Law and the bylaws of the Company, at a meeting held on *August 12*, 2010 duly adopted the following resolutions attached hereto as Exhibit A.

3.      The resolutions attached hereto as Exhibit A remain in full force and effect, and such resolutions have not been revoked, modified, amended or rescinded and are still in full force and effect.

IN WITNESS WHEREOF, I have hereunder set my hand on behalf of the Company and this Certificate is effective as of the _12th_ day of _August_, 2010.

CARIBBEAN PETROLEUM CORPORATION,
a Delaware corporation

By: _____
Name:  Silvestre M. Miranda
Title:   Secretary

# RESOLUTIONS OF THE
# BOARD OF DIRECTORS OF
# CARIBBEAN PETROLEUM CORPORATION

**WHEREAS**, the Board of Directors (the "Board") of Caribbean Petroleum Corporation (the "Company") has determined that it is desirable and in the best interests of the Company and its creditors, shareholders, employees, and other interested parties that a petition be filed by the Company, seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**NOW, THEREFORE, BE IT**

## Chapter 11 Case

**RESOLVED**, that the Company be, and hereby is, authorized and empowered to file a petition seeking relief under the provisions of chapter 11 of the Bankruptcy Code;

**RESOLVED**, that Dariush Lavian or Nicolás López Peña be, and hereby is, authorized and empowered to execute and verify all petitions for relief under chapter 11 of the Bankruptcy Code and accompanying first day filings and all related schedules and exhibits to the foregoing, and to cause the same to be filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

**RESOLVED**, that Dariush Lavian or any two of the Company's Chief Financial Officer, President, Comptroller, and any other person designated and so authorized to act by the Board (each an "Authorized Person" and collectively, the "Authorized Persons"), be, and hereby are, authorized and empowered, on behalf of and in the name of the Company, to negotiate, enter into, execute, deliver, certify, verify, file, record, and perform, or cause to be negotiated, entered into, executed, delivered, certified, verified, filed, recorded, and/or performed, any and all schedules, lists, motions, certifications, agreements, instruments, affidavits, applications, pleadings, and other documents and to take, or cause to be taken, such other actions, as in the judgment of such Authorized Persons shall be or become necessary, proper, or desirable in connection with the Company's chapter 11 case; provided, however, that documents related to debtor in possession financing, any sales of assets of the Company, the filing of any chapter 11 plan by the Company, and any other action customarily requiring approval of the Board will continue to require Board approval for such action to be binding on the Company;

## Debtor in Possession Financing

**RESOLVED**, that Dariush Lavian, on behalf of and in the name of the Company be, and hereby is, authorized to enter into (i) that certain commitment letter (the "DIP Facility Commitment Letter") from Banco Popular de Puerto Rico relating to a debtor in possession senior secured superpriority priming non-revolving, multi-draw credit facility in an aggregate principal amount up to $10,000,000 (the "DIP Facility"), among the Company, as a borrower, Gulf Petroleum Refining (Puerto Rico) Corporation, as a borrower ("Gulf"), Caribbean

Petroleum Refining, L.P., as a borrower ("CPRLP" and together with the Company and Gulf, collectively, the "Debtors"), and Banco Popular de Puerto Rico, as postpetition lender and (ii) the Summary of Principal Terms and Conditions for a $10,000,000 Senior Secured Superpriority Priming DIP Financing Facility (the "DIP Term Sheet"), among the Debtors and Banco Popular de Puerto Rico;

**RESOLVED**, that the Company, together with the other Debtors, be, and hereby is authorized and empowered to borrow, from Banco Popular de Puerto Rico loans in an aggregate principal amount of no more than $10,000,000;

**RESOLVED**, that the Company, as debtor and debtor in possession under chapter 11 of the Bankruptcy Code, be, and hereby is, authorized to obtain the use of cash collateral in such amounts as is reasonably necessary for the continuing conduct of the affairs of the Company and the other Debtors;

**RESOLVED**, that the Board has determined that the Company will receive substantial direct and indirect benefits from the loans and other financial accommodations to be made under the DIP Facility to the Company and the other Debtors;

