# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------x

In re                                    :     Chapter 11

                                         :

CARIBBEAN PETROLEUM CORP., et al.,[1]     :     Case No. 10-12553 (KG)

                                         :

              Debtors.                    :     Jointly Administered

                                         :     **Re: Docket No. 8**

--------------------------------------------------------------------x

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED FINANCING, (B) USE CASH COLLATERAL, (C) GRANT LIENS AND SUPERPRIORITY CLAIMS TO THE POSTPETITION LENDER, AND (D) PROVIDE ADEQUATE PROTECTION TO THE PREPETITION LENDER, (II) SCHEDULING A FINAL HEARING, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of Caribbean Petroleum Corporation ("CPC"),

Caribbean Petroleum Refining, L.P. ("CPR"), and Gulf Petroleum Refining (Puerto Rico)

Corporation ("GPC," and together with CPC and CPR, the "Debtors" or the "DIP

Borrowers"), each as debtor and debtor in possession in the above-captioned cases (the

"Cases"), seeking, pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2),

364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et*

*seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), this Court's authorization:

        (a)     for the Debtors to obtain credit and incur debt under a debtor in possession senior secured superpriority priming non-revolving, multi-draw credit sub-facility under the Revolving Loans (as defined in the Prepetition Loan Agreement (as defined below)) (the "DIP Facility") from Banco Popular de Puerto Rico ("BPPR") in its capacity as lender under the DIP Facility (the "Postpetition Lender") in an aggregate

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number) are: Caribbean Petroleum Corporation (7836), Caribbean Petroleum Refining, L.P. (1421), and Gulf Petroleum Refining (Puerto Rico) Corporation (1417). The service address for all Debtors is: PO Box 361988, San Juan, Puerto Rico 00936.

principal amount up to $10,000,000 to be made available on an interim basis on the terms set forth in the Summary of Principal Terms and Conditions, dated August 11, 2010, attached hereto as Exhibit 1 (the "DIP Term Sheet"),[2] and subsequent to the date of this Order and prior to entry of the Final Order (as defined below) on the terms and conditions set forth in definitive documentation evidencing the DIP Facility consistent with the DIP Term Sheet, including, without limitation, an amendment to the Prepetition Loan Agreement (as defined below) (as may be amended, amended and restated, modified or supplemented from time to time, the "Amendment"), and each DIP Borrower's obligation to pay the principal of, and interest on, the loans (each, a "DIP Loan" and collectively, the "DIP Loans") and other obligations under the DIP Facility to be evidenced by a promissory note duly executed and delivered by all of the DIP Borrowers substantially in the form of Annex B to the DIP Term Sheet (the "Note," and together with the DIP Term Sheet, the Amendment, and all other documents entered into in connection with the DIP Facility, the "DIP Documents"), with such DIP Facility and all DIP Obligations (as defined below):

(i)     having superpriority administrative claim status, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code; and

(ii)     being secured, pursuant to section 364(d)(1) of the Bankruptcy Code, by perfected first priority, priming security interests and liens in and on the Collateral (as defined below), not subject to subordination or any other liens, including without limitation the prepetition liens (the "Prepetition Loan Agreement Liens") granted to or for the benefit of BPPR (the "Prepetition Lender") under that certain Loan and Security Agreement, dated as of March 22, 2003 (as amended, restated, modified or supplemented from time to time, the "Prepetition Loan Agreement") by and between the Prepetition Lender (as assignee of Westernbank Puerto Rico), CPC and CPR, as borrowers, and certain guarantors, and the other Prepetition Loan Documents (as defined below), which liens in each case shall be primed and made subject and subordinate to the Priming DIP Liens (as defined below); provided, that the Priming DIP Liens shall be junior to the Permitted Prepetition Liens (as defined below); and

(iii)     being secured, pursuant to section 364(c)(2) of the Bankruptcy Code, by perfected first priority security interests and liens, not subject to subordination, in and on all Collateral (as defined below) that is not otherwise subject to a valid, perfected and unavoidable lien existing as of the Petition Date (as defined below); and

(iv)     being secured, pursuant to section 364(c)(3) of the Bankruptcy Code, by perfected security interests and liens, not subject to subordination, in and on all Collateral that is subject to the Permitted Prepetition Liens (as defined below), junior to such Permitted Prepetition Liens;

---

[2] Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the DIP Term Sheet.

in each case subject only to the Carve-Out (as defined below) and any exceptions for which the Postpetition Lender has provided its prior written consent.

(b)      for the Debtors to use the cash collateral (as defined in section 363 of the Bankruptcy Code, the "<u>Cash Collateral</u>") pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, and all other collateral on which the Prepetition Lender has a lien or security interest (together with the Cash Collateral, the "<u>Prepetition Collateral</u>") and pursuant to sections 105, 361, 362, 363 and 364 of the Bankruptcy Code provide to the Prepetition Lender the adequate protection set forth in the DIP Term Sheet of, and protection against any diminution in, the value as of the Petition Date (as defined below) of the Prepetition Lender's interests in the Prepetition Collateral resulting from the implementation of the DIP Facility and the priming of the Prepetition Lender's liens on the Prepetition Collateral to secure the DIP Facility as set forth herein, the use of the Cash Collateral and the use, sale or lease by the Debtors (or other decline in value) of the Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

(c)      modification of the automatic stay to the extent hereinafter set forth;

(d)      to schedule, pursuant to Bankruptcy Rule 4001, an emergency interim hearing (the "<u>Interim Hearing</u>") on the Motion for this Court to consider entry of an interim order annexed to the Motion as Exhibit B (i) authorizing the DIP Borrowers, on an interim basis, to borrow up to the aggregate amount of $3,663,500 from the Postpetition Lender under the DIP Facility, (ii) authorizing the Debtors to use Cash Collateral, and (iii) granting the liens and adequate protection hereinafter described; and

(e)      to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "<u>Final Hearing</u>") for this Court to consider entry of a final order authorizing such additional postpetition financing provided for in the Amendment and the other DIP Documents on a final basis and as set forth in the Motion (the "<u>Final Order</u>"); and

(f)      the granting of certain related relief.

The Interim Hearing having been held by this Court on August 16, 2010 and upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

RLF1 3599871v. 1

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Petition.*  On August 12, 2010 (the "Petition Date"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner and no statutory committee of unsecured creditors has yet been appointed in the Cases.  The Cases are being jointly administered for procedural purposes only under Case No. 10-12553 (KG).

2.     *Jurisdiction.*  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     *Notice.*  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on (i) the United States Trustee for the District of Delaware (the "U.S. Trustee"), (ii) the holders of the thirty largest unsecured claims against the Debtors on a consolidated basis, (iii) each of the Debtors' prepetition secured lenders, (iv) the Securities and Exchange Commission, (v) the United States Environmental Protection Agency, (vi) the Internal Revenue Service, and (vii) the United States Department of Justice.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein, and the Interim Hearing constitutes due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c), and no further notice is necessary or required.

RLF1 3599871v. 1

4.     *Objections*. All objections to the entry of this Order, if any, are resolved hereby or, to the extent not resolved, are overruled. The rights of all parties to object to the entry of the final order are reserved.

5.     *Amendment*. The DIP Facility is and shall be, and shall be deemed to be and shall be treated for all purposes as, a sub-credit facility under the revolving loan facility of the Prepetition Loan Agreement pursuant to the Amendment.  The only persons or entities liable for any repayment obligations incurred by the Debtors for funds advanced under the DIP Facility shall be the Debtors and any successor chapter 7 or chapter 11 trustee for any of the Debtors. The Guarantors and Personal Guarantors (each as defined in the DIP Term Sheet) shall incur no additional obligations as a result of the DIP Facility, this Order, the DIP Term Sheet, and the Amendment; and the Debtors' agreement to the foregoing and incurrence of obligations thereunder shall not impair or reduce any obligations of the Guarantors and Personal Guarantors in respect of the Prepetition Loan Agreement and amounts owed to the Prepetition Lender under the Prepetition Loan Agreement as of the Petition Date.  The DIP Facility and related amendments to be performed to the Prepetition Loan Agreement by the parties to the DIP Facility and Amendment are not intended to constitute an extinctive novation ("novación extintiva") of the obligations and undertakings of any of the parties under any of the Prepetition Loan Documents (as defined below), as amended to date, and each of the Debtors hereby agrees, consents to, confirms and acknowledges the foregoing.

6.     Failure by the Debtors and the Postpetition Lender to execute and deliver the Amendment shall not release the Debtors from any of their obligations under the DIP Facility, the DIP Term Sheet, the Note or this Order.

