**E<small>XHIBIT</small> C**

**Engagement Letter**

September 28, 2010

**Official Committee of Unsecured Creditors
of Caribbean Petroleum Corporation, et al.**

P.O. Box 361988
San Juan, Puerto Rico 00936

Attention:   José A. Hernández Mayoral
    Committee Co-Chairperson

    Steven Candito, National Response Corp.
    Committee Co-Chairperson

Re: Advisory Services

This agreement (the "Agreement") confirms that Jefferies & Company, Inc. ("Jefferies") has been engaged by the Official Committee of Unsecured Creditors (the "Committee"), appointed in the bankruptcy cases (the "Cases") of Caribbean Petroleum Corporation, a Delaware Corporation, and its debtor affiliates and their respective estates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") to act as set forth herein.

1. Services. During the term of this engagement, and as mutually agreed upon by Jefferies and the Committee and as appropriate, Jefferies, acting as exclusive financial advisor to the Committee, will perform the following financial advisory services, among others, in connection with the Cases:

(a) becoming familiar with, to the extent Jefferies deems appropriate, and analyze, the business, operations, properties, financial condition and prospects of the Debtors;

(b) advising the Committee on the current state of the "restructuring market";

(c) assisting and advising the Committee in examining and analyzing any strategy potential or proposed restructuring, amending, redeeming or otherwise adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, any sale under section 363 of chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), a liquidation, or otherwise (a "Transaction"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Transaction;

(d) assisting and advising the Committee in evaluating and analyzing the proposed implementation of any Transaction, including the value of the securities or debt instruments, if any, that may be issued in any such Transaction;

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 2

(e) assisting and advising the Committee in evaluating potential financing transactions by the Debtors;

(f) assisting and advising the Committee on tactics and strategies for negotiating with other stakeholders;

(g) attending meetings of the Committee with respect to matters on which Jefferies has been engaged to advise the Committee hereunder;

(h) providing testimony, as necessary and appropriate, with respect to matters on which Jefferies has been engaged to advise the Committee hereunder, in any proceeding before the Bankruptcy Court; and

(i) rendering such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including, but not limited to, providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.

(j) in addition, upon the request of the Committee, Jefferies shall assist with refinancing the Company's current debtor in possession credit agreement (a "Capital Raise").

It is expressly agreed that, other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2. Cooperation.

(a) The Committee shall furnish or use its best efforts to cause the Debtors to furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Debtors, which the Committee and/or the Debtors believe are relevant to the transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder (all such information so furnished being the "Information"). In addition, the Committee shall use its best efforts to cause the Debtors to provide Jefferies full access, as requested, to the Debtors' officers, directors, employees and professional advisors. The Committee agrees to promptly advise Jefferies of all developments known to the Committee materially affecting the Committee, the Debtors, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by or on behalf of the Committee or the Debtors, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof.

(b) The Committee further acknowledges that Jefferies (i) will be relying on information and data provided to Jefferies (including, without limitation, information provided by or on behalf of the Debtors, the Committee or other parties to a Transaction)

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 3

and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) has not made, and will not make, any physical inspection or appraisal of the properties, assets or liabilities (contingent or otherwise) of the Debtors or any other party to a Transaction and (iv) in relying on any financial forecasts that may be furnished to or discussed with Jefferies, will assume that such forecasts have been reasonably prepared on bases reflecting the best currently available estimates and good faith judgments of management as to the future financial performance of the Debtors or other party to a Transaction, as the case may be.

(c)     The Committee acknowledges that this assignment may lead to an outcome not anticipated in this Agreement. In the event that circumstances have changed such that this engagement requires more of Jefferies' time and efforts than originally anticipated, the Committee agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.     Use of Name, Advice, etc.

(a)     No information or advice provided by Jefferies (other than any information or advice relating to the U.S. tax treatment and U.S. tax structure of any Transaction) may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent. In addition, the Committee agrees that any reference to Jefferies in any release, communication or other material is subject to Jefferies' prior approval, which may be given or withheld in its reasonable discretion, for each such reference.

(b)     Jefferies' advice is solely for the confidential use and information of the Committee (solely in the members' capacity as members of the Committee), and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4.     Compensation. The Debtors shall pay Jefferies each of the following:

(a)     A monthly fee (the "Monthly Fee") equal to $112,500 per month until the expiration or termination of this Agreement, payable in accordance with such procedures as may be ordered by the Bankruptcy Court (with, for the avoidance of doubt, the Monthly Fees being deemed to have accrued beginning on the date of the Committee's retention of Jefferies, August 27, 2010).

(b)     A transaction fee (the "Transaction Fee") in an amount equal to $950,000, provided, that, in no circumstances shall the Transaction Fee exceed ten per cent (10%) of the overall recovery pool that is available to unsecured creditors. The Transaction Fee, if any, shall be due and payable on the effective date of a plan of reorganization or a plan of liquidation in the Cases, in each case that is supported by the Committee. In the event that the recovery pool to unsecured creditors shall constitute, in full or in part, assets the

**Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.**
September 28, 2010
Page 4

value of which is uncertain, the unsecured creditors committee and Jefferies shall work together, in good faith, to establish a value for such assets.

