IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                   :   Chapter 11
                                        :
CARIBBEAN PETROLEUM CORP., et al.,[1]   :   Case No. 10-12553 (KG)
                                        :
            Debtors.                    :   Jointly Administered
                                        :
                                        :   Hearing Date: January 11, 2011 at 9:30 a.m. (EST)
                                        :   Objection Deadline: January 4, 2011 at 4:00 p.m. (EST)
---------------------------------------------------------------x

## MOTION OF DEBTORS FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVE PERIODS IN WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT VOTES THEREON

Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), submit this motion (the "Motion") seeking entry of an order extending, for a period of ninety (90) days, the Debtors' exclusive periods in which to file and solicit votes on a chapter 11 plan (respectively, the "Exclusive Filing Period" and the "Exclusive Solicitation Period", and collectively, the "Exclusive Periods"). In support of the Motion, the Debtors respectfully represent:

### Preliminary Statement[2]

1. The Debtors commenced these chapter 11 cases only four months ago, for the express purpose of maximizing the value of the Debtors' estates for the benefit of creditors through the marketing and sale of substantially all of the Debtors' assets pursuant to section 363

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number) are: Caribbean Petroleum Corporation (7836), Caribbean Petroleum Refining L.P. (1421), and Gulf Petroleum Refining (Puerto Rico) Corporation (1417). The service address for all Debtors is: PO Box 361988, San Juan, Puerto Rico 00936.

[2] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to such terms below.

of the Bankruptcy Code. During the short time since the Petition Date, the Debtors have made significant strides towards achieving this stated purpose. Among other things, the Debtors, with the assistance of their restructuring professionals, (i) obtained Court approval of postpetition financing from Banco Popular de Puerto Rico ("BPPR") for the purpose of funding the Debtors' sale process in chapter 11 and preserving the Debtors' assets during the cases, (ii) comprehensively marketed the Debtors' assets to potential bidders in accordance with bidding procedures approved by the Court, (iii) coordinated at length with potential bidders to facilitate due diligence and respond to inquiries regarding the sale process and the Debtors' assets, (iv) engaged in extensive discussions with the United States Department of Justice ("DOJ") and Environmental Protection Agency ("EPA") to obtain clarity for potential bidders regarding environmental matters facing the Debtors' estates, and to address matters related to the ongoing remediation effort at the Debtors' facilities in Puerto Rico, and (v) devoted significant effort to resolving many complex and labor-intensive issues related to the sale process, such as engaging in litigation and obtaining an order from the Court to assure potential bidders of the Debtors' ability of reject their existing franchise agreements pursuant to section 365 of the Bankruptcy Code.

2. As a direct result of all of the foregoing, the sale process has progressed smoothly, and the Debtors believe its successful conclusion is imminent. Indeed, the deadline for the submission of bids is today, December 10, an auction is scheduled for December 16, and a hearing to approve the sale of the Debtors' assets is scheduled for December 22.

3. In addition to the significant progress realized in the sale process, the Debtors also have made substantial progress toward the negotiation of a consensual chapter 11 plan of liquidation, which would provide for the liquidation of any assets which remain in the

Debtors' estates following the close of the anticipated sale and the distribution to creditors of the asset sale proceeds. Concurrent with the robust marketing of their assets, the Debtors devoted significant attention to preparation of a draft plan of liquidation and corresponding disclosure statement. The Debtors have provided drafts of the plan and disclosure statement to their major stakeholders, and over the past several weeks, have engaged in intense, good faith discussions with advisors to BPPR, the Creditors' Committee, the EPA/DOJ, and other creditors, regarding the structure and content of the plan, as well as a potential global resolution of these cases. The Debtors expect these ongoing discussions to conclude in the near term, enabling the Debtors to proceed towards confirmation of a consensual chapter 11 plan in the coming months, that serves the best interests of the Debtors' estates and creditors.

