IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------x
| | |
|---|---|
| In re: | Chapter 11 |
| CARIBBEAN PETROLEUM CORP., et al., | Case No. 10-12553 (KG) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 9, 53, 54, 127, 149, 152, 155, 161, 165, 205, 243, 256, 293, 304, 312, 317 |
| | **Hearing Date: December 22, 2010 9:30 a.m.** |

---------------------------------------------------------------------x

## OBJECTION OF ALLIED AVIATION TO APPROVAL OF PROPOSED AUCTION SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS

Allied Aviation, LLC ("Allied"), by and through its undersigned counsel, hereby submits this Objection ("Objection") to the approval of the proposed auction sale (the "Sale") of substantially all of the Debtors' assets to Puma Energy International, B.V. ("Puma"). In support of this Objection, Allied respectfully shows and states as follows:

### PRELIMINARY STATEMENT

1.  Allied respectfully submits that the Sale should not be approved and that the Court direct the Debtors to reopen the Auction and accept additional bidding on the Assets. Accepting additional bids will address the flawed bidding process, in which the Debtors refused to consider additional bids by Allied and others and closed the Auction prematurely, after Puma had agreed to increase its bid to $82 million -- even though that bid did not conform to the bid requirements established during the Auction. Moreover, bidders for the individual Service Stations were also unfairly excluded from the opportunity to increase their initial offers. The Debtors' refusal to accept higher and better additional offers after Puma's "final" bid is contrary

to the Bidding Procedures and the Bankruptcy Code, and is wholly inconsistent with the principles of equity and fairness that guide this Court in considering whether to approve the Sale.

## FACTUAL BACKGROUND

2.  Allied incorporates the statement of facts contained in the Declaration of Robert L. Rose submitted in support of this objection (the "Rose Decl."). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Rose Decl.

## ARGUMENT

### I. THE PROPOSED SALE SHOULD NOT BE APPROVED BECAUSE THE SALE WAS UNFAIRLY CONDUCTED AND DOES NOT MAXIMIZE VALUE TO THE ESTATE

3.  The sale of a bankruptcy estate's property is subject to court approval under 11 U.S.C. § 363(b). An overarching requirement for the approval of a proposed sale under 11 U.S.C. §363(b) is the maximization of value to the estate. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996) ("[I]t is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors.") (citation omitted); *see also Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Products, Inc.)*, 99 B.R. 124, 131 (Bankr. N.D.Ga. 1988) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy sales and the trustee's duty with respect to such sales is to obtain the highest or greatest overall benefit possible for the estate."); *Four B. Corp. v. Food Barn Stores, Inc., (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (The court "must remain mindful of the ubiquitous desire of the unsecured creditors, and a primary objective of the Code, to enhance the value of the estate at hand.").

4.  To obtain the Court's approval to proceed with the proposed sale, the Debtors must also provide evidence that: (1) a sound business reason or emergency justifies the

sale; (2) adequate and reasonable notice of the sale was provided to interested parties; (3) the sale has been proposed in good faith; and (4) the purchase price is fair and reasonable. *In re Delaware & Hudson Rwy Co.*, 124 B.R. 169, 176 (D.Del. 1991).

5. In contrast, the Bankruptcy Court should not approve a proposed sale where (a) there was fraud, unfairness or mistake in the conduct of the sale; or (b) the price brought at the sale was so grossly inadequate as to shock the conscience of the court and raise a presumption of fraud, unfairness or mistake. *In re Abbotts Dairies of Pennsylvania*, 788 F.2d 143, 147-48 (3d Cir. 1986); *In re Stanley Eng'g Corp.*, 164 F.2d 316, 318 (3d Cir. 1947), *cert. denied*, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948); *In re Chung King, Inc.*, 753 F.2d 547, 549-50 (7th Cir.1985).

6. Undoubtedly, the bankruptcy court has considerable discretion in approving assets sales and is granted ample latitude to strike a balance between fairness, finality, integrity, and maximization of assets. *Wintz v. Am. Freightways, Inc. (In re Wintz Cos.)*, 219 F.3d 807, 812 (8th Cir.2000); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn, Inc.)*, 107 F.3d 558, 565-66 (8th Cir.1997). However, the standard for defeating approval of a sale is less stringent than for setting aside a sale that has already been approved by the court. *See In re Blue Coal Corp.*, 168 B.R. 553, 561 (Bankr. M.D.Pa. 1994); *In re Payless Cashways, Inc.*, 281 B.R. at 652 ("Up to the point where the court actually enters an order confirming the sale … a bankruptcy court has broad discretion to accept or reject bids.") (citation omitted).[1] Thus, "[c]onfirmation of a sale … may be denied for less serious reasons ... Objections sufficient to defeat confirmation

---

[1] Courts have "generally appeared willing to set aside confirmed sales that were 'tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction.'" *In re Abbotts Dairies of Pennsylvania*, 788 F.2d at 147-48. (citations omitted). In addition, "sales are properly set aside when compelling equities outweigh the interests in finality." *See In the Matter of CADA Investments, Inc.*, 664 F.2d 1158, 1162 (9th Cir. 1981).

include <u>unfairness toward bidders,</u> stifling of competition, inaccurate or otherwise insufficient advertisement, sham bidding or 'puffing,' lack of due notice and interference with the orderly conduct of the sale." *In re Blue Coal Corp.*, 168 B.R. at 561 (emphasis supplied).

