## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : |
| CARIBBEAN PETROLEUM CORP., et al.,[1] | : Case No. 10-12553 (KG) |
|  | : |
| Debtors. | : Jointly Administered |
|  | : |
|  | : **Re: Docket Nos. 9, 53, 54, 127, 149, 152, 155, 161, 165, 205, 243, 256, 288, 293, 304, 312, 317, 326, 331, 343, 350, 360, 399, 400, 406, 411, 416, 417, 419, 425, 453, 472** |

-------------------------------------------------------------------x

## ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (III) GRANTING CERTAIN RELATED RELIEF

Upon the motion, dated August 13, 2010 [D.I. 9] (the "Motion"), of Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), pursuant to sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order, among other

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number) are: Caribbean Petroleum Corporation (7836), Caribbean Petroleum Refining L.P. (1421), and Gulf Petroleum Refining (Puerto Rico) Corporation (1417). The service address for all Debtors is: PO Box 361988, San Juan, Puerto Rico 00936.

things, (i) authorizing the Debtors to sell substantially all of their assets free and clear of all liens, claims, encumbrances and other interests to Puma Energy International B.V. (the "Buyer") pursuant to the terms and conditions of that certain Asset Purchase Agreement, dated December 17, 2010, attached hereto as Exhibit 1 (the "Agreement");[2] (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith; and (iii) granting certain related relief, all as more fully described in the Motion and the Agreement; and the Court having entered an order on September 10, 2010 [D.I. 149] (the "Bidding Procedures Order") (i) approving procedures (the "Bidding Procedures") for (a) submitting bids for the purchase of substantially all of the Debtors' assets, and (b) conducting an auction for the Debtors' assets (the "Auction"); (ii) authorizing the Debtors to (a) enter into a stalking horse agreement for the purpose of establishing a minimum acceptable bid for the Debtors' assets, and (b) provide any stalking horse bidder with a break-up fee and expense reimbursement; and (iii) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale of the Debtors' assets; and the Court having entered an order on December 2, 2010 [D.I. 399] and a related Memorandum Opinion on December 8, 2010 [D.I. 416] (collectively, the "Rejection Order") approving the conditional rejection of certain executory contracts; and a hearing having been held to consider the relief requested in the Motion (the "Sale Approval Hearing"); and upon the record of the Sale Approval Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion and at the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement.

RLF1 3748944v. 1

Sale Approval Hearing establish just cause for the relief granted herein; and after due
deliberation and sufficient cause appearing therefor:

### THE COURT HEREBY FINDS THAT:[3]

#### Jurisdiction and Venue

A.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157
and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is
proper in this district and this Court under 28 U.S.C. §§ 1408 and 1409.

#### Statutory Predicates

B.    The statutory predicates for the relief requested in the Motion are sections
105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.

#### Final Order

C.    This Order constitutes a final and appealable order within the meaning of
28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent
necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as
made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason
for delay in the implementation of this Order and that waiver of any applicable waiting period is
appropriate, and expressly directs entry of judgment as set forth herein.

#### Compliance with Bidding Procedures Order

D.    As demonstrated by (i) the testimony and other evidence proffered or
introduced at the Sale Approval Hearing and (ii) the representations of counsel made on the

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and
conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to
Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law,
they are adopted as such.  To the extent any of the following conclusions of law constitute findings of
fact, they are adopted as such.

RLF1 3748944v. 1

record at the Sale Approval Hearing, the Debtors have thoroughly and fairly marketed the Acquired Assets and conducted the related sale process in good faith and in compliance in all respects with the Bidding Procedures and the Bidding Procedures Order. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit bids and to submit higher or otherwise better bids to purchase the Acquired Assets, and (iii) object or be heard with respect to the Motion and the relief granted by this Order. The Bidding Procedures were non-collusive, in good faith, substantially and procedurally fair to all parties, and obtained the highest value for the Acquired Assets for the Debtors, their creditors and their estates.