## Retention of Advisors

**RESOLVED**, that the law firm of Cadwalader, Wickersham & Taft LLP be and hereby is employed as attorneys for the Company in the Company's chapter 11 case, subject to approval by the Bankruptcy Court;

**RESOLVED**, that the law firm of Richards, Layton & Finger, P.A. be and hereby is employed as attorneys for the Company in the Company's chapter 11 case, subject to approval by the Bankruptcy Court;

**RESOLVED**, that the firm of FTI Consulting, Inc. be and hereby is employed as financial and restructuring advisor for the Company in the Company's chapter 11 case, subject to approval by the Bankruptcy Court;

**RESOLVED**, that Kevin Lavin of FTI Consulting, Inc. be appointed as Chief Restructuring Officer of the Company and shall serve the Company as chief advisor with respect to the restructuring process with responsibilities and authorities set forth in the engagement letter attached hereto as Annex A and as otherwise customary for a role of this nature;

**RESOLVED**, that Roy Messing of FTI Consulting, Inc. be appointed as Restructuring Officer of the Company and shall serve the Company as advisor with respect to the restructuring process with responsibilities and authorities set forth in the engagement letter attached hereto as Annex A and as otherwise customary for a role of this nature;

**RESOLVED**, that the Authorized Persons be, and hereby are, authorized and empowered to employ and retain all assistance by legal counsel, accountants, financial advisors, restructuring advisors, and other professionals, subject to approval by the Bankruptcy Court, and to perform

any and all further acts and deeds the Authorized Persons deem necessary, proper, or desirable in furtherance thereof with a view to the successful prosecution of the Company's chapter 11 case;

## Other Authorization and Ratification

**RESOLVED**, that any of (i) Gad Zeevi as Chairman, Dariush Lavian as Chief Executive Officer, Nicolás López Peña as Chief Financial Officer, and Julio Hernández as Refining Manager, together with any of (ii) Emma Ortiz as Comptroller and Norberto Sepúlveda as Planning and Economic Manager (the "Authorized Bank Account Signatories"), are hereby authorized to sign any and all checks, drafts, and wire transfers as well as other orders for payment of money from the checking accounts maintained by the Company at Banco Popular de Puerto Rico or Banco Santander de Puerto Rico (such accounts, the "Checking Accounts");

**RESOLVED**, that any bank or trust company so designated as a depositary of the funds of the Company is hereby authorized to pay and debit all checks, drafts, and other orders for payment of money, when so signed by the Authorized Bank Account Signatories, and such bank or trust company is further authorized to receive and accept reconcilements of account when signed by any of the Authorized Bank Account Signatories, or by any person(s) designated by the Authorized Bank Account Signatories;

**RESOLVED**, that every act done or instruction given to any bank or trust company by the Authorized Bank Account Signatories shall be sufficient if evidenced by a writing signed by the Authorized Bank Account Signatories, and shall be binding upon the Company, and shall remain in full force and effect, until written notice of its revocation, either signed by the Authorized Bank Account Signatories, or in the form of a certificate of resolution of this Board, shall have been received at the office of the bank or trust company affected by such revocation; and

**RESOLVED**, that all actions taken by Dariush Lavian, Nicolás López Peña, or any Authorized Person prior to the date of the foregoing resolutions adopted at this meeting and within the authority conferred, are hereby ratified, confirmed, and approved in all respects as the act and deed of the Company.

**Annex A**



FTI Consulting
3 Times Square
11th Floor
New York, NY 10036
212.247.1010 telephone
212.841.9350 facsimile
www.fticonsulting.com

<u>PRIVATE & CONFIDENTIAL</u>

August 11, 2010

Caribbean Petroleum Corporation,
Caribbean Petroleum Refining, L.P.
Gulf Petroleum Refining (Puerto Rico) Corporation

Mr. Gad Zeevi
President
Caribbean Petroleum Corporation
Road 28, KM.2, Luchetti Industrial Park
Bayamón, Puerto Rico 00961

Mr. Dariush Lavian
Chief Executive Officer
Caribbean Petroleum Corporation
Road 28, KM.2, Luchetti Industrial Park
Bayamón, Puerto Rico 00961

Re:    Interim Management and Restructuring Services

Dear Messrs. Zeevi and Lavian:

1.    **Introduction**

This letter of engagement (the "Engagement"), and the related Standard Terms and Conditions included herewith (the "Engagement Contract"), sets forth the agreement between FTI Consulting, Inc. ("FTI"), and Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation (collectively, "you" or the "Company"), for the engagement of FTI to provide certain interim management and consulting services (the "Services") to the Company, to assist the Company in its restructuring efforts as described below.