7.     *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 32 below), the Debtors jointly and severally admit, stipulate and agree that:

(a)     as of the Petition Date, (i) the Debtors were truly and justly indebted and liable to the Prepetition Lender, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $137 million in respect of loans made by the Prepetition Lender pursuant to, and in accordance with the terms of, the Prepetition Loan Agreement and related documents, including without limitation, all Financing Agreements and Security Agreements (each as defined in the Prepetition Loan Agreement) and all other related agreements, documents and instruments executed and/or delivered in connection therewith (all of the foregoing as all of the same have heretofore been amended, supplemented, modified, extended, renewed and/or replaced from time to time before the Petition Date, collectively, the "Prepetition Loan Documents"), plus accrued and unpaid interest thereon, fees, expenses (including attorneys fees and legal expenses) and other obligations incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Obligations"); and

(b)     the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and

(c)     the Debtors shall not assert any offsets, defenses or counterclaims to any of the Prepetition Obligations, no portion of the Prepetition Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy

Code or applicable nonbankruptcy law and the Prepetition Obligations constitute allowed secured claims; and

(d) the Debtors hereby forever release, effective upon entry of this Order, but subject to closing of the DIP Facility, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Prepetition Lender and its affiliates, agents, officers, directors, employees, attorneys and advisors with respect to the Prepetition Obligations and hereby waive, effective upon entry of this Order, but subject to closing of the DIP Facility, any right the Debtors may have to challenge or object to the Prepetition Obligations or the security for the Prepetition Obligations, and to bring or pursue any claims, objections, challenges and/or causes of action arising out of, based upon or related to the Prepetition Loan Agreement or otherwise; and

(e) as of the Petition Date, the liens and security interests granted to the Prepetition Lender pursuant to and in connection with the Prepetition Loan Documents (including, without limitation, all security agreements, pledge agreements, mortgages, leasehold mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of the Prepetition Lender) are (i) valid, binding, perfected, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) first priority liens on and security interests in the Prepetition Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject only to (A) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent that such permitted liens are senior to the liens of the Prepetition Lender on the

Prepetition Collateral in existence on or as of the Petition Date, and (B) subject to the Intercreditor Agreement (as defined below) and to the extent valid, perfected, and unavoidable, the liens granted to and for the benefit of Firstbank Puerto Rico (together with its successors and assigns, "Firstbank"), as lender under that certain Loan Agreement by and between Firstbank and CPR, dated as of December 2, 1998 (as amended, restated, modified or supplemented from time to time, the "Firstbank Prepetition Loan Agreement," together with other related documents, the "Firstbank Loan Documents") held as of the Petition Date on the dock property and pipelines of CPR as set forth in that certain mortgage recorded at page 165 of volume 191 of the Registry of the Property of Guaynabo, in each instance, only for so long as and to the extent that such liens set forth in clause (A) and (B) are and remain outstanding (clauses (A) and (B) together, the "Permitted Prepetition Liens");[3] and

(f)    the Prepetition Lender (as assignee of Westernbank Puerto Rico) and Firstbank are parties to that certain Intercreditor Agreement, dated as of March 24, 2003 (the "Intercreditor Agreement"), which Intercreditor Agreement is in full force and effect, is a binding obligation of the parties thereto, is enforceable in these Cases pursuant to section 510(a) of the Bankruptcy Code and governs the respective rights, obligations and priorities of the parties thereto with respect to the matters referred to therein; and

(g)    the Prepetition Lender shall not be required to file any proof of claim in these Cases with respect to any obligations under the Prepetition Loan

---

[3] Nothing herein shall constitute a finding or ruling by this Court that the Permitted Prepetition Liens are valid and perfected. Moreover, any party in interest including but not limited to the Debtors, the Postpetition Lender, the Prepetition Lender, Firstbank and the Committee (as defined below) may challenge the validity, perfection and extent of any such lien or security interest.

Agreement, the Debtors' acknowledgements set forth in this paragraph 7 shall be deemed a timely filed proof of claim on behalf of the Prepetition Lender on account of the obligations under the Prepetition Loan Agreement and any order entered by the Court in relation to the establishment of a bar date in any of the Cases will so provide.

8.     The Debtors jointly and severally amongst themselves acknowledge, represent, covenant, and agree with the Postpetition Lender that (i) the Debtors' obligation to pay in full the outstanding balance of principal of the loans and any other sums due to the Postpetition Lender under the DIP Facility and the Amendment and the other DIP Documents executed by the Debtors in connection thereto, including, without limitation, accrued interest under the DIP Facility, is valid, binding and enforceable in all respects; (ii) the Debtors' obligations under the DIP Facility and the Amendment, as well as any and all of the Debtors' other obligations under any of the other DIP Documents to which they are a party in connection with the DIP Facility and the DIP Documents are valid, binding and enforceable in all respects; and (iii) the Debtors' obligations to the Postpetition Lender under the DIP Documents are absolute and unconditional.

9.     Each of the Debtors hereby jointly and severally amongst themselves ratifies, reaffirms, confirms, consents to and acknowledges all the terms, priority and conditions of all security interests, mortgages or liens in or on the Collateral (as defined below) provided for in the DIP Documents and the Debtors' obligations under such documents, and further acknowledges that the Collateral (as defined below) secures and shall continue to secure, all of the Debtors' past, present and future obligations to the Postpetition Lender under the DIP Facility, the DIP Documents, this Order and the Final

Order. Each of the Debtors hereby agrees that all of the terms and conditions of the DIP Facility and the DIP Documents are hereby ratified and restated in all respects.

10. *Findings Regarding the DIP Facility.*

(a)  Good cause has been shown for the entry of this Order.

(b)  The Debtors have an immediate need to obtain the DIP Facility and use the proceeds of the DIP Loans and the Prepetition Collateral, including the Cash Collateral, for the purposes and on the terms set forth in the DIP Term Sheet in order to permit, among other things, (i) the marketing for sale of substantially all assets of the Debtors (the "363 Sale") and effectuation of the 363 Sale; (ii) carrying costs and limited startup costs attendant to the rehabilitation of tanks 101, 102, 103, 201 and related infrastructure located at the Debtors' tank farm in Bayamón, Puerto Rico that are necessary to restore service to the Puerto Rico Electric Power Authority (collectively, the "Rehabilitation"), in accordance with the DIP Budget; provided, that the DIP Loans, Cash Collateral and/or Collateral (as defined below) shall be used for the Rehabilitation (A) only in a manner satisfactory and agreeable to the Postpetition Lender and the Debtors and (B) subject to the consent of the United States Environmental Protection Agency; provided, further, that the DIP Loans, Cash Collateral and/or Collateral may not be used for the Rehabilitation if such Rehabilitation would reasonably be expected to result in administrative costs and expenses not provided for in the DIP Budget; (iii) payment of the Postpetition Lender's monthly interest, out-of-pocket costs, fees, and expenses related to the DIP Facility; (iv) employee wages and general corporate purposes of the Debtors during the pendency of the Cases; (v) payment of, or escrows/reserves for, budgeted professional fees of counsel and financial advisors to the DIP Borrowers, and

RLF1 3599871v. 1

the statutory committee of unsecured creditors appointed in the Cases (the "Committee"), incurred in connection with the administration and prosecution of the Cases in accordance with the DIP Budget; (vi) payment of the Adequate Protection Payments (as defined below); (vii) the adequate assurance deposit for the Debtors' utility providers, in an amount ordered by the Court (the "Adequate Assurance Deposit"); and (viii) payment of quarterly fees to the U.S. Trustee, in each instance subject to the Limitations (as defined below). The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary in order to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the value of their assets, to conduct an orderly sale process, and to propose and confirm a liquidating chapter 11 plan to maximize the value of the Debtors' estates for the benefit of creditors.

(c) The Debtors are unable to obtain financing on more favorable terms from sources other than the Postpetition Lender under the DIP Documents. The use of Cash Collateral alone would be insufficient to meet the Debtors' immediate postpetition liquidity needs. The Debtors are unable to obtain the required funds (i) in the forms of (A) unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, pursuant to section 364(a) or (b) of the Bankruptcy Code, (B) unsecured debt having the priority afforded by section 364(c)(1) of the Bankruptcy Code, or (C) debt secured only as described in section 364(c)(2) or (3) of the Bankruptcy Code or (ii) on terms more favorable than those offered by the Postpetition Lender under the DIP Documents and this Order.

(d) The terms of the DIP Documents and the use of Cash Collateral are fair, reasonable, the best available under the circumstances, and reflect the Debtors'

RLF1 3599871v. 1

exercise of prudent business judgment consistent with their fiduciary duties, and the DIP Loans provided for in the DIP Documents constitute reasonably equivalent value and fair consideration.

(e)  The DIP Documents and the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the Postpetition Lender and the Prepetition Lender, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the DIP Facility, including without limitation, all DIP Loans made to the Debtors pursuant to the DIP Facility and the DIP Obligations[4] shall be deemed to have been extended by the Postpetition Lender in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)  The Debtors have prepared and delivered to the Postpetition Lender and the Prepetition Lender a budget, which is annexed hereto as Exhibit 1 (the

---

[4] As used in the DIP Term Sheet, the other DIP Documents, this Order and the Final Order and any certificate or other document made or delivered pursuant hereto or thereto, the term "DIP Obligations" means (a) the due and punctual payment by the DIP Borrowers of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loans (as defined below) and interest accruing after the commencement of any case or proceeding by or against a DIP Borrower under any federal or state bankruptcy, insolvency, receivership or similar law, whether or not allowed in such case or proceeding) on the DIP Loans (as defined below), as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, fixed or otherwise, of any DIP Borrower to the Postpetition Lender under the DIP Term Sheet, the other DIP Documents, this Order and the Final Order, and (b) the due and punctual payment and performance of all covenants, agreements, obligations and liabilities of any DIP Borrower to the Postpetition Lender under or pursuant to the DIP Term Sheet, the other DIP Documents, this Order and the Final Order.