       (c)     Upon the consummation of a Capital Raise, a fee equal to 3.0% of the maximum principal amount available under the credit facility that is the subject of the Capital Raise. The fees under this subsection (c) will be payable upon the execution of a definitive credit agreement by the Company and the lenders thereunder.

The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Committee further acknowledges that it believes Jefferies' general restructuring expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Committee in connection with any Transaction and that the value to the Committee of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

5.     <u>Expenses</u>. In addition to any fees that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Debtors shall reimburse Jefferies, in accordance with such procedures as may be approved by the Bankruptcy Court, for all out-of-pocket expenses (including reasonable fees and expenses of its counsel) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder, subject to Bankruptcy Court approval.

6.     <u>Indemnification, etc</u>. As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in <u>Schedule A</u>) in accordance with <u>Schedule A</u>. The terms and provisions of <u>Schedule A</u> are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement. Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof.

7.     <u>Termination</u>. Jefferies' engagement hereunder will commence upon the execution of this Agreement by the Committee and Jefferies, and will continue until the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 5

has been confirmed by the Bankruptcy Court and has been substantially consummated or (B) Jefferies' services hereunder are terminated by either Jefferies or the Committee on five business days' written notice to the other; provided that the Committee may not unilaterally terminate this Agreement prior to 6 months from the date hereof. Upon any termination of this Agreement, the Debtors shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event of any termination of this Agreement, Jefferies shall be entitled to the applicable fee set forth in Section 4 if, on or prior to 12 months from the effective date of termination of this Agreement, the Debtors consummate, or enters into an agreement which subsequently results in, a Transaction (such fees to payable for each Transaction in such time period). Any such fee shall be payable upon the closing of any such Transaction. Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-7, 9-16, and Schedule A, which shall survive such termination.

8.      Exclusivity. During the term of the Agreement, the Committee agrees that it will not engage any other person to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement without the prior written approval of Jefferies. The Committee will promptly inform Jefferies of any inquiry it may receive regarding a Transaction. Notwithstanding the Debtors' obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9.      Bankruptcy Court Approval. The Committee shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103 of the Bankruptcy Code, from the Bankruptcy Court. Such approval shall provide for the retention of Jefferies shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the obligations and acknowledgements set forth in Schedule A), and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless such an order has been entered by the Bankruptcy Court and no appeal is pending as to such order.

10.     Disclaimer.

        (a)     The Committee acknowledges that Jefferies' parent, Jefferies Group, Inc. (collectively with its subsidiaries and affiliates, the "Jefferies Group") is a full service financial institution engaged in a wide range of investment banking and other activities (including investment management, corporate finance, securities issuing, trading and

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 6

research and brokerage activities) from which conflicting interests, or duties, may arise. Information that is held elsewhere within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or utilize for the Committee's benefit any non-public information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Debtors and of potential participants in the Transaction for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws in connection with such activities. Further, the Committee acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. The Jefferies Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b)     Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Debtors or the Committee. For the avoidance of doubt, Jefferies will be liable for its own gross negligence or willful misconduct in accordance with, and as contemplated by Schedule A attached hereto. The Committee acknowledges that Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction. The Committee also acknowledges that it has consulted with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and Jefferies and its affiliates shall not have responsibility or liability with respect thereto. The Committee agrees that it is capable of evaluating the merits and risks of the transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of the transactions and such fees. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors and the Committee will be able to implement or consummate any Transaction, or any other transaction contemplated herein, or achieve any other result.

11.     Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK OR THE BANKRUPTCY CODE, AS APPLICABLE.

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 7

12.     Exclusive Jurisdiction. EXCEPT AS SET FORTH BELOW, THE PARTIES AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY RELATING TO OR ARISING OUT OF THIS AGREEMENT, THE TERMINATION OR VALIDITY OF THIS AGREEMENT, ANY ALLEGED BREACH OF THIS AGREEMENT, THE ENGAGEMENT CONTEMPLATED BY THIS AGREEMENT OR THE DETERMINATION OF THE SCOPE OF APPLICABILITY OF THIS AGREEMENT TO THIS SECTION 12 (ANY OF THE FOREGOING, A "CLAIM") SHALL BE COMMENCED IN THE BANKRUPTCY COURT. IF THE BANKRUPTCY COURT DOES NOT HAVE OR REFUSED TO EXERCISE JURISDICTION OVER SUCH CLAIM, SUCH CLAIM SHALL BE COMMENCED IN THE COMMERCIAL DIVISION OF THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE CITY AND COUNTY OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS AND SHALL DECIDE THE MERITS OF EACH CLAIM ON THE BASIS OF THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE DEBTORS AND JEFFERIES AGREE AND CONSENT TO PERSONAL JURISDICTION, SERVICE OF PROCESS AND VENUE OF SUCH COURTS, WAIVE ALL RIGHT TO TRIAL BY JURY FOR ANY CLAIM AND AGREE NOT TO ASSERT THE DEFENSE OF FORUM NON-CONVENIENS. THE DEBTORS AND JEFFERIES ALSO AGREE THAT SERVICE OF PROCESS MAY BE EFFECTED THROUGH OVERNIGHT MAIL TO THE ADDRESS SET FORTH OR REFERRED TO IN SECTION 14 HEREOF. THE DEBTORS SHALL PAY ALL OF JEFFERIES' COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, FEES AND EXPENSES OF COUNSEL) IN AN ENFORCEMENT PROCEEDING IF THE COURT IN SUCH PROCEEDING DETERMINES THAT JEFFERIES IS ENTITLED TO RECOVER AMOUNTS DUE HEREUNDER. THE DEBTORS AND JEFFERIES FURTHER AGREE THAT A FINAL, NON-APPEALABLE JUDGMENT IN RESPECT OF ANY CLAIM BROUGHT IN ANY SUCH COURT SHALL BE BINDING AND MAY BE ENFORCED IN ANY OTHER COURT HAVING JURISDICTION OVER THE PARTY AGAINST WHOM THE JUDGMENT IS SOUGHT TO BE ENFORCED.