4. The Debtors have unquestionably achieved significant progress to date in these complex chapter 11 cases, and under applicable standards, the Debtors are entitled to an extension of their Exclusive Periods. Extending the Exclusive Periods and preventing creditors from filing competing plans at this critical juncture will enable the Debtors to keep these cases on track, bring the sale and plan processes to their proper conclusion without undue distraction, cost, and uncertainty, and avoid the confusion and disarray that otherwise would befall the Debtors' estates and creditors. Without question, absent the requested extension, the Debtors' effort to maximize value for the benefit of all stakeholders would be severely jeopardized, and the Debtors' material progress to date significantly undermined. The Debtors' focus and limited resources necessarily would be diverted from the critical tasks at hand – consummation of the sale process, and expeditious confirmation of a chapter 11 plan of liquidation – as the Debtors would face the risk of competing plans, increased administrative expenses, and potential conversion of the cases to chapter 7.

5.     For these reasons and as discussed in more detail below, the requested ninety (90) day extension of the Exclusive Periods should be granted.

## Background

### A.     General Background

6.     On August 12, 2010 (the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2010, this Court entered an order directing joint administration of the Debtors' chapter 11 cases for procedural purposes only pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

7.     On August 27, 2010, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a five-member statutory committee of unsecured creditors (the "Creditors' Committee"). See D.I. 69. Subsequently, two members either resigned or were removed from the Creditors' Committee.

8.     Additional information regarding the Debtors' businesses and capital structure, as well as the circumstances leading to these chapter 11 cases, is contained in the Declaration of Nicolás López Peña in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings, sworn to on August 12, 2010. See D.I. 3.

### B.     The Debtors' Exclusive Periods

9.     On September 10, 2010, the Court entered a final order (the "Final DIP Order") approving the Debtors' postpetition financing facility with BPPR. Pursuant to the Final

4

RLF1 3693852v.1

DIP Order, failure to maintain the Debtors' exclusivity constitutes an Event of Default (as defined in the Final DIP Order). See D.I. 148, ¶ 20(r).

10. Pursuant to section 1121 of the Bankruptcy Code, the Debtors' Exclusive Filing Period and Exclusive Solicitation Period expire on December 10, 2010 and February 8, 2011, respectively. In accordance with Del. Bankr. L.R. 9006-2, by reason of the filing of this Motion, the Exclusive Periods are automatically extended until the Court acts on this Motion.

## Jurisdiction and Venue

11. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

12. By this motion and for the reasons set forth below, pursuant to section 1121(d) of the Bankruptcy Code, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A, (a) extending the Exclusive Filing Period for ninety (90) days, from December 10, 2010 (or such date as the Court acts on this Motion) through and including March 10, 2011 (or such later date, as applicable) and (b) extending the Exclusive Solicitation Period for ninety (90) days, from February 8, 2011 (or such later date as the Court acts on this Motion) through and including May 9, 2011 (or such later date, as applicable).

## Basis for Relief

13. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan. See 11 U.S.C. § 1121(b). If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code grants the debtor a period of 180 days after the commencement of the case during which the debtor may solicit

acceptances of that plan and no other party in interest may file a competing plan. Pursuant to section 1121(d) of the Bankruptcy Code, where the initial 120-day and 180-day exclusive periods provided for in the Bankruptcy Code prove to be an unrealistic timeframe for the proposal and solicitation of a plan, a bankruptcy court may extend the exclusive periods "for cause." See 11 U.S.C. § 1121(d).

14. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

15. In determining whether cause exists to extend the exclusive periods, a court may consider a variety of factors to assess the totality of circumstances in each case. See In re Dow Corning Corp., 208 B.R. 661, 664, 670 (Bankr. E.D. Mich. 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying the factors used by courts to determine whether cause exists to extend exclusivity). Those factors include, without limitation:

    (a)    the size and complexity of the debtor's case;

    (b)    the existence of good-faith progress towards reorganization;

    (c)    a finding that the debtor is not seeking to extend exclusivity to pressure creditors "to accede to [the debtor's] reorganization demands";

    (d)    the existence of an unresolved contingency; and

    (e)    the fact that the debtor is paying its bills as they come due.

See, e.g., McLean Indus., 87 B.R. at 834 (citations omitted). Not all factors are relevant to every case and courts tend to use a relevant subset of the above factors to determine whether cause to grant an exclusivity extension exists in a particular chapter 11 case. See, e.g., In re Express One Int'l, 194 B.R. at 100 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors). Further, a bankruptcy court has "broad discretion to determine what is sufficient cause in each individual case." In re Sharon Steel Corp., 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987).