7. The proposed sale to Puma suffers from several defects that demand the reopening of the Auction.

8. First, the proposed sale does not maximize value to the estate, contrary to the primary objective of the Bankruptcy Code. Put simply, the Debtors failed to take into consideration the total value of Allied's last bid, as well as potential increased bids by Allied and the individual Service Station bidders. As set forth above, Allied's cash offer of $38 million, coupled with the $40.4 million in bids for the Service Stations and a "put" with respect to Undeveloped Land in the amount of $3.5 million is equivalent to an enterprise value of at least $81.9 million. Indeed, the true value of that offer may be significantly higher, as the Undeveloped Land was appraised for over 5 times the amount of the proposed credit and would result in a significantly greater return of value to the estate than Puma's bid of $82 million.

9. In addition, if the Debtors had permitted the Service Station bidders, who had collectively bid $40.4 million prior to any bids by Puma, the opportunity to submit additional bids before the Debtors absolutely closed the Auction, the estate, in all likelihood, could have realized substantial additional value in the amount of at least $5 - $10 million or possibly more. *See* Letter from Peerless Oil & Chemicals, Inc., attached as Exhibit A to Rose Decl.

10. By closing the Auction prematurely without permitting Allied or the Service Station bidders to submit additional bids, the Debtors artificially stifled competition in the

Auction and may have deprived the estate of millions in additional value.[2] Such a result cannot sustain a finding that the proposed sale properly reflects the highest and best offer and maximizes value for the estate. Indeed, the Debtors' discretion to modify the bid process must be tempered by principles of equity and fairness. *See In re Wintz Cos.*, 219 F.3d at 812.[3]

11.    The proposed sale should be denied for the additional reason that there was unfairness in the conduct of the sale. As noted by Allied's counsel during the Auction, Puma's bid was nonconforming because it failed to adhere to the bid requirements established by the Debtors. Specifically, Puma's bid only exceeded Allied's bid by approximately $100,000 despite the minimum bid increment being previously set at $1 million by Debtors' counsel.

12.    At least as significantly, despite the non-conforming nature of Puma's bid, Allied was prepared to submit a higher offer, as were other bidders, but the Debtors refused to entertain any further bids once it had declared Puma the successful bidder. Thus, the Debtors inexplicably refused to give proper consideration to additional bidding and potentially higher and better offers.

13.    The Debtors' premature termination of the Auction based upon Puma's $82 million bid without offering any other bidders the opportunity to submit additional bids was not only unfair to the bidders but it undermined the very integrity of the bidding process. Indeed, the Debtors' actions, which effectively capped the bidding at $82 million, suggest an understanding

---

[2] Our research reveals no cases holding that a debtor is permitted to prematurely terminate an auction based on an arguably higher bid by a single bidder, particularly where (as here) interested bidders remain and wish to submit additional bids for the Debtors' assets. This also demonstrates that the purchase price is not fair and reasonable, as required for approval of the proposed sale. *See In re Delaware & Hudson Rwy Co.*, 124 B.R. at 176.

or agreement to discontinue bidding if Puma raised its offer to $82 million. Allied respectfully submits that none of the Bidding Procedures approved by this Court or the principles of equity and fairness which govern the evaluation of this transaction, allow for the limitation of bidding in such a manner.

14.  As the foregoing demonstrates, there is more than a sufficient basis for the Court to reopen the Auction and permit the bidders who were previously restrained by the Debtors from submitting additional bids after Puma's "winning" bid, to submit their additional bids for the Assets. To refrain from doing so invites the loss of significant value – measured in the millions of dollars – to the estate, and raises questions as to the integrity of the sale process.

## II.  REOPENING THE AUCTION WOULD NOT FRUSTRATE THE EXPECTATIONS OF PUMA OR DELAY THE SALE OF THE ASSETS

15.  As part of its determination of whether to approve a proposed sale, a bankruptcy court must consider the bidders' reasonable expectations to encourage confidence and finality in the process. However, the policy of inspiring confidence in sales under the supervision of the court must be weighed against the purpose to be achieved by such sales, which is to benefit the creditors and debtor. *See In re Food Barn Stores, Inc.*, 107 F.3d at 564-65.

16.  Where, as in this case, the auction procedures make it clear that a hearing and court approval is required before a sale can be consummated, a bidder is hard pressed to assert "crystallized expectations of certainty" that merit any reluctance to reopen the bidding process. *See In re Farmland Industries, Inc.*, 289 B.R. 122, 126 (8th Cir. B.A.P. 2003) (affirming bankruptcy court's decision to reopen auction where party with right of first refusal had not received notice of sale). Indeed, "it is unlikely that reasonable expectations of certainty could ever exist prior to a hearing where court approval is required." *Id*. at 127. Further, the Bidding Procedures expressly provide that Puma's bid "is irrevocable until the later of (a) the

consummation of a transaction involving any other Potential Bidder for the same Assets and (b) the first business day that is thirty (30) days after the conclusion of the Sale Approval Hearing." *See* Bidding Procedures [D.I. 149], Ex. 1, §C (viii).