E.      The Auction was held on December 16, 2010 and December 17, 2010. The Debtors did not select a Stalking Horse Bidder (as defined in the Bidding Procedures) for the Acquired Assets. Prior to the Auction, and in accordance with the Bidding Procedures, the Debtors determined that the initial bid submitted by the Buyer was a Qualified Bid (as defined in the Bidding Procedures), and that a revised bid submitted by the Buyer, as reflected on the record of the Auction, was the Starting Auction Bid (as defined in the Bidding Procedures). In accordance with the Bidding Procedures, the Debtors, in consultation with Banco Popular de Puerto Rico ("Banco Popular") and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), determined that a further revised bid submitted by the Buyer, reflected on the record of the Auction and memorialized by the Agreement, is the Successful Bid (as defined in the Bidding Procedures).

### Notice

F.      As evidenced by the affidavits of service and publication previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Approval Hearing, the sale of the Acquired Assets (the "Sale"), and the assumption and

4

assignment of the Assumed Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, all applicable Local Rules, and in compliance with the Bidding Procedures Order. Such notice was good, sufficient and appropriate under the particular circumstances, and no other or further notice of the Motion, the Auction, Sale Approval Hearing, the Sale, assumption and assignment of the Assumed Contracts or entry of this Order is required.

G.    Actual written notice of the Motion, the Auction, the Sale Approval Hearing, the Sale, and the assumption and assignment of the Assumed Contracts, and a fair and reasonable opportunity to object or be heard with respect to the Motion, the Sale and the relief granted by this Order has been afforded to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee (the "United States Trustee"), (ii) counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee"), (iii) all known creditors of the Debtors, (iv) any entity known or reasonably believed to have asserted an interest in or lien, charge or encumbrance against any of the Acquired Assets, (v) all counterparties to the Assumed Contracts, (vi) any entity that has expressed a bona fide interest in acquiring the Acquired Assets, (vii) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service, (viii) the Securities and Exchange Commission, (ix) the United States Environmental Protection Agency, (x) any applicable state environmental agency, (xi) the United States Department of Justice, (xii) the United States Attorney's office, (xiii) the Attorneys General in any State or Commonwealth where the Acquired Assets are located, and (xiv) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

H.    The Debtors published notice of the Sale, the deadline to submit bids for the Acquired Assets, the time and place of the Auction, the time and place of the Sale Approval

Hearing, and the time for filing an objection to the Sale or the Motion, in the *New York Times* in English on September 15, 2010, and in *El Nuevo Dia* in Spanish on September 30, 2010. Such publication notice was good, sufficient and proper notice to any interested parties whose identities are unknown to the Debtors.

        I.      The Debtors served notice of the assumption and assignment of the Assumed Contracts on the non-Debtor counterparties to the Assumed Contracts, which notice included (i) the title of each Assumed Contract, (ii) the name of the counterparties to each Assumed Contract, (iii) the amounts, if any, determined by the Debtors to be necessary to be paid upon assumption of the Assumed Contracts (the "Cure Amounts"), and (iv) the deadline by which any counterparty to the Assumed Contracts must object to the assumption and assignment of the Assumed Contracts. The service of such notice was good, sufficient and appropriate under the particular circumstances and no other or further notice of the assumption and assignment of the Assumed Contracts or the Cure Amounts is required. Each counterparty to the Assumed Contracts has had an opportunity to object to the assumption by the Debtors and the assignment to the Buyer of the Assumed Contracts and to the Cure Amounts set forth in the aforementioned notice.

        J.      On December 19, 2010, the Debtors served notice of the selection of the Buyer as the successful bidder for the Acquired Assets on (i) the United States Trustee, (ii) counsel for the Creditors' Committee, (iii) all known creditors of the Debtors, (iv) any entity known or reasonably believed to have asserted an interest in or lien, charge or encumbrance against any of the Acquired Assets, (v) all counterparties to the Assumed Contracts, (vi) any entity that has expressed a bona fide interest in acquiring the Acquired Assets, (vii) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue

Service, (viii) the Securities and Exchange Commission, (ix) the United States Environmental Protection Agency, (x) any applicable state environmental agency, (xi) the United States Department of Justice, (xii) the United States Attorney's office, (xiii) the Attorneys General in any State or Commonwealth where the Acquired Assets are located, (xiv) all parties that have requested notice pursuant to Bankruptcy Rule 2002, and (xv) all Qualified Bidders (as defined in the Bidding Procedures).