2.    **Scope of Services**

The Services, to be performed at your direction, are expected to include the following:

- o Provide Kevin Lavin to serve as Chief Restructuring Officer of the Company ("CRO");
- o Provide Roy Messing to serve as Restructuring Officer of the Company ("RO");
- o Assist the Company in connection with its efforts to effectuate a restructuring pursuant to cases (the "Bankruptcy Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which Bankruptcy Cases may be commenced in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");
- o Lead a sale process for substantially all of the assets of the Company (collectively, the "Assets");
- o Negotiate, on behalf of the Company, proposals received for purchase of Company assets;
- o Provide, on behalf of the Company, testimony and affidavits in litigation/bankruptcy matters as required;
- o Assist the Company with the preparation of Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("SOFAS") as well as periodic reporting required in connection with the Bankruptcy Cases;
- o Assist the Company with the development and variance reporting of financial projections/budget, including a detailed 13-week cash flow forecast;
- o Advise and assist the Company in its communications with suppliers, customers, external media, lenders, creditors, and other parties in interest;
- o Assist in the management and rehabilitation of the Company's operations;
- o Assist in the development and negotiation by the Company of a chapter 11 Plan of Liquidation, related Disclosure Statement, and other court filings as necessary;
- o Coordinate the Company's communication efforts with all key constituents, including the Company's postpetition lender, Environmental Protection Agency, other government agencies as necessary, and their professionals, suppliers, creditors, the Bankruptcy Court and bankruptcy-related professionals; and
- o Perform other tasks as agreed to among the Company and FTI.

FTI will also provide the services of other temporary employees (the "Temporary Employees") to support Mr. Lavin in his role as CRO, and to support Mr. Messing in his role as RO, in the accomplishment of the Services in coordination with the Company's senior management and assigned permanent employees.

Services may be performed by FTI or by any subsidiary of FTI, as FTI shall determine. FTI may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to FTI and its employees shall be deemed to apply also, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

The Services, as outlined above, are subject to change as mutually agreed between us.

Our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities with the Company.

3.    **Fees; Cash on Account**

   **Fees**

   ***Monthly Fee***

   For services rendered in connection with this assignment, the Company agrees to pay FTI monthly, non-refundable advisory fees of $200,000 per month. Payment of such fees are due and payable on the first business day of each month.

   ***Completion Fee and Success Fee Component***

   *Completion Fee*

   Upon the earlier of consummation of a sale of substantially all assets of the Company pursuant to section 363 of the Bankruptcy Code (the "363 Sale"), or the Company's emergence from chapter 11, FTI shall be entitled to a completion fee of $400,000 (the "Completion Fee").

   *Success Fee*

   Upon consummation of the 363 Sale, FTI shall be entitled to a flat rate success fee to be calculated as a percentage of Aggregate Gross Consideration (the "Success Fee") as follows:

| Aggregate Gross Consideration ($ millions) | Success Fee (% of total Aggregate Gross Consideration) |
|---|---|
| <$50 | 0.00% |
| $50 - $75 | 2.75% |
| $75 - $100 | 3.00% |
| $100+ | 3.25% |

   Notwithstanding the foregoing, in no event shall the Success Fee exceed $3.4 million.

   For the purposes of this calculation, "Aggregate Gross Consideration" shall be defined as the total amount of cash and or non-cash paid or payable in consideration of the 363 Sale proceeds contemplated herein and shall include the assumption of liabilities only if such liabilities are valid and enforceable secured claims against the Company secured by liens senior to Banco Popular Puerto Rico prepetition liens.