RLF1 3599871v. 1

"Budget") and incorporated herein. Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected information for the periods covered thereby. The Debtors represent that the Budget is achievable in accordance with the terms of the DIP Documents and this Order and will allow the Debtors to operate at all times during these Cases without the accrual of unpaid administrative expenses. The Postpetition Lender is relying upon the Debtors' compliance with the Budget in accordance with the DIP Documents and this Order in determining to enter into the postpetition financing arrangements provided for herein.

(g) The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). The ability of the Debtors to maximize the value of their estates in an orderly liquidation for the benefit of their creditors under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining postpetition financing, as provided for in the DIP Documents, and the use of Cash Collateral. Absent granting the interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Facility and the use of Cash Collateral in accordance with this Order and the DIP Documents is therefore in the best interest of the Debtors' estates.

(h) The Prepetition Lender has consented and agreed, subject to the terms and conditions contained herein and in the DIP Documents, that the Prepetition Loan Agreement Liens shall be subordinate and junior to the DIP Liens.

11. *Authorization of the DIP Facility and the DIP Term Sheet.*

(a) The DIP Term Sheet and the annexes and exhibits thereto are hereby approved as set forth in this Order and the Debtors are hereby authorized to obtain

RLF1 3599871v. 1

credit pursuant to the DIP Term Sheet and this Order pending entry of the Final Order, up to an aggregate principal amount of $3,663,500, which shall be used only for the purposes permitted under the DIP Term Sheet, including, without limitation, to pay interest, fees and expenses (including interest payments on the DIP Loans and fees and expenses of the Postpetition Lender and the Prepetition Lender), to pay amounts approved by other orders of this Court and to provide funding for the marketing and effectuation of the 363 Sale.

(b)     In furtherance of the foregoing and without further approval of the Court, each DIP Borrower is authorized to perform all acts and to execute and deliver all documents necessary for the DIP Borrowers' performance of their obligations under the DIP Documents and this Order.

(c)     The DIP Term Sheet, as approved by this Order, shall constitute the valid and binding obligation of the Debtors and the Postpetition Lenders, enforceable against the Debtors and the Postpetition Lenders in accordance with its terms and the terms of this Order.  No obligation, payment, transfer or grant of security under the DIP Term Sheet or this Order shall be stayed, subordinated, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 and 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(d)    The Postpetition Lender shall have no obligation to make any extension of credit under the DIP Facility unless all of the conditions precedent to the making of such extensions of credit under the DIP Term Sheet are satisfied in full.

12.    *Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve-Out to the extent specifically provided for herein.

13.    *DIP Liens.*  The DIP Obligations shall be secured by valid, binding, enforceable, non-avoidable and automatically perfected postpetition first priority liens (all such liens and security interests granted to the Postpetition Lender, pursuant to this Order and the DIP Facility, the "DIP Liens") on and security interests in and upon all prepetition and postpetition properties and assets of such DIP Borrower, whether owned on the DIP Closing Date or at any time thereafter acquired or created by such DIP Borrower or in which such DIP Borrower now has or at any time in the future may

15

acquire any right, title or interest (collectively, the "Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise, of such DIP Borrower's obligations under the DIP Facility, including but not limited to: (a) all the equity interests held by such DIP Borrower, (b) all intercompany notes, accounts receivable, any other liabilities or payment or repayment obligations, or other obligations owed to such DIP Borrower by any of its affiliates, (c) all of such DIP Borrower's interest in or right to insurance proceeds and payments of any kind under insurance policies, or otherwise, (d) the DIP Borrowers' rights under section 506(c) of the Bankruptcy Code, and (e) all tangible and intangible real (owned and leased) and personal property of such DIP Borrower (including but not limited to accounts, chattel paper, contracts, deposit accounts, goods, documents, inventory, equipment, general intangibles, investment property, intellectual property and intellectual property licenses, investment property, real property, cash, securities accounts, commercial tort claims, other claims, choses in action, causes of action, letter of credit rights, intercompany notes, leases, leasehold improvements, and all proceeds and supporting obligations, all books and records pertaining to the Collateral, and products and proceeds of any and all of the foregoing and all collateral security and guarantees given with respect to any of the foregoing),[5] all of the foregoing now owned or in which the Debtors have any interest (and without regard to whether acquired prior or subsequent to the Petition Date) or hereafter acquired or in which the Debtors obtain an interest and the products and proceeds thereof (including any action under sections

---

[5] The following terms which are defined in the Uniform Commercial Code in effect in the Commonwealth of Puerto Rico on the date hereof are used in this paragraph 13 as so defined: accounts, certificated security, chattel paper, commercial tort claims, documents, equipment, general intangibles, goods, instruments, inventory and supporting obligations.

544, 545, 547, 548 and 550 of the Bankruptcy Code (the "Avoidance Actions") and the proceeds thereof, subject to entry of the Final Order); provided, that, the Postpetition Lender shall receive a perfected first priority security interest in and lien on all of the DIP Borrowers' cash except for the Adequate Assurance Deposit. The DIP Liens shall be effective and perfected upon the date of this Order and without the necessity of the execution and recordation of filings by the Debtors of security agreements, control agreements, pledge agreements, financing statements or other similar documents, subject only in the event of the occurrence and during the continuance of an Event of Default to the Carve-Out (as defined below).

14. In no event shall (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, and (ii) any person or entity who pays (or through the extension of credit to any Debtor, causes to be paid) any of the DIP Obligations, be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted in favor of, or conferred upon the Postpetition Lender by the terms of the DIP Documents, this Order or the Final Order, until all of the DIP Obligations are indefeasibly paid in full in accordance with the DIP Documents, this Order and the Final Order.

15. *DIP Lien Priority.* The DIP Liens are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code and have the following priority:

(a) First Lien on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien, not subject to subordination, upon all Collateral that, on or as of the Petition Date is not subject to any valid, perfected

RLF1 3599871v. 1

and non-avoidable liens existing as of the Petition Date (collectively, "Unencumbered Property").

(b)    <u>Liens Priming Prepetition Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming security interest in and lien, not subject to subordination, upon all Collateral (the "<u>Priming DIP Liens</u>"). The Priming DIP Liens shall be senior in all respects to the liens of the Prepetition Lender upon such Collateral of the Prepetition Lender (including the Prepetition Loan Agreement Liens and the Adequate Protection Liens (as defined below)), but shall be junior to any Permitted Prepetition Liens on such Collateral existing immediately prior to the Petition Date.

(c)    <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and junior liens, not subject to subordination, upon all Collateral that is subject to valid, perfected, and unavoidable Permitted Prepetition Liens, if any, which security interests and liens in favor of the Postpetition Lender shall be junior only to such Permitted Prepetition Liens.

16.    *Liens Senior to Certain Other Liens*. The DIP Liens and the Adequate Protection Liens (as defined below) shall not be (i) subject, junior or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors or (ii) subordinated to or made <u>pari passu</u>

RLF1 3599871v. 1

with any other lien or security interest under section 363 or 364 of the Bankruptcy Code or otherwise.

17.    *Carve-Out.*  The collateral that is subject to the DIP Liens, the Adequate Protection Liens and the Prepetition Loan Agreement Liens shall be subject in all respects to the Carve-Out (as defined below).    The Carve-Out is subject to the Limitations (as defined below) and may not be used for any purpose described in paragraph 34 below.  The purpose of the Carve-Out is to provide from the proceeds of Collateral only the source of funding for accrued and unpaid professional fees of the Case Professionals (as defined below), to the extent allowed by the Court, incurred in the orderly wind-down of the DIP Borrowers' affairs and estates, following the earlier of (i) consummation of the 363 Sale and (ii) the occurrence of an Event of Default (as defined below) under or termination of the DIP Facility and the giving of a Carve-Out Trigger Notice (as defined below).