13.     Payments. Except as may be otherwise ordered by the Bankruptcy Court, all payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. No fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Debtors' obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

14.     Announcements, etc. The Committee agrees that Jefferies may, following the announcement of a Transaction, describe the Transaction (or prior to a consummation or announcement of a Transaction, Jefferies role as an advisor to the Committee) in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Debtors' name and logo in connection

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 8

therewith. The Committee agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role in connection with the Transaction in form and substance satisfactory to Jefferies.

15. Notices. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Committee, to Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York, 10104, Attention: Larren Nashelsky, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

16. Miscellaneous This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is solely for the benefit of the Committee, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; provided that Jefferies may, in the performance of its services hereunder, procure the services of other members of the Jefferies Group (as defined above), which members shall be entitled to the benefits and subject to the terms of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. The Committee and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

17. Patriot Act. Jefferies hereby notifies the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot Act"), it is required to obtain, verify and record information that identifies the Debtors, the Committee, and the Committee's members in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

Official Committee of Unsecured Creditors of Caribbean Petroleum Corp., *et al.*
September 24, 2010
Page 11

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies, the Debtors and the Committee, this Agreement shall constitute a binding agreement among Jefferies, the Debtors and the Committee as of the date first written above.

                Sincerely,

                **JEFFERIES & COMPANY, INC.**

                By _____
                     Name: Leon Szlezinger
                     Title: Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
CARIBBEAN PETROLEUM CORP., *ET AL.***

By _____
    Name:
    Title:

Official Committee of Unsecured Creditors of Caribbean Petroleum Corporation, et al.
September 28, 2010
Page 9

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Committee, this Agreement shall, subject to Bankruptcy Court approval, constitute a binding agreement among Jefferies, the Debtors and the Committee as of the date first written above.

Sincerely,

**JEFFERIES & COMPANY, INC.**

By _____
Name: Leon Szlezinger
Title: Managing Director


Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CARIBBEAN PETROLEUM CORPORATION**

By _____
Name: Steven Candito
Title: Co-Chairperson

**Official Committee of Unsecured Creditors of Caribbean Petroleum Corp.,** *et al.*
September 28, 2010
Page 10

Reference is made to the engagement letter attached hereto between Jefferies & Company, Inc. ("Jefferies"), the Committee and the Debtors (each as defined therein) (as amended from time to time in accordance with the terms thereof, the "Agreement"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A are joint and several, and shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any trustee appointed in the Debtors' Cases.

As further consideration under the Agreement, the Debtors agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), provided, however, that the Debtors shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by Jefferies and to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors or the Committee).

Each of the Debtors and the Committee agrees that no Indemnified Person shall have any liability to the Debtors or the Committee (or any member thereof) or their respective owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request or with the consent of the Debtors or the Committee).

The Debtors agree that it will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent, or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person.

If, for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Debtors agree to contribute to any such Losses in

**Official Committee of Unsecured Creditors of Caribbean Petroleum Corp.**, *et al.*
September 28, 2010
Page 11

such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Debtors on the one hand and by Jefferies on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Debtors on the one hand and Jefferies on the other, but also the relative fault of the Debtors and Jefferies, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel), including all costs and expenses (including expenses of counsel) incurred by an Indemnified Person to enforce the terms of this Schedule A, as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that if any such reimbursement is determined by a final, non-appealable judgment by a court or arbitral tribunal, to have resulted solely from Jefferies' gross negligence or willful misconduct, such Indemnified Person shall promptly repay such amount to the Debtors. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Debtors or the Debtors' affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies a fee at a rate of $400 to $800 per hour (such rate to be based on the seniority and experience, in Jefferies' reasonable discretion, of such personnel) with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such Action.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors and successors or assigns to the Debtors' business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.