16. The fact that a debtor may propose a liquidating plan as opposed to a reorganizing plan does not negatively impact its ability to retain the exclusive right to file a plan. Courts in this District have, on numerous occasions, granted extensions of the exclusive periods in liquidating chapter 11 cases. See, e.g., In re ProtoStar Ltd., Case No. 09-12659 (MFW) (Bankr. D. Del. Dec. 17, 2009) (granting debtors' first request for an extension of the exclusive periods); In re Washington Mutual, Inc., Case No. 08-12229 (MFW) (Bankr. D. Del. Nov. 20, 2009) (granting debtors' fourth request for an extension of the exclusive periods); In re American Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 24, 2008) (granting debtors' fourth request for an extension of exclusive periods); In re Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. July 17, 2008) (granting debtors' first request for an extension of the exclusive periods); In re SN Liquidation, Inc., et al., Case No. 07-11666 (KG) (Bankr. D. Del. Mar. 28, 2008) (granting debtors' first request for an extension of the exclusive periods).

17. As stated, the primary objectives of a chapter 11 case are maximization of estate value, and formulation, confirmation, and consummation of a consensual chapter 11 plan.

7

RLF1 3693852v.1

The exclusive periods under section 1121(b) of the Bankruptcy Code are intended to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan without the deterioration and disruption of the debtor's chapter 11 case that is likely to be caused by the filing of competing plans by non-debtor parties. As demonstrated by the facts set forth below, sufficient "cause" exists to grant the Debtors' requested extension of their Exclusive Periods so that the Debtors may have a full and fair opportunity to maximize the value of the Debtors' estates through the conclusion of the ongoing sale process and to propose a consensual plan of liquidation and solicit acceptances thereon.

### A. The Requested Extension of the Exclusive Periods Is Justified by the Size and Complexity of the Chapter 11 Cases

18. The size and relative complexity of the Debtors' chapter 11 cases represents cause to extend the Exclusive Periods. See, e.g., In re Nicolet, Inc., 80 B.R. 733, 742 (Bankr. E.D. Pa. 1987) ("[A] debtor's showing of progress in formulating a plan in the face of . . . unusual procedural or substantive difficulties or developments in the case may . . . establish the requisite "good cause" for extension of the exclusivity periods").

19. These cases involve multiple debtors and were commenced in the wake of catastrophic explosions at certain of the Debtors' facilities in Bayamón, Puerto Rico. The explosions gave rise to many complex legal issues and presented a multitude of challenges to the Debtors' restructuring effort. Specifically, among other things:

- Assertion of tort claims related to the explosions in excess of $450 million;

- Analysis of asserted environmental claims under the Oil Pollution Act, 33 U.S.C. § 2701, et seq., the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601, et seq., and the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq.;

- Review of the Debtors' tangible and intangible assets, including the Debtors' insurance policies and the status of the Debtors' claims under such policies;

- Review and analysis of complex contractual arrangements between the Debtors and a variety of counterparties; and

- Analysis of the interplay between various federal statutes.

20. Accordingly, in light of the size and complexity of these chapter 11 cases, the Debtor's request for an extension of the Exclusive Periods is modest and justified.

**B. The Debtors' Good Faith Progress in the Chapter 11 Cases Warrants an Extension of the Exclusive Periods**

21. An extension of a debtor's exclusive periods may also be justified by progress in resolving issues facing creditors and the estate. See, e.g., In re McLean Indus. Inc., 87 B.R. 830, 835 (Bankr. S.D.N.Y. 1987); In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987); In re Swatara Coal Co., 49 B.R. 898, 899-900 (Bankr. E.D. Pa. 1985).

22. As explained above, in just four months' time, the Debtors have made significant progress in their effort to maximize the value of their assets through an expedited and robust sale process pursuant to section 363 of the Bankruptcy Code. Since the Petition Date, the Debtors have invested substantial time and effort in the sale process, completing a vigorous marketing process for their assets, which has involved:

- Direct marketing to over 165 potential bidders, resulting in actual contact with over 120 potential bidders;

- Contacting service station operators representing approximately 88 of the Debtors' service stations;

- Executing nondisclosure agreements with approximately 35 potential bidders, nearly all of which performed due diligence on the Debtors' assets;

- Arranging approximately 10 due diligence site visits at the Debtors' facilities in Bayamón, Puerto Rico;

9

- Facilitating over 10 telephone conferences/in-person meetings between potential bidders and the EPA/DOJ;

- Maintaining a continuous dialogue with the EPA/DOJ regarding various environmental and regulatory issues related to the sale process; and

- Coordinating extensively with potential bidders to aid and expedite due diligence, and responding to numerous inquiries regarding the sale process.