17.     Additionally, both the bid procedures and the terms of the Asset Purchase Agreement explicitly stated that the sale could not be final until approved by the bankruptcy court:

> The presentation of the Successful Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such bid. The Debtors will be deemed to have accepted the Successful Bid only when such bid has been approved by the Bankruptcy Court pursuant to the Sale Order and the sale of the Assets proposed in such bid has been consummated.

*Id.* at Section J.

> This Agreement is subject to approval by the Bankruptcy Court and the consideration by Sellers and the Bankruptcy Court of higher or better competing bids with respect to any transaction (or series of transactions) involving a Competing Transaction, prior to the entry of the Sale Order (but not thereafter). Nothing contained herein shall be construed to prohibit Sellers and any of its representatives from soliciting, considering, negotiating, agreeing to, or otherwise taking action in furtherance of, any Competing Transaction, prior to the entry of the Sale Order (but not thereafter).

Paragraph 5(g) of the Asset Purchase Agreement [D.I. 350]. Accordingly, Puma was on notice that its bid was irrevocable and that any proposed sale must first be approved by the Bankruptcy Court. Accordingly, reopening the Auction would not and should not thwart its reasonable expectations.

18.     Further, reopening the Auction at this juncture, so soon after the Debtors' improperly early termination of the Auction, would not delay any sale of the Assets or alter the closing date of February 8, 2011 set forth in Paragraph 5 of the Bidding Procedures Order. Nor

is there any risk to the estate of losing the Puma bid in the unlikely event that reopening the Auction does not yield a higher and better offer for the Assets because Puma's bid is irrevocable until the later of (a) the consummation of a transaction involving any other Potential Bidder for the same Assets and (b) the first business day that is thirty (30) days after the conclusion of the Sale Approval Hearing." *See* Bidding Procedures [D.I. 149], Ex. 1, §C (viii).

19.  In sum, reopening the Auction would not only further serve the interests of the estate, by providing the possibility of a greater recovery as a result of the sale of the Assets, but also confirm the integrity of the sale process, which is obviously an important consideration for all bidders, whether or not they were deemed to be successful by the Debtors.

## CONCLUSION

For the foregoing reasons, Allied respectfully requests that the Court deny the proposed sale to Puma, permit the auction to be reopened, and grant such other further relief as may be just and equitable.

Dated:  December 21, 2010

Respectfully submitted,

SULLIVAN HAZELTINE ALLINSON LLC

/s/ William A. Hazeltine

William A. Hazeltine
4 East 8th Street – Suite 400
Wilmington, Delaware 19801
Tel: (302) 428-8191
-- and --

SAIBER LLC
Vincent F. Papalia
18 Columbia Turnpike – Suite 200
Florham Park, New Jersey 07932
Tel: (973) 622-3333

*Counsel for Allied Aviation, LLC*

## CERTIFICATE OF SERVICE

      I, William A. Hazeltine, do hereby certify I am not less than 18 years of age and that on this 20th day of December 2010, I caused a copy of the within *Objection of Allied Aviation to Approval of Proposed Auction Sale of Substantially All the Debtors' Assets* to be served upon the parties on the attached service list in the manner indicated.

**FIRST CLASS MAIL & FACSIMILE**
George A. Davis, Esq.
Zachary H. Smith, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281
(212) 504-6666

**FIRST CLASS MAIL & FACSIMILE**
Internal Revenue Service
Insolvency Section
31 Hopkins Plaza, Room 1150
Baltimore, MD 21201
(410) 962-9955

**FIRST CLASS MAIL & FACSIMILE**
David L. Gordon
Ruben Gomez
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460
(202) 616-2427

**FIRST CLASS MAIL & FACSIMILE**
David L. Gordon
Ruben Gomez
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(202) 616-2427

**HAND DELIVERY**
Mark D. Collins, Esq.
Jason M. Madron, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801

**HAND DELIVERY**
David M. Klauder, Esq.
Office of the United States Trustee
844 King Street, Suite 2313
Lockbox #35
Wilmington, DE 19801-3519

**HAND DELIVERY**
Mark Chehi, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
Wilmington, DE 19899

**FIRST CLASS MAIL & FACSIMILE**
Juan A. Aquino, Esq.
O'Neill & Borges
American International Plaza, Suite 800
250 Munoz Rivera Avenue
San Juan, Puerto Rico 00918-1813
(787) 753-8944

**FIRST CLASS MAIL & FACSIMILE**
Securities & Exchange Commission
233 Broadway
New York, NY 10279
(212) 336-1319

      Under penalty of perjury, I declare the foregoing to be true and correct.

December 21, 2010
Date

/s/ William A. Hazeltine
William A. Hazeltine