   K. On November 9, 2010 and November 10, 2010, the Debtors served notice of the filing of the "Motion of Debtors Pursuant to Sections 105 and 365 of the Bankruptcy Code and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure for Entry of an Order Authorizing Conditional Rejection of Certain Franchise Agreement" [D.I. 288] (the "Rejection Motion") and the deadline to submit objections thereto on the non-Debtor parties to the agreements identified on Exhibit 2 attached hereto (the "Rejected Contracts"). On December 2, 2010 and December 14, 2010, the Debtors served notice of entry of the Rejection Order on the non-Debtor counterparties to the Rejected Contracts. Such notice was good, sufficient and appropriate under the particular circumstances, and no other or further notice of the rejection of the Rejected Contracts or entry of the Rejection Order is required under bankruptcy or non-bankruptcy law.

### Corporate Authority

   L. The Debtors have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of each of the Debtors. No further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Agreement, except as otherwise set forth in the Agreement.

RLF1 3748944v. 1

### Good Faith Purchaser

M.    The Buyer is purchasing the Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision and any other applicable or similar bankruptcy and non-bankruptcy law. The Buyer has at all times acted in good faith and will continue to act in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale. The Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

### Arm's-Length Sale

N.    The Agreement was negotiated, proposed and entered into by the Debtors and the Buyer without collusion, in good faith and from arm's-length bargaining positions. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the avoidance of the Sale or the Agreement or the imposition of costs or damages under section 363(n) of the Bankruptcy Code.

### Business Justification

O.    The Debtors have demonstrated good, sufficient and sound business reasons and compelling circumstances to enter into the Agreement, sell the Acquired Assets, assume and assign the Assumed Contracts and reject the Rejected Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate and reasonable exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and creditors, and other parties in interest. Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly, (ii) the Agreement and the terms thereof constitute the highest and/or best offer for the Acquired Assets, (iii) no other person or entity or group of persons or

8

entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer, (iv) the Sale pursuant to the terms of the Agreement will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses, and (v) unless the Sale is concluded expeditiously as provided for in the Motion and pursuant to the Agreement, recoveries to creditors may be diminished. The Debtors' determination that the Agreement constitutes the highest and/or best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

    P.  The terms and conditions of the Agreement, including the consideration to be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the transactions contemplated by the Agreement are in the best interests of the Debtors' estates. Approval of the Motion, the Agreement, the Sale, the assumption and assignment of the Assumed Contracts and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates and creditors, and other parties in interest.

### No Fraudulent Transfer

    Q.  The consideration provided by the Buyer for the Acquired Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest and/or best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors and estates than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, the Commonwealth of Puerto Rico, any state, territory, possession or the District of Columbia.

    R.  The Buyer is not a mere continuation of the Debtors or their estates, there is no continuity or common identity between the Buyer and any of the Debtors, and there is no continuity of enterprise between the Buyer and any of the Debtors. The Buyer is not holding

9

itself out to the public as a continuation of any of the Debtors. The Buyer is not a successor to any of the Debtors or their estates and the Sale does not amount to a consolidation, merger or de facto merger of the Buyer with or into any of the Debtors. The Sale of the Acquired Assets to the Buyer is not being undertaken for the purpose of escaping liability for any of the Debtors' debts or hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, the Commonwealth of Puerto Rico, any state, territory, possession or the District of Columbia.