   The Completion Fee shall be a credited against any Success Fee, unless (x) the Aggregate Gross Consideration is less than $50 million (in which case no Success Fee is payable) or (y) the Aggregate Gross Consideration exceeds $125 million (in which case the Completion Fee is payable but does not offset-reduce the amount of Success Fee).

   In addition to the fees outlined above, FTI will bill the Company for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.

**Cash on Account**

As of August 11, 2010, FTI has an amount of $49,539 to be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Cash on Account (as replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

The Company agrees and commits not to employ or extend an offer of employment to any principal or employee of FTI involved in this Engagement, except as in the roles defined herein, without prior approval of and coordination with FTI.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Cash on Account held by us and applied against the final fee application filed and approved by the court.

4. **Terms and Conditions**

The attached Standard Terms and Conditions set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5. **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by you, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and the administrative agent. As you may be aware, FTI is regularly retained by the law firm retained by the administrative agent. However, such representations are in matters unrelated to this engagement.

From the results of such review, we were not made aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. However, as you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. We will not knowingly accept an engagement that directly conflicts with this Engagement without your prior written consent.

6. **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Kevin Lavin at (212) 499-3660 or Roy Messing at (212) 499-3677.

Yours faithfully,


FTI CONSULTING, INC.

By:       Kevin Lavin
          Kevin Lavin
          Senior Managing Director

Attachment – As stated

**Confirmation of Signing and Initialing**

We agree to engage in the transaction under the Standard Terms and Conditions as outlined above.

Caribbean Petroleum Corporation

By: _____
    Mr. Gulf Zaven
    President

Date: _____

By: _____
    Mr. Dariush
    Chief Executive Officer

Date: _8_____

Caribbean Petroleum

By: _____
    Mr. Gulf Zaven
    President

Date: _____

By: _____
    Mr. Dariush
    Chief Executive Officer

Date: _8_____

Gulf Petroleum Refining Company Corporation

By: _____
    Mr. Gulf Zaven
    President

Date: _____

<u>**FTI CONSULTING, INC.**</u>

<u>**STANDARD TERMS AND CONDITIONS**</u>

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation dated August 11, 2010. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.      Reports and Advice**

1.1      **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided.

**2.      Information and Assistance**

2.1      **Provision of information and assistance** – Our performance of the Services is dependent upon your providing us with such information and assistance as we may reasonably require from time to time.

2.2      **Punctual and accurate information** – You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3      **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4      **Prospective financial information** – In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because

events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

## 3. Additional Services

3.1 **Responsibility for other parties** – The Company shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you, other than our agents or independent contractors engaged to provide Services, without your written authorization.

## 4. Confidentiality

4.1 **Restrictions on confidential information** – Both parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's consent. Confidential information shall include all information provided by the Company and or by any other legal or accounting firm on behalf of the Company, except for information that:

    4.1.1 is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1; or,

    4.1.2 is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, either party will be entitled to disclose confidential information of the other to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 5 business days' notice in writing is first given to the other party.

4.3 **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing and the Company may freely refer to the fact that it is receiving services from FTI.

4.4 **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews subject to such other FTI entity having been advised in writing of the confidential nature.

4.5 **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies.

## 5. Termination

5.1 **Termination of Engagement with notice** – Either party may terminate the Engagement Contract for whatever reason upon written notice to the other party. Upon receipt of such notice, we will stop all work immediately. You will be responsible for all fees (including Completion and Success Fees regardless of the timing of the 363 Sale or emergence from chapter 11). In addition, you will be responsible for expenses incurred by us through the date termination notice is received.

5.2 **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

## 6. Indemnification and Liability Limitation; Waiver of Jury Trial

6.1 **Indemnification** – You agree to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contactors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted.

6.2 **Limitation of liability** – You agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted. Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for indirect or punitive damages or other like damages.

6.3 **WAIVER OF JURY TRIAL** –TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

7.      **Governing Law and Jurisdiction** – The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.