(a)    As used herein, the "Carve-Out" means an amount sufficient to satisfy (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, (ii) subject to the Limitations, all unpaid professional fees, expenses and disbursements of any professionals retained by the Debtors or the Committee (the "Case Professionals") incurred prior to receipt of a notice delivered by the Postpetition Lender expressly stating that the Carve-Out has been invoked (a "Carve-Out Trigger Notice"), and budgeted for under the DIP Budget and incurred prior to receipt of a Carve-Out Trigger Notice (x) only to the extent that such professional fees and disbursements do not exceed budgeted amounts and are and have been previously or subsequently allowed by the Court, and (y) only if (A) the Case

RLF1 3599871v. 1

Professionals make prompt and timely applications for allowance of such professional fees and disbursements as is hereby required by this Order, (B) the DIP Borrowers make prompt special requests for funding of allowed professional fees and disbursements immediately following entry of any orders allowing same, and (C) the DIP Borrowers pay immediately to such professionals proceeds of the DIP Facility that are funded to the DIP Borrowers for payment of such professional fees and disbursements, and (z) only if the DIP Borrowers and such professionals have complied timely with all such terms of this Order and the Final Order (and other orders of the Court governing allowance of compensation to the Case Professionals) prior to such Event of Default; and (iii) subject to the Limitations, and subject to entry of the Final Order providing that neither the Prepetition Lender nor the Postpetition Lender shall be subject to any Section 506(c) Claims (as defined below), all allowed unpaid fees and expenses of such Case Professionals (regardless of when allowed) incurred subsequent to the earlier of (x) receipt by the DIP Borrowers of a Carve-Out Trigger Notice and (y) consummation of the 363 Sale, in the amount of (A) $750,000, with respect to professional fees and expenses of counsel to the DIP Borrowers, (B) $250,000, with respect to professional fees and expenses of the financial advisor to the DIP Borrowers, (C) $350,000, with respect to professional fees and expenses of counsel to the Committee, and (D) $150,000, with respect to professional fees and expenses of the financial advisor to the Committee (clauses (A) – (D), collectively, the "Carve-Out Prospective Fee Caps"), in each case reduced by the amounts of any unapplied retainers held by the respective Case Professionals; provided, that the Carve-Out shall be reduced by and to the extent that property or proceeds of property that (1) is cash, a cash equivalent, or readily convertible

RLF1 3599871v. 1

to cash and (2) is not collateral of the Prepetition Lender, Firstbank and any other holder of an allowed secured claim against the Borrowers is available in the DIP Borrowers' estates to pay the professional fees and expenses identified above; provided, further, that the DIP Borrowers shall use reasonable best efforts to convert any such property to cash. Notwithstanding any other term of Section 20 of the DIP Term Sheet or any other term of the DIP Term Sheet, any other DIP Document, this Order or the Final Order, in the event that the DIP Borrowers seek and obtain replacement, additional or alternative postpetition and/or debtor-in-possession financing that replaces the DIP Facility or otherwise funds the Bankruptcy Cases following the Maturity Date, the Carve-Out shall be limited for all purposes to solely the fees and expenses set forth in clauses (i) and (ii) of this subparagraph 17(a) and not to any Carve-Out amounts set forth in clause (iii) of subparagraph 17(a). Neither the Postpetition Lender nor the Prepetition Lender shall be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals incurred in connection with the Cases under any chapter of the Bankruptcy Code, and nothing in the DIP Term Sheet or otherwise shall be construed to obligate the Postpetition Lender or the Prepetition Lender, in any way, to pay compensation to or to reimburse expenses of any professional, or to guarantee that the DIP Borrowers have sufficient funds to pay such compensation or reimbursement, it being understood that the rights of the Prepetition Lender and the Postpetition Lender to the proceeds of their Collateral shall be subject to the Carve-Out.

(b)     For the avoidance of doubt, so long as a Carve-Out Trigger Notice has not been delivered, or the 363 Sale has not been consummated, the Carve-Out Prospective Fee Caps shall not be reduced by the payment of fees or expenses allowed by

the Court (whether allowed before or after delivery of a Carve-Out Trigger Notice) and payable under sections 328, 330 or 331 of the Bankruptcy Code, or 28 U.S.C. § 156(c); provided, however that in the event that the DIP Borrowers seek and obtain replacement, additional or alternative postpetition and/or debtor-in-possession financing that replaces the DIP Facility or otherwise funds the Bankruptcy Cases following the Maturity Date, the Carve-Out shall not include the amounts specified in clause (iii) of the preceding paragraph 17(a) ; and provided further that the Carve-Out shall be limited for all purposes to solely the fees and expenses set forth in clauses (i) and (ii) of the preceding subparagraph 17(a) unless and until entry of the Final Order providing that neither the Prepetition Lender nor the Postpetition Lender shall be subject to any Section 506(c) Claim.

(c)      In connection with the Carve-Out, (i) the Case Professionals shall make prompt and timely applications for allowance of their respective professional fees and disbursements, (ii) the DIP Borrowers shall promptly submit Borrowing Requests for funding of allowed professional fees and disbursements immediately following entry of any orders allowing same, and (iii) the DIP Borrowers shall pay immediately to the Case Professionals any and all proceeds of the DIP Facility that are funded to the DIP Borrowers for payment of such Case Professionals' professional fees and disbursements. Nothing in this Order shall be construed to impair the ability of the Postpetition Lender, the Prepetition Lender or any other party to object to any of the fees, expenses, reimbursement or compensation described in clauses (i), (ii) and (iii) of paragraph 17(a) above.

RLF1 3599871v. 1

18. *Events of Default.* The occurrence or existence of any of the following events shall constitute an event of default under this Order and the DIP Term Sheet (each, an "Event of Default" and collectively, the "Events of Default"):

(a) The Final Order shall not have been entered by the Court, and the Amendment shall not have been executed and delivered by the DIP Borrowers and the Postpetition Lender, within 25 days after the date on which this Order has been entered; or

(b) The DIP Borrowers shall fail to pay any of the obligations under the DIP Facility on the due date thereof, subject to a five (5) business day grace period with respect to the payment of interest and fees; or

(c) Any representation, warranty or other written statement to the Postpetition Lender by any DIP Borrower or by an authorized representative on behalf of any DIP Borrower proves to have been false or misleading in any material respect when made (except that such materiality qualifier shall not be applicable to any representation, warranty or other written statement that already is qualified or modified by materiality in the text thereof) ; or

(d) Any DIP Borrower shall breach any covenant or obligation contained in the DIP Documents (subject to any applicable grace periods set forth in the DIP Term Sheet including Exhibit A thereto) or fail to comply with or fail to perform any of the terms, conditions or covenants or their obligations set forth in this Order or the Final Order; or

RLF1 3599871v. 1

(e)    The occurrence of any condition or event which permits the Postpetition Lender to exercise any of the remedies set forth in this Order or the Final Order, including any "Event of Default" (as defined in this Order or the Final Order); or

(f)    The occurrence of any event since the Petition Date that has or would reasonably be expected to have a material adverse effect on (a) the condition (financial or otherwise), businesses, operations or property of the DIP Borrowers, taken as a whole, (b) the ability of any DIP Borrower to fully and timely perform its respective obligations under the DIP Documents, this Order or the Final Order, or (c) the legality, validity, binding effect or enforceability of any of the DIP Documents or the rights and remedies of the Postpetition Lender under any of the DIP Documents, this Order or the Final Order; provided, that (x) the filing of the Bankruptcy Cases and (y) any events of default occurring under the Prepetition Loan Agreement shall not be taken into consideration (a "Material Adverse Change"); or

(g)    Prior to consummation of a 363 Sale, the ownership of any DIP Borrower shall change from that set forth on the Organizational Chart; or

(h)    Any DIP Borrower or any of its affiliates shall challenge in any action the validity or enforceability of any of the DIP Documents, the enforceability of the obligations thereunder, or the perfection or priority of any lien granted to the Postpetition Lender or any of the DIP Documents ceases to be in full force or effect; or

(i)    Any DIP Borrower or officer of any DIP Borrower shall be convicted under any criminal law that could reasonably be expected to result in a forfeiture of any property of such DIP Borrower; or

RLF1 3599871v. 1

(j)     A trustee or an examiner with enlarged powers relating to the operation of the business of any DIP Borrower (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code), shall be appointed in any of the Bankruptcy Cases; or

(k)     Any lien on any of the Collateral or superpriority claim which is pari passu with or senior to the DIP Liens or Superpriority DIP Claims of the Postpetition Lender shall be granted  (other than the Carve-Out) or any DIP Borrower shall file a motion seeking approval of any such lien or superpriority claim; or

(l)     Other than payments authorized by the Court in respect of one or more "first day" or other orders reasonably satisfactory to the Postpetition Lender and the DIP Borrowers, the DIP Borrowers shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness or payables; or

(m)     The Court shall enter an order granting relief from the automatic stay (i) to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of any DIP Borrower which have an aggregate value in excess of $50,000, or (ii) to permit other actions that would reasonably be expected to result in a Material Adverse Change; or

(n)     Any material provision of any DIP Documents shall cease to be valid or binding on any DIP Borrower, or any DIP Borrower shall so assert in any pleading filed in any court; or

(o)     Any order shall be entered reversing, amending, supplementing, staying for a period in excess of 5 days, vacating or otherwise modifying in any material

respect this Order or the Final Order without the prior written consent of the Postpetition Lender (and no such consent shall be implied from any other authorization by the Postpetition Lender); or

(p)     The DIP Borrowers shall effect a material change in the executive management of the DIP Borrowers (other than any changes agreed to in writing by the Postpetition Lender), unless such default is cured to the reasonable satisfaction of the Postpetition Lender within 5 business days following such material change; or

(q)     A plan shall be confirmed in any of the Bankruptcy Cases that does not provide for the termination of the commitments under the DIP Facility and the indefeasible payment in full in cash of the DIP Obligations on the effective date of such plan in a manner acceptable to the Postpetition Lender; or

(r)     The (a) filing by the DIP Borrowers of any plan of reorganization or liquidation without the prior written approval of the Postpetition Lender and the Prepetition Lender, or (b) the termination of any of the DIP Borrowers' exclusive rights under section 1121 of the Bankruptcy Code; or