23. At the same time, the Debtors made marked progress towards the negotiation of a consensual plan of liquidation, circulating drafts of the plan and disclosure statement to BPPR and the Creditors' Committee, and participating in plan negotiations with BPPR, the Creditors' Committee, the EPA/DOJ, and other key constituents. The Debtors unquestionably have made good faith progress in these cases sufficient to support the requested extension of the Exclusive Periods, simply based upon progress in the sale and plan processes alone.

24. In addition, however, the Debtors also have made substantial progress in connection with other critical tasks attendant to the administration of the cases. Among other things, the Debtors, in conjunction with their restructuring advisors, have:

- Completed a thorough review of the Debtors' books, records, and contractual arrangements, and prepared the Debtors' schedules of assets and liabilities and statements of financial affairs, filed with the Court on October 11, 2010 [D.I. 211-213], October 15, 2010 [D.I. 231-234], November 10, 2010 [D.I. 294-299], and November 16, 2010 [D.I. 318-319];

- Managed their liquidity and provided financial and cash flow reporting to the advisors to BPPR and the Creditors' Committee;

- Responded to numerous information requests from parties in interest regarding the chapter 11 cases;

- Responded to multiple violations of the automatic stay under section 362 of the Bankruptcy Code;

- Engaged in frequent discussions with the advisors to BPPR and the Creditors' Committee regarding all pertinent matters and developments in the cases including, but not limited to, updates related to the marketing and sale of the Debtors' assets, the Debtors' ongoing dialogue with the EPA/DOJ regarding environmental and other regulatory matters, and various operational issues;

- Engaged in frequent discussions with representatives of the EPA/DOJ regarding the ongoing clean-up at the Debtors' facilities, the EPA/DOJ's asserted claims against the Debtors' estates, and numerous related issues;

- Participated in meetings and conference calls with certain of the Debtors' existing business contacts, in an effort to preserve important and valuable business relationships for the benefit of the Debtors' estates and a potential purchaser;

- Drafted, negotiated with BPPR and the Creditors' Committee, and filed a form asset purchase agreement in connection with the proposed sale of substantially all of the Debtors' assets [D.I. 350], as well as a proposed order (i) authorizing the sale of substantially all of the Debtors' assets free and clear of all liens, claims, encumbrances and other interests, (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith, and (iii) granting certain related relief [D.I. 326];

- Successfully defended against a motion to transfer venue filed by the Secretary of the Treasury of the Commonwealth of Puerto Rico [D.I. 55];

- Analyzed various issues related to the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq.;

- Made progress towards the sale or removal of certain petroleum products in accordance with the EPA's mandate that all petroleum product be removed from the Debtors' operating premises; and

- Engaged in discussions with the DOJ, U.S. Customs and Border Protection, and the Puerto Rico Industrial Development Company to coordinate the activation of a foreign trade zone sub-grant by the successful purchaser of the Debtors' assets.

25. Given the Debtors' meaningful progress in the sale and plan processes since the Petition Date, the near conclusion of those processes, and the other efforts undertaken and accomplished by the Debtors to move these cases forward as described above, the requested extension of the Exclusive Periods is warranted.

11

C.  **The Requested Extension of the Exclusive Periods Will Not Harm the Debtors' Creditors or Other Parties in Interest**

26. Affording the Debtors a meaningful opportunity to develop a plan of liquidation through extension of the Exclusive Periods will not harm or prejudice the Debtors' creditors or other parties in interest. To the contrary, extension of the Exclusive Periods will benefit creditors and other parties in interest by ensuring the integrity of the Debtors' liquidation efforts and preserving a collaborative environment within which plan negotiations can conclude. The Debtors are not seeking an extension of the Exclusive Periods to force creditors or other parties in interest to accede to their demands. Indeed, the Debtors have consistently conferred with and involved BPPR, the Creditors' Committee, the U.S. Trustee, the EPA/DOJ, and other parties in interest in major substantive and administrative matters in these chapter 11 cases, and will continue to do so as plan negotiations move forward towards conclusion.[3]

27. Rather than harming the Debtors' creditors, an extension of the Exclusive Periods will actually increase the likelihood of a greater distribution to the Debtors' stakeholders by facilitating an orderly, efficient, and cost-effective plan process for the benefit of all creditors. Termination of the Exclusive Periods, on the other hand, would give rise to the threat of multiple plans and a contentious confirmation process resulting in increased administrative expenses and consequently diminishing returns to the Debtors' creditors. Moreover, it could significantly delay, if not completely undermine, the Debtors' ability to confirm any plan in the cases, and increase the risk of conversion of the cases to chapter 7.