## Free and Clear

S.      Except as otherwise expressly provided in the Agreement or this Order, the Acquired Assets shall be sold free and clear of all interests, obligations, rights, encumbrances, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), mortgages, deeds of trust, security interests, claims (including, any "claim" as defined in section 101(5) of the Bankruptcy Code), liabilities, debt obligations, losses, penalties, leases, charges, offsets, contracts, options, rights of first refusal, rights of first offer, rights of first sale, rights of notice, easements, servitudes, proxies, voting trusts or agreements, transfer restrictions under any agreement, conditional sale or other title retention agreements, judgments, hypothecations, demands, licenses, sublicenses, assignments, indentures, loan agreements, instruments, debts, rights of recovery, guaranties, contractual commitments, restrictions, recoupment, employee benefit agreements and obligations, collective bargaining agreements and obligations, claims based on reimbursement, contribution, indemnity, exoneration, products liability, tortious conduct, property damage, personal injury, alter-ego or taxes, claims based on pension plan contributions and related liabilities, environmental liabilities, claims and obligations under the PMPA, options to purchase, and Excluded Liabilities, in each case of whatever kind, nature, or description in, against or with

10

respect to any of the Acquired Assets, the Debtors or the Business having arisen, existed or accrued prior to and through the date of the closing of the Sale (the "Closing Date"), whether direct or indirect, absolute or contingent, choate or inchoate, known or unknown, matured or unmatured, liquidated or unliquidated, arising or imposed by agreement, understanding, law, equity, statute or otherwise and whether arising prior to, on or after the Petition Date, including claims or liabilities otherwise arising under doctrines of successor liability, de facto merger or substantial continuity or liabilities or obligations arising under any Law or Decree (collectively, "Interests").

   T.  Notwithstanding any provision to the contrary in the Agreement or this Order, the setoff and recoupment rights of the United States, the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority ("PREPA"), except against the Buyer, under applicable non-bankruptcy law shall be preserved and are unaffected.

   U.  The transfer of the Acquired Assets to the Buyer free and clear of all Interests (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) will not result in any undue burden or prejudice to any holders of any Interests as such Interests shall attach to the net proceeds of the Sale of the Acquired Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtors, their estates or other parties may possess with respect thereto. For the avoidance of doubt, nothing contained in the Agreement, including, without limitation, paragraph 5(l), regarding the allocation of the Purchase Price, shall prejudice any party's right to submit valuation evidence in support of its claim against the Debtors' estates.

RLF1 3748944v. 1

V.    The Debtors may sell the Acquired Assets free and clear of all Interests (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Holders of Interests against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Holders of Interests, including those who did object, fall within one or more of the other subsections of section 363(f), including without limitation section 363(f)(5) of the Bankruptcy Code because the holders of any such Interest could be compelled in a legal or equitable proceeding to accept a money satisfaction on account of such Interest, and are adequately protected by having their Interests, if any, attach to the proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges an Interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors, their estates or other parties may possess with respect thereto. For the avoidance of doubt, nothing contained in the Agreement, including, without limitation, paragraph 5(l), regarding the allocation of the Purchase Price, shall prejudice any party's right to submit valuation evidence in support of its claim against the Debtors' estates.

W.    The Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors' estates and respective creditors, if the Sale, and the assumption, assignment and sale of the Assumed Contracts, were not free and clear of all Interests (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities), or if the Buyer would, or in the future could, be liable for any such Interests.

RLF1 3748944v. 1

X.    Not selling the Acquired Assets free and clear of all Interests (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) would adversely impact the Debtors' efforts to maximize the value of their estates, and the Sale of the Acquired Assets other than one free and clear of all Interests (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) would be of substantially less benefit to the Debtors' estates.

### Validity of Transfer

Y.    The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Agreement.

Z.    The Acquired Assets constitute property of the Debtors' estates and good title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

### Assumed Contracts

AA.    The assumption and assignment of the Assumed Contracts, free and clear of Interests, pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

BB.    Pursuant to the terms of the Agreement, on or before the Closing Date, the Buyer and the Debtors, as applicable, shall have:  (i) cured, or provided adequate assurance of cure of, any monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii)

13

provided compensation, or adequate assurance of compensation, to any party for actual pecuniary loss to such party resulting from a monetary default existing as of and including the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and (iii) provided adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

### Rejected Contracts

CC.    The rejection of the Rejected Contracts pursuant to the terms of the Rejection Order and this Order is integral to the Agreement and is in the best interests of the Debtors, their estates and creditors, and other parties in interest, and represents a reasonable exercise of the Debtors' sound and prudent business judgment.