FTI CONSULTING, INC

**Confirmation of** ............................ **......** Blong

We agree to engage .......................... ...... ............................ ..... ndard Terms and Conditions as outlined above.

Caribbean Petroleum ...........

By: _____
      Mr. Gatt .............
      President

Date: _____

By: _____
      Mr. Davies ............
      Chief Executive ......

Date: _____8_____

Caribbean Petroleum .............

By: _____
      Mr. Gatt .........
      President

Date: _____

By: _____
      Mr. Davies .............
      Chief Executive ......

Date: _____8_____

Gulf Petroleum Refining ................ Corporation

By: _____
      Mr. Gatt .......
      President

Date: _____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

In re : Chapter 11

CARIBBEAN PETROLEUM CORP., : Case No. 10-_____ ( )

Debtor. : Joint Administration Requested

-------------------------------------------------------------------x

## CONSOLIDATED LIST OF CREDITORS
## HOLDING 30 LARGEST UNSECURED CLAIMS

The following is a list of creditors holding the thirty (30) largest unsecured claims against the above-captioned debtor and certain affiliated entities that have simultaneously commenced chapter 11 cases in this Court (collectively, the "Debtors"), as set forth in Schedule 2 to the petition. This list has been prepared on a consolidated basis from the unaudited books and records of the Debtors. The list reflects amounts from the Debtors' books and records as of July 27, 2010. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in the Debtors' chapter 11 cases. This list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 30 largest unsecured claims. The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. Moreover, nothing herein shall affect the Debtors' right to challenge the amount or characterization of any claim at a later date.[1]

| Name of Creditor | Complete Mailing Address of Creditor Including Zip Code | Nature of Claim (trade debt, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim (If secured, also state value of security) |
|---|---|---|---|---|
| AOT Limited (a/k/a Astra Oil) | 301 Main Street Suite 201 Huntington Beach, CA 92648 | Arbitration Award | Disputed | $ 63,643,201.75 |
| Secretario de Hacienda | P.O. Box 9024140 Oficina 400A San Juan, PR 00902-4140 | Taxes | Disputed | $ 20,293,120.00 |

---

[1] The Debtors, in compiling this list, have not taken into account whether any creditors listed herein have or could have a valid mechanic's lien.

| | | | | |
|---|---|---|---|---|
| National Response Corp. | 3500 Sunrise Highway Suite 103 Great River, NY 11739 | Environmental | Disputed | $ 6,000,000.00 |
| Credit Suisse AG | Attn: Mr. Christian Sutter Eggbuhlstrasse 21-23 CH-8070 Zurich, Switzerland | Loan | | $ 2,600,000.00 |
| Centro de Recaudacione de Ingresos Municipales (CRIM) | P.O. Box 195387 San Juan, PR 00919-5387 | Property Tax | | $ 2,300,000.00 |
| William Morales Case | Attn: Lic. Pedro J. Saade Llorens USDC 11807 Edificio Esquire, Suite 402 Calle Vela #2 San Juan, PR 00918-3622 | Legal Case Settlement | | $ 2,190,000.00 |
| United States Coast Guard (working with the U.S. Environmental Protection Agency) | U.S. Coast Guard P.O. Box 70959 Charlotte, NC 28272-0959 <br><br> Chief - Water Compliance Branch Div. of Enforcement and Compliance Assistance Region II 290 Broadway New York, NY 10007 <br><br> Chief - RCRA Compliance Branch Div. of Enforcement and Compliance Assistance Region II 290 Broadway New York, NY 10007 <br><br> Chief Financial Management Branch Region II 290 Broadway New York, NY 10007-1866 <br><br> Office of Regional Counsel Waste and Toxic Substances Branch 290 Broadway New York, NY 10007 <br><br> Chief Environmental Enforcement Section | Environmental | | $ 2,126,952.06 |