(s)     (a) On a cumulative basis, the DIP Borrowers' actual cash disbursements shall vary from the DIP Budget in excess of the Permitted Variance, which cumulative variance shall be measured on a weekly basis and subject to a five (5) business day grace period, or (b) the DIP Borrowers shall fail to deliver the DIP Budget, any Variance Report, any 13-week cash flows or any related reports or certificate with respect to the DIP Budget, in form and substance satisfactory to the Postpetition Lender, within two (2) business days of the date when due; or

(t)     Failure of the DIP Borrowers to meet any of the milestones in the Milestone Schedule, or failure to seek and obtain any approval of the Prepetition Lender or the Postpetition Lender required under Section 21 of the DIP Term Sheet, or failure to implement or adhere to the Sale Process Protocol, subject to a grace period of five (5) business days; provided, that no Event of Default under the DIP Facility and no termination of the DIP Borrowers' authorization to use Cash Collateral shall occur if the failure to satisfy any milestone in the Milestone Schedule is due solely to unreasonable delay caused by the Postpetition Lender or the Prepetition Lender or the Court's schedule of hearing dates; or

(u)     The filing of any motion to approve a sale of all or a substantial portion of any DIP Borrower's assets without the prior written approval of the Postpetition Lender; or

(v)     Any DIP Borrower seeking, or the filing of any motion by any DIP Borrower or any other party to obtain, additional or replacement postpetition financing for the DIP Borrowers; or

(w)     Failure of the DIP Borrowers to comply with any of their adequate protection obligations to the Prepetition Lender under this Order and the Final Order; or

(x)     Failure of the DIP Borrowers to employ upon and following the Petition Date (subject to Court approval) at all times a chief restructuring officer satisfactory to the Postpetition Lender and the DIP Borrowers and that has full and final executive authority over all employees and other officers of the DIP Borrowers; or

(y)     Any of the Cases shall be dismissed or converted into a chapter 7 case; or

(z)     The commencement or continuation of any judicial action or proceeding in law or equity, by or with the support of the DIP Borrowers, against the Postpetition Lender or the Prepetition Lender.

19.     *Protection of Postpetition Lender's Rights; Relief From Stay.*

(a)     The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified, solely with respect to the DIP Facility, to the extent necessary to permit the Postpetition Lender to exercise, upon the occurrence of an Event of Default and after five (5) business days' prior written notice of such Event of Default (such five (5) business day period, the "Remedies Notice Period") (provided, for the avoidance of doubt, that the automatic stay shall remain in full force and effect during the Remedies Notice Period unless the Court shall have determined that an Event of Default has occurred and is continuing), which written notice shall be provided by the Postpetition Lender to the Debtors, counsel to the Debtors, the Committee, counsel to the Committee, and the U.S. Trustee, and which notice shall be filed with the Court, all rights and remedies against the Collateral provided for in the DIP Documents or in this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with or under the control of the Postpetition Lender or its affiliates, requiring the Debtors' commercially reasonable efforts (subject to applicable law) to sell the Collateral at the request of the Postpetition Lender, foreclosing on the Collateral or otherwise selling the Collateral, and directing that the Postpetition Lender and its representatives be granted access to all locations of the Collateral in support of the enforcement and exercise of such remedies); provided, that such stay shall not be automatically terminated as provided above if, during the Remedies Notice Period, the

; Provided however that the waiver of such rights under section 105 of the Bankruptcy Code shall not apply to any Committee or the U.S. Trustee

Court has determined that an Event of Default has not occurred and/or is not continuing. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred, and each of the Debtors hereby waives its right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Postpetition Lender set forth in this Order or the DIP Documents.

(b)     If the Debtors do not contest during the Remedies Notice Period the occurrence of an Event of Default, or if the Debtors do contest during the Remedies Notice Period the occurrence of an Event of Default and the Court after notice and hearing declines to stay the enforcement of remedies, the automatic stay as to the Postpetition Lender shall terminate upon the expiration of the Remedies Notice Period. Upon expiration of the Remedies Notice Period, unless ordered otherwise by the Court, the automatic stay as to the Postpetition Lender shall terminate (but solely with respect to the DIP Facility).

(c)     In no event shall the Postpetition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral except as provided in paragraph 25(c) below and paragraph 12 above. Entry of this Order shall be without prejudice to the right of the Prepetition Lender or the Postpetition Lender to seek any other or supplemental relief in the Cases and to appear and be heard on matters before the Court. Neither the Postpetition Lender's failure to seek relief or otherwise exercise its rights and remedies under the DIP Documents or this Order, nor the

Prepetition Lender's failure to seek any other or supplemental relief shall constitute a waiver of any such parties' respective rights hereunder, thereunder or otherwise.

(d) Immediately upon the occurrence of and during the continuance of an Event of Default, subject to the Remedies Notice Period, unless such Event of Default has been waived in writing by the Postpetition Lender, (i) the commitment of the Postpetition Lender to provide DIP Loans under the DIP Facility shall automatically terminate (unless such termination has been waived by the Postpetition Lender in writing), (ii) the due date for payment of all DIP Obligations shall be automatically accelerated, (iii) interest on the DIP Obligations shall automatically accrue at the Default Rate, and (iv) Debtors' right to use Cash Collateral or any proceeds of the Collateral shall immediately terminate other than to satisfy the Prepetition Obligations, the DIP Obligations or the Carve-Out; *provided that* the Debtors may use Cash Collateral during the Remedies Notice Period to (A) satisfy payroll obligations in a manner consistent with the Budget, (B) fund the Carve-Out, and (C) contest the occurrence and/or continuance of an Event of Default.

(e) The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the Postpetition Lender to perform any act authorized or permitted under or by virtue of this Order, or the DIP Documents to (i) implement the postpetition financing arrangements authorized by this Order and pursuant to the terms of the DIP Documents, (ii) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (iii) to assess, charge, collect,

advance, deduct and receive payments with respect to the DIP Obligations, including, without limitation, all interest, fees, costs and expenses permitted under the DIP Documents, and apply such payments to the DIP Obligations pursuant to the DIP Documents and this Order.

(f)     Entry of this Order shall be without prejudice to the right of the Prepetition Lender or the Postpetition Lender to seek any other or supplemental relief in the Cases and to appear and be heard on matters before the Court. The Postpetition Lender's or the Prepetition Lender's failure to seek relief or otherwise exercise its rights and remedies under the DIP Documents or the Prepetition Loan Documents, as applicable, or this Order shall not constitute a waiver of any such rights hereunder, thereunder or otherwise.

20.     *Limitation on Charging Expenses Against Collateral.*  Subject to entry of the Final Order, no costs and expenses of preserving or disposing of the Collateral or the Prepetition Collateral, and no expenses of administration of any of the Cases or any future proceeding that may result therefrom (including liquidation in bankruptcy, the commencement of any action adverse to the Postpetition Lender or its rights hereunder, under the DIP Documents or under any other order, or other proceedings under the Bankruptcy Code), except to the extent of the Carve-Out, shall be charged against or recovered from the Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Postpetition Lender or the Prepetition Lender, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the Postpetition Lender or the Prepetition Lender.

21.     *Payments Free and Clear.*  Subject to entry of the Final Order, any and all payments or proceeds remitted to the Postpetition Lender or the Prepetition Lender pursuant to the provisions of this Order or any subsequent order of the Court shall be received free and clear (except to the extent of the Carve-Out) of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of, the Debtors) or section 552(b) of the Bankruptcy Code.

22.     *Interest on DIP Obligations.*  Interest on the DIP Obligations shall accrue at the rates and shall be paid at the times as provided in the DIP Documents, this Order, and the Final Order.

23.     *Establishment of DIP Facility Loan Account.*  Upon entry of this Order, a new loan account shall be established by the Postpetition Lender (the "DIP Facility Loan Account") in place of the existing Master Account (as defined in the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using Existing Cash Management System, (B) Continue Intercompany Transfers, and (C) Maintain Existing Bank Accounts and Business Forms, (II) Extending Time to Comply with 11 U.S.C. § 345(b), and (III) Scheduling a Final Hearing, filed by the Debtors on the Petition Date (the "Cash Management Motion")).  The DIP Facility Loan Account is and shall be a Postpetition Lender-controlled loan account used as a central funding mechanism for the DIP Facility pursuant to the DIP Documents.  The DIP Facility Loan Account shall account for all the Borrowing Requests by the Debtors.  Upon receipt of a Borrowing Request, the corresponding DIP Loans shall be deposited into the ACH

32

Account (as defined in the Cash Management Motion). In addition, cash generated from the postpetition operations of the Debtors shall be swept into the ACH Account and shall be available to be used by the Debtors in accordance with the DIP Budget.