---

[3] Prior to the filing of this Motion, the Debtors advised counsel to BPPR and the Creditors' Committee of the Debtors' intention to seek the requested extension of the Exclusive Periods. The Debtors understand that the Creditors' Committee supports the requested extension, while BPPR has reserved its rights with respect thereto.

### D. Unresolved Contingencies Exist That Warrant Extension of the Exclusive Periods

28. As discussed above, the Debtors have made impressive advancements toward consummation of a sale of their assets and the formulation of a consensual plan of liquidation. However, notwithstanding the significant progress to date, the sale process and discussions regarding a potential consensual resolution of the Debtors' cases are ongoing, and must reach their conclusion before the Debtors can file a consensual plan. Although the Debtors and their major stakeholders continue to negotiate in earnest, at this point in time, the specific countours of a potential settlement have not been determined. Accordingly, the Debtors respectfully submit that cause exists to extend the Exclusive Periods to afford the Debtors and major creditors the necessary additional time to conclude their negotiations, which is critical to the formulation of a consensual plan in the cases.[4]

### E. The Debtors Have Been Paying Their Bills as They Become Due and Have Stayed Within Their Budget Provided by the Final DIP Order

29. Pursuant to the Final DIP Order, this Court authorized postpetition financing for the Debtors and approved a budget with respect thereto. BPPR, as the only lender willing to provide postpetition financing on terms agreeable to the Debtors, has required that the Debtors adhere to this budget during the chapter 11 cases. Since entry of the Final DIP Order, the Debtors have remained current on all of their postpetition operational costs while also

---

[4] Pursuant to a stipulation by and among BPPR and the Creditors' Committee, the deadline for the Creditors' Committee to assert a Challenge (as defined in the Final DIP Order) was extended to December 15, 2010 [D.I. 278]. The Debtors are advised that BPPR and the Creditors' Committee have agreed to further extend this deadline to December 31, 2010, and are in the process of documenting this agreement. Resolution of any issues identified by the Creditors' Committee also is necessary to formulation of a consensual plan. In light of these unresolved contingencies, the Debtors were not in a position to file a plan by November 19 (as contemplated under the Final DIP Order), however, the Debtors have been working, and are continuing to work, earnestly and in good faith with BPPR, the Creditors' Committee, the EPA/DOJ, and other key constituents to arrive at a consensual resolution of all plan issues prior to filing a plan with the Court.

remaining well within the budget approved by the Final DIP Order. This budget enables the Debtors to continue administering these cases through February 8, 2011. In sum, given that the Debtors have sufficient liquidity to pay — and are paying — their postpetition bills as they come due, the Debtors believe that they are managing these cases effectively and are preserving the value of their assets for the benefit of all of their creditors. Accordingly, the Debtors believe that this factor further weighs in favor of approving the requested extension of their Exclusive Periods.

## Notice

30. No trustee or examiner has been appointed in these cases. Notice of this motion shall be provided on the date hereof via U.S. first class mail to (i) the U.S. Trustee, (ii) each of the Debtors' prepetition secured lenders, (iii) counsel to BPPR, (iv) counsel to the Creditors' Committee, (v) the Securities and Exchange Commission, (vi) the Internal Revenue Service, (vii) the United States Department of Justice, (viii) the United States Environmental Protection Agency, and (ix) all parties having filed requests for notices in these chapter 11 cases. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

## No Previous Motion

31. No prior motion for the relief requested herein has been made by the Debtors to this or any other court.

14

RLF1 3693852v.1

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: December 10, 2010
 Wilmington, Delaware

*(signature)*

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

John J. Rapisardi
George A. Davis
Zachary H. Smith
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Co-Attorneys for Debtors
and Debtors in Possession*