### Compelling Circumstances for an Immediate Sale

DD.    To maximize the value of the Acquired Assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale of the Acquired Assets occur within the time constraints set forth in the Motion, the Bidding Procedures Order, and the Agreement. Time is of the essence in consummating the Sale. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rules 6004 and 6006.

EE.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the approval and consummation of the Sale prior to, and outside of, a chapter 11 plan. The Sale pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtors and therefore, does not constitute a sub rosa plan.

14

FF.    Given all of the circumstances of these cases and the adequacy and fair value of the Purchase Price under the Agreement, the Sale of the Acquired Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment.

## IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.    The Motion is granted and approved as provided herein.  The Motion complies with all provisions of Local Rule 6004-1 other than those previously waived by the Court.

2.    All objections and responses to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections and responses, are overruled on the merits and denied with prejudice.

3.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order and the Rejection Order are incorporated herein by reference.

### Approval of the Agreement

4.    The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are approved.

5.    Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to take any and all actions necessary or appropriate to execute and deliver, perform under, consummate, implement and effectuate the Agreement together with any and all instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and the Sale, and to take all further actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, the Acquired Assets and Assumed Liabilities, or as may be necessary or appropriate to the performance of the Debtors'

15

obligations as contemplated by the Agreement, without any further corporate action or order of this Court.

**Transfer of the Acquired Assets**

6.      Except as otherwise expressly provided in the Agreement or this Order, pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Buyer on the Closing Date pursuant to the terms of the Agreement and this Order "as is where is" and free and clear of all Interests of any kind whatsoever with all such Interests to attach to the net proceeds of the Sale of the Acquired Assets received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets and subject to any claims and defenses the Debtors, their estates or other parties may possess with respect thereto.

7.      The transfer of the Acquired Assets to the Buyer will be, as of the Closing Date, a legal, valid, binding and effective transfer of the Acquired Assets, and, except as otherwise expressly provided in the Agreement or this Order, shall vest the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Interests accruing, arising or relating thereto any time prior to and through the Closing Date.  Except as otherwise expressly provided in the Agreement or this Order, the Buyer shall not assume or become liable for any Interests relating to the Acquired Assets, provided, however, that the Buyer shall not be relieved of liability with respect to Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities.

8.      Notwithstanding any provision in the Agreement or this Order, the Finca 785 property, as defined in the "Objection of Puerto Nuevo Development Corp./Jupiter Property Management, LLC to Debtors' Sale of Substantially All of the Debtors Assets" [D.I. 492] (the "Puerto Nuevo Sale Objection"), is not being sold pursuant to the terms of this Order pending

16

further order of this Court, disposition of the Pending Action (as defined in the Puerto Nuevo Sale Objection), or agreement of the parties; provided, however, that there shall be no adjustment to the Purchase Price in the event that the Finca 785 property is not ultimately conveyed to the Buyer, and further, provided, however, the Buyer shall not be liable for any liabilities relating to the Finca 785 property pending resolution of ownership of the Finca 785 property.

9.    Nothing in the Agreement or this Order releases, nullifies, or enjoins the enforcement of any liability to a Governmental Entity under police or regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

10.    To the fullest extent permitted under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, Permit, registration and governmental authorization or approval of the Debtors with respect to the Acquired Assets or the Business, and all such licenses, Permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date, provided, however, that the Buyer complies with all applicable legal requirements under non-bankruptcy law governing such transfers, and provided, further, however, that nothing in the Agreement or this Order releases the Buyer from complying with all applicable non-bankruptcy laws governing such transfers.