| | | | | |
|---|---|---|---|---|
| | Environment and Natural Resources Division United States Department of Justice P.O. Box 7611 Ben Franklin Station Washington, D.C. 20044<br><br>U.S. EPA Office of Regional Counsel Centro Europa Building, Suite 207 1492 Ponce de Leon Ave, Stop 22 San Juan, PR 00907-4127 | | | |
| Gobierno Municipal de Bayamon | Attn: Oficina Director de Finanzas P.O. Box 1588 Bayamon, PR 00960-1588 | Municipal Licensing Fee | | $ 1,530,325.00 |
| Jesús F. Trillas Case | Attn: Lic. José A. Hernández Mayoral 206 Tetuan Suite 702 San Juan, PR 00902<br><br>Attn: Assoc. De Detallistas de Gasolina de Puerto Rico P.O. Box 193652 San Juan, PR 00919-3652 | Legal Case Settlement | | $ 790,000.00 |
| Chevron Texaco | 6001 Bollinger Canyon Road San Ramon, CA 94583-2324 | Trademark | | $ 600,000.00 |
| Landron & Vera, LLP | 100 CARR 165 Suite 203 Guaynabo, PR 00968-8048 | Professional Services | | $ 500,000.00 |
| Chemical Cleaning Engineering Specialists Inc. | P.O. Box 457 Toa Baja, PR 00951-0457 | Environmental | | $ 361,623.19 |
| Constructora Rodriguez Sevilla | BO. Hato Tejas Calle Volcan Calle Volcan Arena #299 Bayamon, PR 00961 | Dock Loading Arm Installation | | $ 197,360.50 |
| Caleb Brett USA, Inc. | P.O. Box 2790 Bayamon, PR 00960-2790 | Laboratory Services | | $ 181,700.96 |
| McConnell Valdes | P.O. Box 364225 San Juan, PR 00936-4225 | Legal Services | | $ 150,000.00 |
| Industrial Hydrovac Services | P.O. Box 7583 Ponce, PR 00732 | Refinery Maintenance Contractor | | $ 142,974.00 |
| Las Americas Petroleum Service | P.O. Box 38027 San Juan, PR 00937-0027 | Environmental Services at Service Stations | | $ 116,790.00 |

| | | | | |
|---|---|---|---|---|
| Kevane, Soto, Pasarell, Grant & Thorton | 33 Calle Bolivia 4th Floor San Juan, PR 00917 | Auditors | | $ 104,504.55 |
| El Dorado Tech Services | P.O. Box 361040 San Juan, PR 00936-1040 | Refinery Rehabilitation | | $ 101,548.86 |
| G4 Security Services, Inc. | P.O. Box 3952 Guaynabo, PR 00970-3952 | Security Services | | $ 72,276.76 |
| Geva Engineering Group Corp. | Urb. Las Cumbres 497 Ave. E. Pol Suite 651 San Juan, PR 00926 | Pipeline Painting Services | | $ 65,764.55 |
| Inversiones Caribe Delta | 406 Dorado Beach East Dorado, PR 00646 | Rent for Service Stations | | $ 54,307.50 |
| Test Environmental, Inc. | P.O. Box 270311 San Juan, PR 00927-0311 | Environmental Services at Stations | | $ 53,330.00 |
| PDCM Associates, S.E. | P.O. Box 190858 San Juan, PR 00919-0858 | Rent for Service Stations | | $ 43,303.60 |
| Purvin & Gertz, Inc. | 600 Travis Street Suite 2150 Houston, TX 77002-2979 | Refinery Appraisal | | $ 39,500.00 |
| Camioneros Cooperativa de Transporte | P.O. Box 13877 San Juan, PR 00908-3877 | Product Transportation | | $ 32,829.81 |
| Miguel A. Berrios, Inc. | Urb. Flamingo Hills 106 Calle 4 Bayamón, PR 00957 | Professional Services | | $ 32,400.00 |
| Anderson, Mulholland & Associates | 110 Corporate Park Drive White Plains, NY 10604 | Professional Services | | $ 28,193.36 |
| U.S. Trustee Payment Center | P.O. Box 70937 Charlotte, NC 28272 | Professional Services | | $ 27,950.00 |
| Comite de Energia de Puerto Rico y El Caribe Inc. | P.O. Box 361988 San Juan, PR 00936-1988 | Membership Fees | | $ 24,000.00 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------x