24. *Use of Cash Collateral.* The Debtors' cash, including without limitation, all cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts generated by the collection of insurance proceeds, accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitute proceeds of the Prepetition Collateral and, therefore, are Cash Collateral of the Prepetition Lender. The Debtors are hereby authorized to use the Cash Collateral of the Prepetition Lender; provided, that the Prepetition Lender is granted adequate protection as hereinafter set forth. The Debtors' right to use Cash Collateral under this Order shall terminate automatically on the earliest to occur of (i) twenty-five (25) days after entry of this Order if the Final Order shall not have been entered by the Court in these Cases and the Amendment shall not have been executed and delivered by the DIP Borrowers to the Postpetition Lender, (ii) consummation of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation of or for the DIP Borrowers, whether proposed by the DIP Borrowers, the Creditor's Committee or any other party, (iii) the occurrence (subject to the Remedies Notice Period) of an Event of Default, or (iv) one hundred eighty (180) days after the DIP Closing Date (the "Termination Date"); provided, that during the Remedies Notice Period the Debtors may use Cash Collateral solely to satisfy payroll obligations in a manner consistent with the Budget and fund the Carve-Out. The

RLF1 3599871v. 1

Prepetition Lender has consented to the Debtors' use of the Cash Collateral, subject to the terms of this Order.

25. *Adequate Protection.* As adequate protection for the use of the Prepetition Collateral, the Prepetition Lender is entitled, pursuant to sections 361, 363(c)(2), 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of, and protection against any diminution in, the value of its liens on and interest in the Prepetition Collateral as of the Petition Date including, without limitation, any such diminution resulting from the implementation of the DIP Facility and the priming of the Prepetition Lender's liens on the Prepetition Collateral, the sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Adequate Protection Obligations"). As adequate protection, the Prepetition Lender is hereby granted the following:

(a) Adequate Protection Liens. The Prepetition Lender is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, financing statements, control agreements or other agreements) valid and perfected additional and replacement security interests in and liens upon all of the Collateral (the "Adequate Protection Liens"), which Adequate Protection Liens shall be junior in priority only to (i) the DIP Liens and (ii) the Permitted Prepetition Liens, and shall be subject to the Carve-Out and shall include, subject to entry of the Final Order, a perfected security interest in and lien upon the Avoidance Actions and any proceeds thereof; provided, that the Prepetition Lender shall receive a perfected security interest in and lien on all of the DIP Borrowers' cash except for the Adequate Assurance Deposit.

RLF1 3599871v. 1

(b)    Section 507(b) Claim. The Adequate Protection Obligations shall constitute Superpriority Claims, junior only to the Superpriority Claims granted with respect to the DIP Obligations and shall be subject to the Carve-Out.

(c)    Repayment from Unencumbered Assets. As adequate protection for the Prepetition Lender, repayment of the obligations to the Postpetition Lender under the DIP Facility and payment of the Adequate Protection Payments (as defined below) to the Prepetition Lender, and any other adequate protection payments made in the Cases, shall be made or deemed to be made with the proceeds of property of the DIP Borrowers that are not encumbered by perfected, valid, enforceable and unavoidable liens of the Prepetition Lender.

(d)    Payment of Fees and Expenses. The Prepetition Lender shall be entitled to payment of all professional fees and expenses incurred by the Prepetition Lender in connection with the administration of the Cases and in accordance with the DIP Budget (the "Adequate Protection Payments"). Notwithstanding anything to the contrary in the DIP Term Sheet, the Prepetition Lender and Postpetition Lender shall have claims and administrative expenses (as the case may be) for payment of the full amount of all professional fees and expenses of the Prepetition Lender and Postpetition Lender incurred in connection with the Bankruptcy Cases, and such claims and administrative expenses (as the case may be) are not subject to any limitation in the DIP Budget on the amount of professional fees or expenses payable as Adequate Protection Payments, and payment of the full amount of all professional fees and expenses of the Prepetition Lender and Postpetition Lender incurred in connection with the Bankruptcy Cases shall constitute obligations of the DIP Borrowers whether or not the DIP Budget and the other DIP

RLF1 3599871v. 1

Documents provide for limited Adequate Protection Payments during the period covered by the DIP Budget. For the avoidance of doubt, the non-payment of the Prepetition Lender's and the Postpetition Lender's professional fees and expenses in excess of the amounts budgeted in the DIP Budget shall not constitute an Event of Default.

(e)    <u>Escrowed Funds</u>. The Debtors shall escrow all proceeds of the 363 Sale, pending distribution to creditors, including to the Prepetition Lender on account of its allowed claims, upon consummation of a plan of liquidation for the DIP Borrowers that is satisfactory and agreeable to the DIP Borrowers, the Postpetition Lender, and the Prepetition Lender (the "<u>Plan</u>") or such other distribution of such proceeds as is ordered by the Bankruptcy Court.

(f)    <u>Credit Bids</u>. The Prepetition Lender shall have the right to credit bid the indebtedness owed to the Prepetition Lender under the Prepetition Loan Agreement, in whole or in part, in connection with any sale or disposition of assets of the Debtors (whether or not such asset sale or disposition is undertaken or proposed under or pursuant to the terms of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation of or for the Debtors, whether proposed by the Debtors, the Creditor's Committee or any other party, by motion under section 363 of the Bankruptcy Code, or otherwise under applicable law) and the Debtors hereby waive all rights to oppose such credit bid rights of the Prepetition Lender.

(g)    <u>Insurance</u>. The Prepetition Lender shall be named as a loss payee (in respect of property/casualty insurance policies maintained by the DIP Borrowers) and additional insured (in respect of liability insurance policies maintained by the DIP

Borrowers), and the DIP Borrowers shall deliver to the Prepetition Lender copies of any and all insurance claims (including past, pending or future claims), whether or not funded, of all non-privileged documents and correspondence related to such insurance claims and any claims that the DIP Borrowers are contemplating, and the Prepetition Lender shall be provided with thirty (30) days' advance notice of all non-renewal/cancellation/amendment riders in respect of such policies.

(h)     Insurance Proceeds.  The Prepetition Lender shall be entitled to payment, promptly and in any event no later than three (3) business days after receipt thereof, of any proceeds and any other payments payable to any of the Debtors under any of the Debtors' insurance policies and which proceeds and/or payments are received by the Debtors during the pendency of the Cases (which payments of any such Insurance Proceeds the Prepetition Lender is hereby authorized by the DIP Borrowers to pay to Firstbank in accordance with the Intercreditor Agreement).

(i)     Notice.  As soon as possible and in any event within three (3) business days after an officer of any DIP Borrower obtains actual knowledge, or after due inquiry, would have obtained such knowledge by acting in good faith and in a prudent manner in the performance of his or her duties, provide to the Postpetition Lender notice of the occurrence of (x) any material adverse development with respect to any loss, damage, investigation, claim, litigation, action, proceeding or controversy involving the DIP Borrowers, notice thereof and as soon as practicable thereafter, to the extent the Prepetition Lender requests, copies of all documentation relating thereto and (y) any material adverse change in the business, properties, assets or condition (financial or otherwise) of any DIP Borrower.

37

(j)    <u>Inspection Rights</u>.  The Prepetition Lender and its representatives and designees shall be permitted to visit and inspect the properties, books and records of the DIP Borrowers upon reasonable notice at the Debtors' expense.

(k)    <u>506(c) Waiver</u>.  Upon entry of Final Order,  the Prepetition Lender and its collateral shall not be subject to or liable for any claims under section 506(c) of the Bankruptcy Code (the "<u>Section 506(c) Claims</u>"), and the assertion of any such claims against the Prepetition Lender or its collateral shall be prohibited by the Final Order.

(l)    <u>Reporting</u>.  The Debtors shall furnish or cause to be furnished to the Prepetition Lender such budgets and other information respecting the Prepetition Collateral, the sale or disposition of the Debtors' assets, and any draft proposed plan of reorganization or liquidation (or plan term sheet) of or for the Debtors as the Prepetition Lender, from time to time, may request, and the DIP Borrowers hereby irrevocably authorize and direct each of their accountants and advisors to deliver to the Prepetition Lender, at the Debtors' expense, copies of all financial statements of the Debtors and such other information respecting the Debtors' assets and business as the Prepetition Lender may request.

(m)    <u>Milestones</u>.  The Prepetition Lender shall have the approval rights provided for in the Milestone Schedule (as defined in the DIP Term Sheet) set forth in Section 21 of the DIP Term Sheet.

(n)    <u>Sale Process Protocol</u>.  The Debtors shall provide the Prepetition Lender with the status updates required by the Sale Process Protocol (as defined in the DIP Term Sheet) set forth in Section 21 of the DIP Term Sheet.

RLF1 3599871v. 1

26.     *Sufficiency of Adequate Protection.*  The Court finds that the adequate

protection provided herein is reasonable and sufficient to protect the interests of the

Prepetition Lender.  Notwithstanding any other provision hereof, the grant of adequate

protection to the Prepetition Lender pursuant hereto is without prejudice to the right of

the Prepetition Lender to seek modification of the grant of adequate protection provided

hereby so as to provide different or additional adequate protection, and without prejudice

to the right of the Debtors or any other party in interest to contest any such modification.

The consent of the Prepetition Lender to the priming of its liens on the Prepetition

Collateral by the DIP Liens (a) is limited to the DIP Facility authorized pursuant to this

Order, and shall not extend to any other postpetition financing or to any modified version

or replacement of the DIP Facility and (b) does not constitute, and shall not be construed

as constituting, an acknowledgement or stipulation by the Prepetition Lender that, absent

such consent, its interests in the Prepetition Collateral would be adequately protected

pursuant to this Order.