11.    Notwithstanding any provision of the Agreement or this Order to the contrary, other than with respect to the Specified Environmental Claims, it shall be a condition precedent to the Buyer's obligation to close the Sale that the Buyer shall have entered into an agreement with the United States government, reasonably acceptable to the Buyer, with respect to the Buyer's obligations in connection with any Environmental Claims related to the Acquired

17

Assets following the Closing, and which agreement shall set forth the framework by which the Buyer agrees to assume unperformed injunctive obligations of the Debtors under the following administrative orders issued with respect to the Debtors' facility in Bayamón, Puerto Rico: (i) the Unilateral Administrative Order for Removal Activities, Docket No. CWA-02-2010-3801, issued by the EPA, Region 2, on February 19, 2010, and (ii) Administrative Order on Consent, Docket No. II RCRA-95-3008(h)-0303, issued by the EPA, Region 2, on October 12, 1995.  As one of the factors in the determination of what is reasonably acceptable, the Buyer acknowledges and agrees that it accepts, and that any such agreement shall conform with, the cooperative owner expectations outlined in the letter from the United States Department of Justice to All Potential Buyers, dated December 9, 2010, and that such agreement shall be subject to the approval of the appropriate officials of the United States government.  Assumption of the administrative orders referenced in this Paragraph 11 shall not relieve the Buyer of any other liability pursuant to Paragraph 9 of this Order.

12.    Notwithstanding any provision in the Motion, this Order or any documents implementing the Sale (collectively, "Documents"), any sale of the Bayamon refinery, to the extent the Buyer wishes to take advantage of the Foreign Trade Zone subgrant, will be accomplished in the ordinary course of business as if the Debtors' bankruptcy cases were never commenced and the Debtors and the Buyer shall comply with all applicable non-bankruptcy law, federal regulations and statutes, including but not limited to (i) 15 C.F.R. Part 400, specifically, section 400.28, (ii) 19 C.F.R. Part 146, specifically section 146.7, and (iii) the Foreign Trade Zone manual.  Moreover, without limiting the foregoing, nothing in the Documents shall be interpreted to set cure amounts for the Foreign Trade Zone subgrant or to require any governmental unit to consent to Buyer's use of the Foreign Trade Zone subgrant.

RLF1 3748944v. 1

13.    Except as expressly permitted or otherwise specifically provided by the Agreement or this Order, all persons and entities holding Interests in all or any portion of the Acquired Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Business prior to and including the Closing Date or the transfer of the Acquired Assets to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or its successors or assigns, their property or the Acquired Assets, such persons' or entities' Interests in and to the Acquired Assets.

14.    Any rights of eminent domain and rights of condemnation of PREPA under applicable law, to the extent that PREPA has rights as a Governmental Entity, are hereby reserved and preserved, and are unaffected by this Order or the Sale. Further, notwithstanding any provisions to the contrary in the Agreement or this Order, the Debtors acknowledge that the fuel oil and diesel fuel listed as PREPA's property in Exhibit 14 of the Statement of Financial Affairs of Caribbean Petroleum Refining L.P. [D.I. 297] (the "PREPA Fuel") are not property of the Debtors or their estates, and are not Acquired Assets for purposes of the Agreement, the Sale or this Order. PREPA or the Debtors, as applicable, shall remove the PREPA Fuel from the Acquired Assets prior to Closing of the Sale pursuant to the terms of that certain fuel-oil terminalling agreement between PREPA and Caribbean Petroleum Refining L.P., dated May 27, 2006, which was subsequently amended by an agreement dated May 28, 2007, and that certain light-distillate terminalling agreement between PREPA and Caribbean Petroleum Refining L.P., dated June 18, 2007.

15.    On the Closing Date, each holder of an Interest in the Acquired Assets (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) is authorized and directed to execute such documents and take all other actions as may be

19

necessary to release such Interest, if any, as provided for herein, as such Interests may have been recorded or may otherwise exist.