In re : Chapter 11

CARIBBEAN PETROLEUM CORP., : Case No. 10-_____ ( )

Debtor. : Joint Administration Requested

----------------------------------------x

## DECLARATION REGARDING LIST OF CREDITORS
## HOLDING THIRTY LARGEST UNSECURED CLAIMS

I, Nicolás López Peña, am authorized to sign on behalf of Caribbean Petroleum

Corporation, the debtor in this case (the "Debtor"), and I declare under penalty of perjury that I

have reviewed the list of creditors holding the thirty (30) largest unsecured claims against the

Debtor and certain affiliated entities that have simultaneously commenced chapter 11 cases in

this Court and that such list is true and correct to the best of my information and belief.

Dated: August 12, 2010

CARIBBEAN PETROLEUM CORPORATION,
a Delaware Corporation

By: _____
Name: Nicolás López Peña
Title: Chief Financial Officer, Caribbean
Petroleum Corporation

---------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| CARIBBEAN PETROLEUM CORP., | : Case No. 10-_____ ( ) |
| | : |
| Debtor. | : Joint Administration Requested |

---------------------------------------x

## DECLARATION REGARDING CREDITOR LIST

    I, Nicolás López Peña, am authorized to sign on behalf of Caribbean Petroleum Corporation, the debtor in this case (the "Debtor"), and I declare under penalty of perjury that I have reviewed the consolidated list of creditors of the Debtor and certain affiliated entities that have simultaneously commenced chapter 11 cases in this Court which has been submitted to the Court electronically, and that such list is true and correct to the best of my information and belief.

Dated: August 12, 2010

                      CARIBBEAN PETROLEUM CORPORATION,
                      a Delaware Corporation

                      By: _____
                      Name:  Nicolás López Peña
                      Title:  Chief Financial Officer, Caribbean
                                 Petroleum Corporation

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
```

| | |
|---|---|
| In re | Chapter 11 |
| CARIBBEAN PETROLEUM CORP., | Case No. 10-_____ ( ) |
| Debtor. | Joint Administration Requested |

```
------------------------------------------------------------x
```

### LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders, which is prepared in accordance with Fed. R. Bankr. P. 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities |
|---|---|---|
| Oil Resources International<br>C/o Ch Hausmann & Co.<br>5 De Walden Court<br>85 New Cavendish Street<br>London W1W 6XD<br>United Kingdom | Corporate Stock | 100% |

———————————————————————x

In re                         :      Chapter 11

CARIBBEAN PETROLEUM CORP.,     :      Case No. 10-_____ ( )

               Debtor.     :      Joint Administration Requested

———————————————————————x

## DECLARATION REGARDING LIST OF EQUITY SECURITY HOLDERS

I, Nicolás López Peña, am authorized to sign on behalf of Caribbean Petroleum Corporation, the debtor in this case (the "Debtor"), and I declare under penalty of perjury that I have reviewed the List of Equity Security Holders submitted herewith, and that it is true and correct to the best of my information and belief, with reliance on appropriate corporate officers.

Dated: August 12, 2010

By: _____
Name: Nicolás López Peña
Title: Chief Financial Officer, Caribbean
        Petroleum Corporation

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re | Chapter 11 |
| CARIBBEAN PETROLEUM CORP., | Case No. 10-____ ( ) |
| Debtor. | Joint Administration Requested |

---

## CORPORATE OWNERSHIP STATEMENT
## PURSUANT TO FED. R. BANKR. P. 1007(a)(1) AND 7007.1

Pursuant to Fed. R. Bankr. P. 1007(a)(1) and 7007.1, the undersigned authorized agent of Caribbean Petroleum Corporation declares under penalty of perjury that the following are entities that directly or indirectly own 10% or more of any class of Caribbean Petroleum Corporation's equity interests:

First Oil International, Ltd.
Oil Resources International
GTRIMG Ltd.
GTRIMG Foundation Vaduz

Dated: August 12, 2010

By: _____
Name: Nicolás López Peña
Title: Chief Financial Officer, Caribbean Petroleum Corporation