27.     *Collateral Rights.*  Until all of the DIP Obligations shall have been

indefeasibly paid and satisfied in full no other party shall foreclose or otherwise seek to

enforce any junior lien or claim in any Collateral, and upon and after the occurrence of an

Event of Default, subject to the Remedies Notice Period, in connection with a liquidation

of any of the Collateral, the Postpetition Lender (or any of its employees, agents,

consultants, contractors or other professionals) shall have the right, at the sole cost and

expense of Debtors, to: (a) enter upon, occupy and use any real or personal property,

fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by

Debtors and (b) use any and all trademarks, tradenames, copyrights, licenses, patents or

39

any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, in each case, to the extent permitted by the documents governing the Debtors' use of such intellectual property. The Postpetition Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the Postpetition Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the Postpetition Lender actually occupies or uses such assets or properties).

28.     *Release.*  Upon the entry of this Order and subject to the closing of the DIP Facility, in consideration of the Postpetition Lender's agreement to the making of postpetition loans, advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the DIP Term Sheet, the Note(s), the DIP Documents and this Order, each Debtor, on behalf of and for itself (collectively, the "Releasors"), shall, forever release, discharge and acquit the Postpetition Lender and its participants, officers, directors, agents, attorneys and predecessors-in-interest in their capacities as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Prepetition Obligations, the DIP Obligations, the DIP Term Sheet, the Note(s), the DIP Documents or other financial

accommodations made by the Postpetition Lender to the Debtors pursuant to the DIP Term Sheet, the Note(s) and/or the DIP Documents. In addition, upon the repayment of all DIP Obligations owed to the Postpetition Lender by the Debtors and termination of the rights and obligations arising under the DIP Term Sheet, the Note(s), the DIP Documents and this Order (which payment and termination shall be on terms and conditions acceptable to the Postpetition Lender), the Postpetition Lender in such capacity shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Term Sheet, the Note(s), the DIP Documents or this Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out), on terms and conditions acceptable to the Postpetition Lender.

29.     *363 Sale Documentation.* Any motions, proposed orders, bidding or sale procedures, asset purchase agreements or term sheets or other documentation or pleadings relating to the 363 Sale shall be in form and substance satisfactory and agreeable to the Postpetition Lender, the Prepetition Lender and the DIP Borrowers. Any bidding procedures proposed and/or approved in connection with the 363 Sale shall require bidders to submit such bids to the Postpetition Lender contemporaneously with submission to the Debtors, and the Postpetition Lender shall be entitled to participate in the review and evaluation of any such bids by the Debtors.

30. *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The Postpetition Lender and the Prepetition Lender are hereby authorized, but not required, in their sole discretion to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder (collectively, the "Lien Recording Documents") and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified and vacated to permit the Postpetition Lender and the Prepetition Lender to take such actions.  Whether or not the Postpetition Lender and the Prepetition Lender shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of this Order and this Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the liens and security interests granted herein, effective as of the date of this Order.

(b)     The Postpetition Lender and the Prepetition Lender are hereby authorized, but not required to file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which Debtors have an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order.

RLF1 3599871v. 1

(c)     To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is preempted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of this Court (provided, that if the Postpetition Lender and the Prepetition Lender take steps to perfect their liens under otherwise applicable state law, they do so without waiving the benefits of this provision of this Order).

(d)     In the event that any Lien Recording Document which the Postpetition Lender and the Prepetition Lender elect to file in accordance with this paragraph 30 contains any limitations, defects, deficiencies or other information which might otherwise limit or adversely affect the Postpetition Lender's DIP Liens on the Collateral, the Prepetition Lender's Adequate Protection Liens or any of the Prepetition Lender's claims, rights, priorities and/or protections afforded under this Order and/or the DIP Documents, such limitations, defects, deficiencies or other information shall not impair, limit, restrict or adversely affect in any way any of the Postpetition Lender's DIP Liens in the Collateral, the Prepetition Lender's Adequate Protection Liens or any of the claims, rights, priorities and/or protections granted under this Order and/or the DIP Documents.

(e)     The Debtors shall execute and deliver to the Postpetition Lender and the Prepetition Lender all such agreements, financing statements, instruments and other documents as the Postpetition Lender and the Prepetition Lender may reasonably

request to evidence, confirm, validate or perfect the DIP Liens and Adequate Protection Liens granted pursuant hereto.

(f) *Subject to entry of the Final Order,* Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of the DIP Liens or Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the Postpetition Lender or the Prepetition Lender in accordance with the terms of the DIP Term Sheet or this Order.

31.    *Preservation of Rights Granted Under the Order.*

(a)    Unless all DIP Obligations and Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Postpetition Lender and the Prepetition Lender (and no such consent shall be implied by any other action, inaction or acquiescence by the Postpetition Lender or the Prepetition Lender), (ii) any order authorizing additional or different debtor in possession financing in these cases without the prior written consent of the Postpetition Lender and the Prepetition Lender (and no such consent shall be implied by any other action, inaction or acquiescence by the Postpetition Lender or the Prepetition Lender), or

44

(iii) an order dismissing any of the Cases or converting any of the Cases to cases under chapter 7 of the Bankruptcy Code. If an order dismissing or converting to chapter 7 any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims, liens, and security interests granted to the Postpetition Lender and the Prepetition Lender pursuant to this Order, shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, liens and security interests shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) of this paragraph. Without the express written consent of the Postpetition Lender, if at any time prior to the repayment in full of all obligations arising under the DIP Facility, including subsequent to the confirmation of any plan in these cases, any of the Debtors, any trustee or any examiner with enlarged powers subsequently appointed, shall obtain credit or incur debt pursuant to section 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the terms of this Order or the Final Order, or shall receive proceeds from a sale of Collateral pursuant to section 363(b) of the Bankruptcy Code or from a sale of any other Collateral after the satisfaction of liens that are senior to those of the Postpetition Lender, then all of the cash proceeds derived from such credit, debt, or sale shall immediately be escrowed for the benefit of the Postpetition Lender.

RLF1 3599871v. 1

(b)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Postpetition Lender or the Prepetition Lender as applicable, of the effective date of such reversal, modification, vacation or stay or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations, or this Order with respect to any Adequate Protection Obligations.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the Postpetition Lender or the Prepetition Lender (as the case may be) prior to the actual receipt by the Postpetition Lender or the Prepetition Lender of written notice of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Order, and the Postpetition Lender and the Prepetition Lender (as applicable) shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Facility with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(c)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations and all other rights and remedies of the Postpetition Lender and the Prepetition Lender granted by the provisions of this Order, the DIP Term Sheet, the Note and the other DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter

RLF1 3599871v. 1

7 or dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization or liquidation in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Order, the DIP Term Sheet, the Note and the other DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the Adequate Protection Obligations and all other rights and remedies of the Postpetition Lender and the Prepetition Lender granted by the provisions of this Order, the DIP Term Sheet, the Note and the other DIP Documents shall continue in full force and effect until the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full.

32. *Effect of Stipulations on Third Parties*. The stipulations, admissions, releases and waivers contained in paragraphs 7, 8, 9, 28 and 33 of this Order shall be binding upon the Debtors in all circumstances. The stipulations, admissions, releases and waivers contained in paragraphs 7, 8, 9, 28 and 33 of this Order shall be binding upon all other parties in interest, including, without limitation, any Committee, unless (and only to the extent that) (a) a party in interest (including a trustee) has timely filed an adversary proceeding or contested matter (any such action, a "Challenge") (subject to the Limitations) by no later than the date that is the latest of (i) 75 days after the entry of this Order, (ii) in the case of a Challenge being brought by the Committee, 60 days after the appointment of the Committee, or (iii) such later date as has been agreed to, in writing, by the Prepetition Lender in respect of Challenges that may be initiated against the

Prepetition Lender, in the sole discretion of the Prepetition Lender, and has been ordered by the Court, challenging the validity, enforceability, priority or extent of the Prepetition Obligations, or the Prepetition Loan Agreement Liens on the Prepetition Collateral or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "Claims and Defenses") against the Prepetition Lender or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with matters related to the Prepetition Loan Documents, the Prepetition Obligations or the Prepetition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such Claims and Defenses in any such timely filed Challenge, provided, that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the entry of this Order and subject to the closing of the DIP Facility. If no such Challenge is timely filed (or, if such Challenge is timely filed, then to the extent not subject to successful Claims and Defenses asserted therein), (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the Prepetition Loan Agreement Liens on the Prepetition Collateral shall be deemed to be legal, valid, binding, perfected, not subject to recharacterization, subordination, avoidance or reduction and (z) the Prepetition Obligations, the Prepetition Loan Agreement Liens, the Prepetition Collateral and the Prepetition Lender shall not be subject to any other or further challenge by any party in interest, and any such party in interest shall be enjoined from, seeking to exercise the rights of any of the Debtors' estates, including, without limitation, any successor thereto

48

(including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors). Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Prepetition Loan Agreement Liens or the Prepetition Obligations.