16.    The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

17.    Upon consummation of the transactions contemplated in the Agreement, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

18.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Agreement and this Order.

19.    All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer or its assignee on the Closing Date.

20.    A certified copy of this Order may be filed with any appropriate clerk and/or recorded with any appropriate recorder to act to cancel any of the Interests of record in the Acquired Assets (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) and to resolve any title issues with respect to the Acquired Assets.

21.    If any person or entity which has filed statements or other documents or agreements evidencing Interests with respect to all or any portion of the Acquired Assets shall

20

not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Interests that the person or entity has or may assert with respect to all or any portion of the Acquired Assets (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities), the Debtors and the Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

22.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

### Assumption, Assignment and Sale of Assumed Contracts

23.     Except as otherwise expressly provided in the Agreement or this Order, upon the Closing Date, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, the Debtors are authorized to (a) assume each of the Assumed Contracts and assign the Assumed Contracts to the Buyer free and clear of all Interests of any kind or nature whatsoever and (b)

21

execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer.

24.    The Cure Amounts set forth on Exhibit 3 attached hereto are the sole amounts necessary to be paid upon assumption of the Assumed Contracts under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code and the payment of the applicable Cure Amounts (if any) by the Buyer and, to the extent the Cure Amounts exceed the Buyer Cure Amounts Cap, the Debtors, shall (a) effect a cure of all defaults existing under the Assumed Contracts as of and including the Closing Date and (b) compensate counterparties to the Assumed Contracts for any actual pecuniary loss resulting from all defaults existing under the Assumed Contracts as of and including the Closing Date.  Upon the payment of the Cure Amounts, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Amounts shall not be subject to further dispute or audit, including any based on performance prior to the Closing Date, irrespective of whether such Assumed Contract contains an audit clause.  After the payment of the Cure Amounts by the Buyer and the Debtors, as applicable pursuant to the Buyer Cure Amounts Cap, neither the Debtors nor the Buyer shall have any further liabilities to the counterparties to the Assumed Contracts other than the Buyer's obligations under the Assumed Contracts that accrue and become due and payable on or after the Closing Date.

25.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or

condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.

26.    Each Assumed Contract constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code and all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts have been satisfied.  Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, (i) the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts, (ii) the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts, and (iii) the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

27.    The Buyer has provided adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

28.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption, assignment and sale of the Assumed Contracts.  The validity of the assumption, assignment and sale to the Buyer shall not be affected by any dispute between any of the Debtors or their affiliates and another party to an Assumed Contract regarding the payment of any amount, including any Cure Amount under the Bankruptcy Code.  Upon assignment to the Buyer, the Assumed Contracts shall be valid and binding, in full force and effect and enforceable by the Buyer in accordance with their respective terms.

RLF1 3748944v. 1

29.    Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to the Assumed Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of and including the Closing Date under the Agreement or arising by reason of the closing of the Sale. Any party that may have had the right to consent to the assignment of a Assumed Contract is deemed to have consented to such assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if such party failed to object to the assumption and assignment of such Assumed Contract.

### Rejection of the Rejected Contracts

30.    The Rejected Contracts constitute executory contracts for purposes of section 365 of the Bankruptcy Code and upon the Closing Date, shall be deemed rejected pursuant to section 365 of the Bankruptcy Code notwithstanding any provisions of the PMPA without any other or further notification of such rejection to the non-Debtor parties to the Rejected Contracts and without implicating any rights that the non-Debtor parties to the Rejected Contracts may assert under section 365(h) of the Bankruptcy Code. The non-Debtor parties to the Rejected Contracts shall not retain any rights under section 365(h) of the Bankruptcy Code in the Rejected Contracts, including any right of possession or quiet enjoyment. The Buyer shall take title and possession of any Acquired Assets previously subject to any Rejected Contract free and clear of any Interests, including any rights and interests held by, or obligations owed to, the non-Debtor parties to such Rejected Contracts under the PMPA and section 365(h) of the Bankruptcy Code.