33. *Debtors' Waiver of Claims and Causes of Action.* Without prejudice to the rights of any other party, including any Committee (but subject to the limitations thereon in paragraphs 32 and 34 and subject to the closing of the DIP Facility), the Debtors have waived, upon entry of this Order and closing of the DIP Facility, any and all claims and causes of action against the Postpetition Lender and the Prepetition Lender and their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, directly related to the DIP Facility, this Order or the negotiation of the terms thereof.

34. *Limitation on Use of DIP Facility Proceeds and Collateral.* The Debtors shall use the proceeds of the DIP Facility and the Cash Collateral solely as provided in this Order and in the DIP Documents. Notwithstanding anything herein or in any other order by this Court to the contrary, no Collateral, Cash Collateral, Carve-Out, DIP Loans, proceeds of the Collateral, or advances under the Prepetition Loan Agreement, the DIP Documents, this Order or the Final Order may be used to (a) investigate, object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Facility or the Prepetition Loan Agreement or the Prepetition Loan Documents or the DIP Documents, or the liens or claims granted under this Order,

the Final Order, the DIP Facility, the DIP Documents or the Prepetition Loan Documents, (b) investigate, assert any claims, defenses or causes of action against the Postpetition Lender, the Prepetition Lender or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) investigate, prevent, hinder or otherwise delay the Postpetition Lender's or the Prepetition Lender's assertion, enforcement or realization on the Cash Collateral or the Collateral (as defined below) in accordance with the Interim Order, the Final Order, the DIP Facility, the DIP Documents or the Prepetition Loan Documents, (d) investigate or seek to modify any of the rights granted to the Postpetition Lender or the Prepetition Lender under this Order, the Final Order, the DIP Facility, the DIP Documents or the Prepetition Loan Documents, (e) pay any professional fees or expenses incurred by any Case Professional or other professional in connection with any of the foregoing (except to contest during the Remedies Notice Period the occurrence and/or continuance of an Event of Default), or (f) any act which has or could reasonably be expected to have a material adverse effect with respect to the rights of the Postpetition Lender or the Prepetition Lender, or which is contrary to any term or condition set forth in or acknowledged by the DIP Documents, the DIP Facility, this Order or the Final Order, in each foregoing case without the Postpetition Lender's and the Prepetition Lender's prior written consent. The foregoing limitations set forth in clauses (a) through (f) above (collectively, the "Limitations") shall apply in all instances; provided, however, up to $50,000 may be used by the Committee solely to investigate the liens and claims of the Prepetition Lender and/or other secured creditors of the Debtors.

35.     Notwithstanding anything herein, in the Amendment or in the DIP Documents, the Debtors shall be authorized to withdraw funds from any collateral

RLF1 3599871v. 1

account established or maintained for purposes of funding DIP Facility advances to the Debtors, only to the extent of, and with, the Postpetition Lender's express consent. All funds in any such collateral account shall be deemed Collateral and under the control of the Postpetition Lender whether or not subject to any account control agreement in favor of the Postpetition Lender.

36. *Credit Bidding.* Each of the Postpetition Lender and the Prepetition Lender shall have and retain at all times the right to credit bid (pursuant to section 363(k) of the Bankruptcy Code and/or pursuant to or under the terms of any consensual or nonconsensual (including under section 1129(b)(2)(A)(i), (ii) and/or (iii) of the Bankruptcy Code) chapter 11 plan of reorganization or liquidation or for the DIP Borrowers, whether proposed by the DIP Borrowers, the Committee or any other party, by motion under section 363 of the Bankruptcy Code, or otherwise, under applicable law) the DIP Loans or the indebtedness owed to the Prepetition Lender under the Prepetition Loan Agreement (as applicable), in whole or in part, in connection with any sale or disposition of assets in the Bankruptcy Cases and the DIP Borrowers hereby waive any and all rights to oppose such credit bid rights of the Prepetition Lender and the Postpetition Lender.

37. *Insurance.* Pursuant to this Order, (i) the Postpetition Lender shall be and shall be deemed to be, without any further action or notice, named as loss payee (in respect of property/casualty insurance policies maintained by the Debtors) and named as an additional insured (in respect of liability policies maintained by the Debtors) on each insurance policy maintained by any of the Debtors, and the Postpetition Lender shall be provided with thirty (30) days' advance notice of all non-

renewal/cancellation/amendment riders in respect of such policies and (ii) the Prepetition Lender shall be named as loss payee (in respect of property/casualty insurance policies maintained by the Debtors) and additional insured (in respect of liability insurance policies maintained by the Debtors) on each insurance policy maintained by any of the Debtors and the Prepetition Lender shall be provided with thirty (30) days' advance notice of all non-renewal/cancellation/amendment riders in respect of such policies.

38. *Order Governs.* In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern. For the avoidance of doubt, the failure to include any term, condition, or provision of the DIP Term Sheet in this Order shall not affect the validity, enforceability, or binding nature of any such terms, conditions, and provisions of the DIP Term Sheet.

39. *Fees and Expenses of the Prepetition Lender and the Postpetition Lender.* Notwithstanding anything to the contrary in the DIP Term Sheet, the Prepetition Lender and Postpetition Lender shall have claims and administrative expenses (as the case may be) for payment of the full amount of all professional fees and expenses of the Prepetition Lender and Postpetition Lender incurred in connection with the Bankruptcy Cases, and such claims and administrative expenses (as the case may be) are not subject to any limitation in the DIP Budget on the amount of professional fees or expenses payable as Adequate Protection Payments, and payment of the full amount of all professional fees and expenses of the Prepetition Lender and Postpetition Lender incurred in connection with the Bankruptcy Cases shall constitute obligations of the DIP Borrowers whether or not the DIP Budget and the other DIP Documents provide for limited Adequate Protection Payments during the period covered by the DIP Budget.

RLF1 3599871v. 1

40.     *Binding Effect; Successors and Assigns.*  The DIP Term Sheet and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Postpetition Lender, the Prepetition Lender, Firstbank, any Committee, and any of the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary hereafter appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of Postpetition Lender, the Prepetition Lender, Firstbank and the Debtors and each of their respective successors and assigns; provided, that the Postpetition Lender shall have no obligation to extend any financing to any chapter 7 or chapter 11 trustee or similar responsible person appointed for the estate of any of the Debtors, and the Prepetition Lender shall have no obligation to or consent to use of Cash Collateral in a chapter 7 case or after appointment of a chapter 11 trustee or other legal representative of the Debtors.

41.     *Limitation of Liability.*  In determining to make any loan under the DIP Term Sheet and/or the DIP Documents or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Postpetition Lender and the Prepetition Lender shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state

statute). Furthermore, nothing in this Order or the DIP Documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition, upon the Postpetition Lender or the Prepetition Lender, of any liability for any claims arising from the prepetition or postpetition activities by any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code) in the operation of their businesses, or in connection with their restructuring efforts.

42. *Right of Access and Information.* Upon reasonable notice, the Debtors shall permit representatives, agents and/or employees of the Postpetition Lender and Prepetition Lender to have reasonable access to the Debtors' premises, management and non-privileged records during normal business hours, and the Debtors and their advisors and representatives shall cooperate and consult with, and provide to such persons all such non-privileged information as they may reasonably request.

43. *Section 552.* In light of their agreement to subordinate their liens and superpriority claims to the Carve Out in the case of the Postpetition Lender, and the Carve Out and the DIP Liens in the case of the Prepetition Lender, the DIP Agent, the Postpetition Lender and the Prepetition Lender are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

44. *Effectiveness.* This Order shall constitute findings of fact and conclusions of law and, notwithstanding the possible application of Bankruptcy Rule 6004(h), shall take effect immediately upon execution hereof.

RLF1 3599871v. 1

45.   *Final Hearing.*  The Final Hearing is scheduled for **September 8, 2010 at 12:30 p.m. (Eastern Daylight Time).**  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of (x) a waiver of rights under section 506(c) of the Bankruptcy Code and (y) liens on Avoidance Actions and any proceeds thereof) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) co-attorneys for the Debtors, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY 10281 (Attn:  John J. Rapisardi, Esq. and George A. Davis, Esq.); (b) co-attorneys for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins, Esq. and Jason M. Madron, Esq.); (c) counsel to any statutory committee appointed in the Cases; (d) counsel to the Postpetition Lender, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, P.O. Box 636, Wilmington, Delaware 19899 (Attn:  Mark Chehi, Esq.) and O'Neill & Borges, American International Plaza, Suite 800, 250 Muñoz Rivera Avenue, San Juan, Puerto Rico  00918-1813 (Attn: Juan A. Aquino, Esq.); (e) Firstbank; and (f) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David M. Klauder, Esq.), and shall be filed with the Clerk of the United States

Bankruptcy Court for the District of Delaware, in each case to allow actual receipt by the foregoing no later than **September 1, 2010 at 4:00 p.m. (Eastern Daylight Time).**

Dated: August 16, 2010
       Wilmington, Delaware

THE HONORABLE KEVIN CROSS
UNITED STATES BANKRUPTCY JUDGE

RLF1 3599871v. 1