31.    The Buyer's obligation to consummate the transactions contemplated in the Agreement in connection with the Closing is subject to satisfaction or waiver of the

24

conditions set forth in Section 7 of the Agreement including, without limitation, that the Bankruptcy Court shall have entered the Rejection Order, such order shall be a Final Order, and no order staying, reversing, modifying or amending the Rejection Order shall be in effect on the Closing Date which has the effect of preventing the Debtors from rejecting substantially all of the Franchise Agreements.

## **Related Relief**

32.    Upon the Closing Date and except as otherwise expressly provided in the Agreement, this Order or by stipulations filed with or announced to this Court with respect to a specific matter, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its successors and assigns, or the Acquired Assets, with respect to any (a) Interest (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) arising under, out of, in connection with or in any way relating to the Debtors, the Buyer, the Acquired Assets, the Business or the operation of the Acquired Assets or the Business prior to and including the Closing Date, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets or properties, (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Buyer, its successors or assigns, assets or properties, (iii) creating, perfecting or enforcing any Interest (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities) against the Buyer, its successors or assigns, assets or properties, (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due the Buyer or its successors or assigns, or (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the

25

provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof.

33.    Except as otherwise expressly provided in the Agreement or this Order, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets or the Business except with respect to Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities.    Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement or this Order, the Buyer shall not be liable for any claims or Liabilities against the Debtors or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of and including the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to and including the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Business or any of the Acquired Assets prior to and including the Closing Date. The Buyer has given substantial consideration under the Agreement for the benefit of the holders of any Interest in the Debtors or any of the Acquired Assets.    The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests in the Debtors or any of the Acquired Assets (other than Liens created by the Buyer, the Permitted Liens and the Assumed Liabilities).

RLF1 3748944v. 1

34.    The transactions contemplated by the Agreement are undertaken by the Buyer and the Debtors without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such Sale are duly stayed pending such appeal.

35.    Upon the Closing Date, the proceeds of the Sale shall be deposited in an escrow account as cash collateral of the Prepetition Lender and the Postpetition Lender (both as defined in this Court's "Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Senior Secured Financing, (B) Use Cash Collateral, (C) Grant Liens and Superpriority Claims to the Postpetition Lender, and (D) Provide Adequate Protection to the Prepetition Lender and (II) Granting Related Relief" [D.I. 148] (the "Final DIP Order")), and be subject to (i) the Final DIP Order and (ii) all Interests in such proceeds in the order of their priority, with the same validity, force and effect which they now have as against the respective Acquired Assets sold and subject to any claims and defenses the Debtors, their estates or other parties may possess with respect thereto.  Such escrowed proceeds of the Sale shall only be disbursed in accordance with any further order(s) of the Court, including, without limitation, an order confirming a chapter 11 plan of liquidation.

36.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

27

37.    Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, close the transactions contemplated under the Agreement and take any action and perform any act authorized under this Order.

38.    Nothing in this Order or the Agreement approves or provides for the transfer to the Buyer of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Debtors' estates.

39.    No bulk sales law or any similar law of any state or other jurisdiction, including the Commonwealth of Puerto Rico, applies in any way to the Sale.

40.    There are no brokers involved in consummating the Sale and no brokers' commissions are due.

41.    The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

42.    The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; and provided further that the Prepetition Lender and the Postpetition Lender have provided express written consent to such modification, amendment or supplement.

RLF1 3748944v. 1

43.     The terms and provisions of the Agreement and this Order shall be binding in all respects upon the Debtors, their respective estates and creditors, all holders of equity interests in any of the Debtors, all holders of any Interest in the Acquired Assets, the Buyer and all successors and assigns of the Buyer, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyer and their respective successors and assigns.

44.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Agreement, the Sale or this Order.

45.     Each and every federal, state, and local governmental agency or department is directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

46.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

47.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.

48.     To the extent there are any inconsistencies between the terms of this Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

49.     The provisions of this Order are nonseverable and mutually dependent.

Dated: December **22**, 2010
     Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

RLF1 3748944v. 1