IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------x

In re                                        :       Chapter 11
                                             :
CARIBBEAN PETROLEUM CORP., et al.,[1]        :       Case No. 10-12553 (KG)
                                             :
                        Debtors.             :       Jointly Administered
                                             :
                                             :       **Re: Docket No. 960**

---------------------------------------------------------------------x

## DECLARATION OF ROY MESSING IN SUPPORT OF
## CONFIRMATION OF THE FOURTH AMENDED JOINT PLAN
## OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY
## CODE PROPOSED BY THE DEBTORS, THE STATUTORY COMMITTEE
## OF UNSECURED CREDITORS, AND BANCO POPULAR DE PUERTO RICO

I, Roy Messing, hereby declare under penalty of perjury that the following is true

and correct to the best of my knowledge, information and belief:

1.      I am over the age of 18 and competent to testify. I am a Senior Managing

Director of FTI Consulting, Inc. ("FTI"), the crisis managers retained by Caribbean Petroleum

Corporation ("CPC"), Caribbean Petroleum Refining L.P. and Gulf Petroleum Refining (Puerto

Rico) Corporation (collectively, the "Debtors"), and am currently the Restructuring Officer

appointed in these cases. I have 20 years of strategic consulting, operational turnaround and

restructuring experience in a wide variety of industries including manufacturing, financial

services, commercial real estate, and chemicals and refining. Prior to joining FTI, I served as a

Managing Director at a boutique turnaround crisis management firm, XRoads Solutions Group,

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal
tax identification number) are: Caribbean Petroleum Corporation (7836), Caribbean Petroleum Refining
L.P. (1421), and Gulf Petroleum Refining (Puerto Rico) Corporation (1417). The service address for all
Debtors is: PO Box 361988, San Juan, Puerto Rico 00936.

held numerous senior executive interim management roles and was an Engagement Manager at McKinsey & Company, an international strategic consulting firm. I have advised numerous public and private corporations and their lenders in complex restructurings. I am familiar with the day-to-day operations, businesses and financial affairs of the Debtors.

2.    I submit this declaration (the "Declaration") in support of confirmation of the "Fourth Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico" dated May 6, 2011 (as amended, and as it may be amended further in accordance with the terms therein, the "Joint Plan", see D.I. 960).[2]  I have reviewed and am familiar with the Joint Plan and accompanying disclosure statement (the "Disclosure Statement"). I am familiar with the documents comprising the Plan Supplement. Together with the Debtors' legal advisors, I have reviewed the requirements for confirmation of the Joint Plan under section 1129 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). If called upon, I would testify competently to the facts set forth in this Declaration. Unless otherwise stated, I have personal knowledge of the facts stated in this Declaration.

3.    Based on my personal involvement in the plan process in these cases, my understanding of the Joint Plan, and discussions with the Debtors' advisors, I believe that the Joint Plan complies with the applicable provisions of the Bankruptcy Code, that the Joint Plan was proposed in good faith, and that the Debtors, acting through their officers, directors, and professionals, have conducted themselves in a manner that complies with applicable law in

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Joint Plan.

relation to the formulation and negotiation of, and the solicitation of votes with respect to, the

Joint Plan.

**The Joint Plan's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

> 4.    On the basis of my understanding and discussions with the Debtors' legal

advisors, the Joint Plan satisfies section 1129(a)(1) because it complies with the mandatory

provisions of sections 1122 and 1123(a) of the Bankruptcy Code as follows:

- **Sections 1122 and 1123(a)(1) of the Bankruptcy Code:** Article IV of the Joint Plan provides for the separate classification of Claims against, and Equity Interests in, the Debtors, as required by section 1123(a)(1) and is a separate plan for each of the Debtors. The Joint Plan designates eight Classes, comprised of seven Classes of Claims and one Class of Equity Interests. Such classification complies with section 1122(a) of the Bankruptcy Code because each Class (or sub-Class) contains only Claims or Equity Interests that are substantially similar to each other. In addition, Claims of the type described in sections 507(a)(2), 507(a)(3) and 507(a)(8) are not classified in Article IV of the Joint Plan. Rather, section 507(a)(3) is inapplicable to the Joint Plan because the Debtors' chapter 11 cases were voluntarily filed, and the treatment of claims of the type described in section 507(a)(2) (Administrative Expense Claims) and section 507(a)(8) (Priority Tax Claims) is addressed in Article III of the Joint Plan.

- **Section 1123(a)(2) of the Bankruptcy Code:** As required by section 1123(a)(2), Article IV of the Joint Plan specifies whether each Class of Claims or Equity Interests is impaired.

- **Section 1123(a)(3) of the Bankruptcy Code:** As required by section 1123(a)(3), Article V of the Joint Plan sets forth the treatment of each impaired Class of Claims or Equity Interests.

- **Section 1123(a)(4) of the Bankruptcy Code:** As required by section 1123(a)(4), the Joint Plan provides that the treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class, unless the holder of the Claim or Equity Interest agrees to less favorable treatment.

- **Section 1123(a)(5) of the Bankruptcy Code:** As required by section 1123(a)(5), Article VI and various other provisions of the Joint Plan, together with the Plan Supplement, provide adequate means for implementation of the Joint Plan.

RLF1 4004884v 1

- <u>Section 1123(a)(6) of the Bankruptcy Code</u>: Because the Joint Plan is a liquidating plan and does not provide for the issuance of equity or other securities, section 1123(a)(6) is inapplicable to the Joint Plan.

- <u>Section 1123(a)(7) of the Bankruptcy Code</u>: As required section 1123(a)(7), Section 6.3 of the Joint Plan provides for the appointment of the Liquidation Trustee to administer the Liquidation Trust, in all respects consistent with the interests of creditors and public policy.

- <u>Section 1123(a)(8) of the Bankruptcy Code</u>: Because none of the Debtors are individuals, section 1123(a)(8) is inapplicable to the Joint Plan.

On the basis of my understanding and discussions with the Debtors' legal advisors, section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan. The Joint Plan contains the following provisions allowed by section 1123(b):

- <u>Section 1123(b)(1) of the Bankruptcy Code</u>: As permitted by section 1123(b)(1), the Joint Plan impairs or leaves unimpaired Classes of Claims and Equity Interests. Specifically, pursuant to Article IV of the Joint Plan, Class 1 (Priority Non-Tax Claims) is unimpaired and the following seven Classes are impaired: Class 2 (FirstBank Secured Claims); Class 3 (BPPR Secured Claims); Class 4 (Other Secured Claims); Class 5 (General Unsecured Claims); Class 6 (Intercompany Claims); Class 7 (Subordinated Claims) and Class 8 (Equity Interests).

- <u>Section 1123(b)(2) of the Bankruptcy Code</u>. As permitted by section 1123(b)(2), Article IX of the Joint Plan provides for the rejection of the Debtors' executory contracts and unexpired leases that have not been previously assumed or rejected under section 365 of the Bankruptcy Code.

- <u>Section 1123(b)(3)(A) of the Bankruptcy Code</u>. As permitted by section 1123(b)(3)(A), Article II of the Joint Plan implements and effectuates the BPPR Settlement and the FirstBank Settlement. Also, pursuant to Section 11.6(a) of the Joint Plan, the Debtors will release the Released Parties from, among other things, all Claims and Causes of Action held by the Debtors or their Estates against the Released Parties. Further, Section 8.4 of the Joint Plan provides that the Liquidation Trustee shall have the exclusive authority to compromise, settle, or otherwise resolve any claim or interest that the Debtors' Estates may hold against any entity, without the necessity for notice to or approval by the Bankruptcy Court or any other party in interest.

- <u>Section 1123(b)(3)(B) of the Bankruptcy Code</u>. As permitted by section 1123(b)(3)(B), pursuant to Sections 6.10(a) and 11.1 of the Joint Plan, the

Liquidation Assets will be transferred to and vest in the Liquidation Trust on the Effective Date, and Section 6.2(b) of the Joint Plan provides that the Liquidation Trustee shall, among other things, (i) investigate, commence, and prosecute all Causes of Action transferred to the Liquidation Trust to judgment or settlement, and take all other necessary and appropriate steps to collect, recover, liquidate or otherwise reduce such Causes of Action and Accounts Receivable to Cash, and (ii) file and prosecute objections to, and negotiate, settle, or otherwise resolve, any and all Disputed Claims.

- <u>Section 1123(b)(5) of the Bankruptcy Code</u>.    As permitted by section 1123(b)(5), the Joint Plan sets forth, among other things, the Debtors' proposed treatment of unsecured and secured Claims against the Debtors' estates.    In certain instances, the Debtors propose to modify the rights of certain claimants, while in others the Debtors propose to leave particular Classes of Claims unimpaired, all in a manner permissible under the Bankruptcy Code.

- <u>Section 1123(b)(6) of the Bankruptcy Code</u>. In accordance with section 1123(b)(6), the Joint Plan provides for, among other things, (i) the Claims Administration Procedure for the determination and liquidation of Tort Claims (Section 6.7); (ii) the establishment of the Administrative and Priority Claims Reserve (Section 6.8); (iii) the establishment of the General Unsecured Claims Reserve (Section 6.9); and (iv) creation of the Liquidation Trust (Section 6.2).

Additionally, the Joint Plan includes certain exculpation (the "<u>Exculpation</u>", <u>see</u> Section 11.5), release (the "<u>Release</u>", <u>see</u> Section 11.6), and injunction (the "<u>Injunction</u>", <u>see</u> Section 11.7) provisions with respect to certain Claims and Causes of Action against the Released Parties. It is my understanding, based on discussions with the Debtors' legal advisors, that the Exculpation, Release and Injunction provisions of the Joint Plan are appropriate, fair and equitable, and consistent with the applicable provisions of the Bankruptcy Code. These provisions are the result of arm's-length negotiations among key constituencies in these cases, and given for valuable consideration.

Specifically, the Exculpation is properly limited to those parties, individuals and professionals who played an integral role during the administration of these Chapter 11 Cases and in the development of the Joint Plan, and only for acts or conduct related to these Chapter 11 Cases, but excluding acts constituting fraud, gross negligence or willful misconduct by the Released Parties.

Further, the Release by the Debtors pursuant to Section 11.6(a) is appropriate because (i) the Debtors and the Released Parties share an identity of interest; (ii) the Released Parties have made substantial contributions to the Joint Plan, including (a) BPPR and FirstBank have waived part of their claims and have allocated portions of their recoveries to pay other Claims under the Joint Plan, (b) certain Guarantor Affiliates have agreed to subordinate their claims; (c) the Guarantors and First Oil International, Ltd. have executed a plan support agreement; (d) Gad Zeevi has agreed to facilitate the collection of certain

insurance proceeds to fund distributions under the Joint Plan, and (e) the Released Parties played a key role in the marketing and sale of the Debtors' assets; (iii) parties that voted on the Joint Plan have overwhelmingly accepted the Joint Plan; and (iv) the Debtors have consented to the Release, and the Release is supported by the major constituencies in these Chapter 11 Cases.

The Release pursuant to Section 11.6(b) is appropriate because it is consensual - no holder of a Claim or Equity Interest shall be subject to the Release unless such holder has both voted to accept the Joint Plan and elected not to opt-out of the Release.

The Injunction is also appropriate because it only enjoins the assertion of Causes of Action released pursuant to the Release, and both the Injunction and Release are integral and necessary aspects for successful implementation of the Joint Plan.

On the basis of my understanding and discussions with the Debtors' legal advisors, because none of the Debtors are individuals, section 1123(c) of the Bankruptcy Code is inapplicable to the Joint Plan, and because the Joint Plan does not provide for the cure of any default, section 1123(d) of the Bankruptcy Code is also inapplicable to the Joint Plan.

**The Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

5.    On the basis of my understanding and discussions with the Debtors' legal advisors, the Proponents have satisfied the requirements of section 1129(a)(2) by complying with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.

6.    On March 22 2011, after notice and a hearing, the Court entered an order approving the Disclosure Statement and approving the form and manner of soliciting votes on the Joint Plan (the "Disclosure Statement Order", D.I. 795).

7.    On March 25, 2011, the Debtors commenced solicitation of votes to accept or reject the Joint Plan. The details regarding the manner in which votes were solicited is set forth in the Affidavit of Service of solicitation materials for the Joint Plan by Shakira Ferguson of Kurtzman Carson Consultants LLC ("KCC"), sworn to and filed on March 29, 2011 (the "Solicitation Affidavit", D.I. 815).

6

8.    After commencing solicitation of votes to accept or reject the Joint Plan, the Debtors identified a clerical error in the Disclosure Statement: the estimated range of recoveries for holders of Allowed Class 5 General Unsecured Claims should be approximately 0.22% - 19.3%, rather than the approximate 0.78% - 19.3% included in the Disclosure Statement. Despite this, based on my understanding and discussions with the Debtors' legal advisors, as a result of the claims resolution process, the Debtors estimate that the recovery for holders of Class 5 General Unsecured Claims will still fall within the range provided in the Disclosure Statement.

9.    The voting deadline for the Joint Plan was April 22, 2011.   On May 6, 2011, KCC filed its sworn declaration describing the methodology it used in tabulating votes for and against the Joint Plan (the "Voting Declaration", D.I. 958).

10.    To the best of my knowledge and belief, as described in the Solicitation Affidavit and the Voting Declaration, the Debtors have used the forms and followed the procedures set forth and approved in the Disclosure Statement Order in transmitting the Disclosure Statement, the Joint Plan and related documents and notices to known holders of Claims and Equity Interests and in soliciting and tabulating votes on the Joint Plan. Additionally, the Plan Proponents did not solicit acceptances of the Joint Plan from any creditor or equity interest holder prior to the transmission of the Disclosure Statement.

11.    To the best of my knowledge and belief, good, sufficient and timely notice of the Confirmation Hearing has been provided to all known record holders of Claims and Equity Interests and all other parties in interest to whom notice was required to have been provided in the Disclosure Statement Order.  The Debtors also caused the publication of the "Notice of Confirmation Hearing and Objection Deadline with Respect to the Joint Plan" in The New York Times (in English) and El Nuevo Día (in Spanish) on March 25, 2011.  See Affidavit of

Publication of Notice of Confirmation Hearing and Objection Deadline with Respect to the Joint Plan by Alice Weber on Behalf of The New York Times [D.I. 914]; Affidavit of Publication of Notice of Confirmation Hearing and Objection Deadline with Respect to the Joint Plan by Lissette Cortes on Behalf of El Nuevo Día [D.I. 915]. The Confirmation Hearing was initially scheduled for April 28, 2011 at 10:00 a.m. (EDT). On April 25, 2011, the Debtors filed a notice adjourning the Confirmation Hearing until May 9, 2011 at 10:00 a.m. (EDT) [D.I. 916].

12.    Additionally, it is my further understanding that, based on the Solicitation Affidavit and the Voting Declaration, the Debtors have properly solicited and tabulated votes from all holders of Allowed Claims entitled to distributions under the Joint Plan whose claims or interests are impaired by the Joint Plan (*i.e.*, Classes 2, 3, 4, and 5).

**The Joint Plan Is Proposed in Good Faith (11 U.S.C. § 1129(a)(3))**

13.    On the basis of my understanding and discussions with the Debtors' legal advisors, the Debtors have met their good faith obligations under section 1129(a)(3). The Joint Plan is jointly proposed by the Debtors, BPPR and the Creditors Committee and is based upon extensive arm's-length negotiations among these parties. The Joint Plan is designed with the honest purpose of liquidating the Debtors' assets and maximizing their value for the benefit of their creditors. The fundamental fairness of the Joint Plan and the appropriate, honest and well intended way it balances competing interests in these cases is demonstrated by the fact that it has been jointly proposed by the Creditors Committee and BPPR, supported by the other parties in interest who have reached agreement with the Debtors over the treatment of their claims, and the overwhelming acceptance of the Joint Plan by creditors who submitted ballots. Moreover, as set forth in the liquidation analysis prepared by the Debtors and attached as Exhibit C to the Disclosure Statement (the "Liquidation Analysis"), the Joint Plan provides each holder of a

8

Claim or Equity Interest who does not otherwise vote in favor of the Joint Plan with property of a value, as of the Effective Date, that is not less than the amount that such holder of a Claim or Equity Interest would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

**Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))**

14.    On the basis of my understanding and discussions with the Debtors' legal advisors, pursuant to the "Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals", dated September 8, 2010 (D.I. 138), the Court has authorized and approved the payment of certain fees and expenses of professionals retained in these cases.  These fees and expenses, as well as (i) all other accrued fees and expenses of non-ordinary course professionals retained by the Debtors and the Creditors Committee, (ii) any fees and expenses of ordinary course professionals that exceeded the applicable caps, and (iii) any success fees required to be paid by the Debtors to financial advisors retained by the Debtors and the Creditors Committee through the Effective Date, remain subject to final review by the Bankruptcy Court for reasonableness under sections 327, 328, 330 and 331 of the Bankruptcy Code.  Section 3.1(b) of the Joint Plan provides that the deadline for all professionals to file final fee applications for payment of compensation and reimbursement of expenses under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall be thirty days after the Effective Date, or the Administrative Expense Claim Bar Date.

15.    Pursuant to paragraph 42 the Final DIP Order, BPPR is entitled to receive payment of professional fees by the Debtors (the "BPPR Adequate Protection Payments"), without application by or on behalf of these professionals to the Bankruptcy Court and without notice and a hearing.  The BPPR Fees Claim, which includes Claims of BPPR on account of

professional fees and expenses incurred by BPPR in connection with these cases less the BPPR Adequate Protection Payments, will be fixed and approved pursuant to the Confirmation Order. The aforementioned fees are reasonable and, therefore, the Debtors have complied with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**Directors, Officers and Executive Compensation (11 U.S.C. § 1129(a)(5))**

      16.    On the basis of my understanding and discussions with the Debtors' legal advisors, the Debtors have satisfied section 1129(a)(5) of the Bankruptcy Code. Because the Debtors are liquidating, on the Effective Date, the Debtors shall cause the Liquidation Trust Assets to be transferred to the Liquidation Trust in accordance with Section 6.1(c) of the Joint Plan, and the members of the board of directors or managers, as the case may be, of each of the Debtors shall be deemed to have resigned, and each of the Debtors shall be deemed dissolved. See Joint Plan, § 6.1(b). The Joint Plan provides that FTI Consulting, Inc. shall be appointed as the Liquidation Trustee, and that a Liquidation Trust Oversight Board will be appointed as the advisory board to the Liquidation Trust. The Liquidation Trust Oversight Board will be comprised of the following members: AOT Limited and National Response Corporation, who were appointed by the Committee, and the Debtors' Chief Financial Officer, Nicolás López Peña, who was appointed by the Debtors. The Liquidating Trust Agreement provides procedures for appointing successor Liquidation Trustees, if that should become necessary. Additionally, the Liquidation Trustee's compensation and terms of employment are disclosed in the Liquidating Trust Agreement, as filed in the Plan Supplement. Based on the foregoing, I believe that the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

RLF1 4004884v 1

**No Rate Changes (11 U.S.C. § 1129(a)(6))**

17.    Because the Joint Plan does not change any rates that require approval by any governmental regulatory commission, section 1129(a)(6) is inapplicable to the Joint Plan. See Join Plan, § 13.18.

**The Joint Plan Satisfies the Best Interests**
**Test of the Bankruptcy Code (11 U.S.C. § 1129(a)(7))**

18.    On the basis of my understanding and discussions with the Debtors' legal advisors, I have been informed that section 1129(a)(7) – the "best interests test" – requires that, with respect to each impaired Class of Claims or Equity Interests, each holder of a Claim or Equity Interest of such Class must either (a) accept the Joint Plan or (b) receive or retain under the Joint Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code.

19.    Based on my understanding and discussion with the Debtors' legal advisors, I believe the Joint Plan satisfies the "best interests" test. As described in more detail in the Liquidation Analysis, the Debtors believe that the value of any distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code would be less than the value of distributions under the Joint Plan because, among other reasons, the proposed treatment of the Debtors' collective assets under the Joint Plan is more efficient, less expensive and more likely to result in maximum distributions than in separate chapter 7 cases for each of the Debtors. BPPR, as the prepetition senior secured creditor and DIP Lender, has agreed, in accordance with the BPPR Settlement, that the Sale Proceeds may be allocated to pay Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims and General Unsecured Claims. These distributions may not otherwise be available in a chapter 7

case, as BPPR's agreement to allocate certain of its Collateral to pay such Claims is conditioned upon confirmation and consummation of the Joint Plan.

20.     Further, the Joint Plan provides specific procedures for efficient and expeditious allowance or disallowance of Claims and for prompt distributions to holders of certain Allowed Claims, which would likely not be available in separate chapter 7 cases for the Debtors.  Additionally, the substantial costs related to the appointment of the chapter 7 trustee and professionals to represent the trustee would diminish or negate any potential recoveries with respect to certain Classes of Claims.  Accordingly, pursuant to the Liquidation Analysis, holders of Allowed General Unsecured Claims, Intercompany Claims, Subordinated Claims and Equity Interests would likely receive no distributions whatsoever in a chapter 7 liquidation, and holders of Allowed Other Secured Claims would receive the same treatment.  Thus, holders of impaired Claims or Equity Interests will receive or retain property of equal or lesser value if these Chapter 11 Cases were converted to a chapter 7 liquidation.

**Acceptance by All Classes (11 U.S.C. § 1129(a)(8))**

21.     On the basis of my understanding and discussions with the Debtors' legal advisors, under the Joint Plan, Class 1 (Priority Non-Tax Claims) is not impaired and conclusively presumed to have accepted the Joint Plan pursuant to section 1126(f) of the Bankruptcy Code. Class 2 (FirstBank Secured Claims), Class 3 (BPPR Secured Claims), Class 4 (Other Secured Claims),[3] and Class 5 (General Unsecured Claims) are each impaired under the

---

[3] Class 4 initially rejected the Joint Plan as a result of the vote of the Puerto Rico Electric Power Authority ("PREPA"), the only creditor who submitted a ballot in each sub-Class of Class 4.  However, the Debtors and PREPA have reached an agreement in principle whereby PREPA's claims against the Debtors and its objections to the Joint Plan will be resolved and PREPA shall be deemed to vote to accept the Joint Plan as a Class 4 claimholder against each of the Debtors.  The Debtors anticipate that this agreement will be memorialized pursuant to an agreed order to be filed with the Court prior to the Confirmation Hearing.  If this agreement is not finalized prior to then, the Debtors will be prepared to confirm the Joint Plan over the rejection of Class 4 and will file any further pleadings that are necessary.

Joint Plan, but have voted to accept the Joint Plan. The remaining Classes – Class 6 (Intercompany Claims), Class 7 (Subordinated Claims) and Class 8 (Equity Interests) – are impaired and deemed to reject the Joint Plan. Although certain impaired Classes have not accepted the Joint Plan and therefore section 1129(a)(8) is not satisfied, it is my understanding that the Joint Plan may still be confirmed because the Joint Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as discussed more fully below.

**Treatment of Administrative, Priority Tax and**
**Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9))**

22.    On the basis of my understanding and discussions with the Debtors' legal advisors, the Debtors have complied with section 1129(a)(9) of the Bankruptcy Code. In accordance with section 1129(a)(9)(A), Section 3.1 of the Joint Plan provides that except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, or as otherwise provided in the Joint Plan, each holder of an Allowed Administrative Expense Claim shall receive in full settlement, satisfaction, and release of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as practicable after, the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the Debtors or the Liquidation Trustee and the holder of such Claim.

23.    Additionally, in accordance with section 1129(a)(9)(B), Section 5.1 of the Joint Plan provides that, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Non-Tax Claim will receive in full settlement, satisfaction, and release of such Claim, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as practicable after, the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed.

13

24.    Also, in accordance with section 1129(a)(9)(C), Section 3.2 of the Joint Plan provides that the Debtors will pay the holders of Allowed Priority Tax Claims, that are due on or before the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, Cash in an amount equal to the Allowed but unpaid portion of such Claim, on or as soon as practicable after, the later of (i) the Effective Date and (ii) the date such Claim becomes Allowed.

25.    In accordance with section 1129(a)(9)(D), Section 5.4 of the Joint Plan provides that except to the extent that the holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall receive in full settlement, satisfaction, and release of such Claim, either (i) retention of the liens securing such Claim, whether the Collateral subject to such liens is retained by the Debtors or transferred to another entity, to the extent of the Allowed amount of such Claim, and deferred Cash payments totaling at least the Allowed amount of such Claim, of a value, as of the Effective Date, of at least the value of such holder's interest in the applicable Estate's interest in such Collateral, (ii) to the extent that the Debtors have sold, or the Liquidation Trustee sells, any Collateral that is subject to the liens securing such Claim, free and clear of such liens, liens on the proceeds of such Collateral, and the treatment of such liens under clause (i) or (iii) herein, and (iii) the realization by such holder of the indubitable equivalent of such Claim.

**Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))**

26.    As reflected in the Voting Declaration, with respect to each Debtor, at least one Class of Claims that is Impaired under the Joint Plan has accepted the Joint Plan, as determined without acceptance of the Joint Plan by any insider of such Debtor. With respect to Caribbean Petroleum Corporation, the Joint Plan has been accepted in writing by the holders of

14

more than two-thirds in amount and one-half in number of Class 3 (BPPR Secured Claims) and Class 5 (General Unsecured Claims) voting on the Joint Plan. With respect to Caribbean Petroleum Refining L.P., the Joint Plan has been accepted in writing by the holders of more than two-thirds in amount and one-half in number of Class 2 (FirstBank Secured Claims), Class 3 (BPPR Secured Claims), and Class 5 (General Unsecured Claims) voting on the Joint Plan. With respect to Gulf Petroleum Refining (Puerto Rico) Corporation, the Joint Plan has been accepted in writing by the holders of more than two-thirds in amount and one-half in number of Class 3 (BPPR Secured Claims) and Class 5 (General Unsecured Claims) voting on the Joint Plan. On the basis of my understanding and discussions with the Debtors' legal advisors, the Joint Plan therefore satisfies section 1129(a)(10) of the Bankruptcy Code with respect to all Debtors.

**Feasibility of the Joint Plan (11 U.S.C. § 1129(a)(11))**

27.    On the basis of my understanding and discussions with the Debtors' legal advisors, the Debtors have complied with section 1129(a)(11) of the Bankruptcy Code, which requires that the Joint Plan is feasible. The Joint Plan establishes several reserves to satisfy obligations under the Joint Plan, including the (i) Administrative and Priority Claims Reserve to satisfy Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Other Secured Claims (Section 6.8); (ii) the Plan Expense Reserve as initial funding for the Liquidation Trust (Section 6.2(g)); and (iii) the General Unsecured Claims Reserve to satisfy Allowed General Unsecured Claims (Section 6.9).

28.    The Administrative and Priority Claims Reserve will be funded with $33.2 million of Sale Proceeds to satisfy all Allowed Other Secured Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, and Allowed Administrative Expense Claims. The Debtors estimate that the amount of (i) Allowed Other Secured Claims will total

$1,007,389.89 (see Exhibit A); (ii) Allowed Priority Tax Claims will total $1,860,515.88 (see Exhibit B); (iii) Allowed Priority Non-Tax Claims will total $150,424.00 (see Exhibit B); and (iv) Allowed Administrative Expense Claims will total $29,859,923.03 (see Exhibit C). Accordingly, the aggregate estimated amount of these Claims is $32,878,252.80. On the basis of my understanding and discussions with the Debtors' legal advisors, the Administrative and Priority Claims Reserve will be sufficient to satisfy all of the aforementioned Claims as well as any other Administrative Expense Claims that may arise through the Effective Date of the Joint Plan.

29.    Further, under the Joint Plan, the remaining assets of the Debtors will be liquidated and distributed to the Debtors' creditors through the Liquidation Trust. The Debtors have analyzed the costs required to satisfy their obligations under the Joint Plan and have concluded that they will have sufficient funds to accomplish this goal. The Joint Plan thus satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**Payment of Fees Under Section 1930 and Title 28 (11 U.S.C. § 1129(a)(12))**

30.    It is my understanding, based on discussions with the Debtors' legal advisors, that the Joint Plan satisfies the requirements of section 1129(a)(12) because pursuant to Section 13.1 of the Joint Plan (i) all fees payable pursuant to section 1930 of title 28 of the United States Code that are due and payable as of the Effective Date shall be paid by the Liquidation Trustee on the Effective Date, and (ii) all such fees that become due and payable after the Effective Date shall be paid by the Liquidation Trustee with funds from the Plan Expense Reserve when such fee become due and payable.

**Sections 1129(a)(13) through 1129(a)(16) of the Bankruptcy Code Are Inapplicable**

31.    It is my understanding, based on discussions with the Debtors' legal advisors, that (i) section 1129(a)(13) is inapplicable to the Joint Plan because the Debtors do not have any obligations on account of retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), (ii) section 1129(a)(14) is inapplicable to the Joint Plan because the Debtors are not required to pay any domestic support obligations, (iii) section 1129(a)(15) is inapplicable to the Joint Plan because none of the Debtors is an "individual," and (iv) section 1129(a)(16) is inapplicable to the Joint Plan because each of the Debtors is a moneyed, business, or commercial corporation.

**The Joint Plan Satisfies the Cram Down**
**Provisions of the Bankruptcy Code (11 U.S.C. § 1129(b))**

32.    It is my understanding, based on discussions with the Debtors' legal advisors, that the Joint Plan may be confirmed notwithstanding the rejection or deemed rejection by a Class of Claims or Equity Interests so long as the Joint Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each such dissenting Class. The only impaired Classes that have not accepted the Joint Plan are Classes 6, 7 and 8 (collectively, the "Rejecting Classes").[4]    Based on my understanding and discussions with the Debtors' legal advisors, the Joint Plan does not discriminate unfairly and is fair and equitable with respect to each Rejecting Class for all Debtors.

33.    Based on my understanding and discussions with the Debtors' legal advisors, the Joint Plan does not discriminate unfairly with respect to the Rejecting Classes

---

[4] As noted, Class 4 initially rejected the Joint Plan as a result of the vote of PREPA, the only creditor who submitted a ballot in each sub-Class of Class 4. However, the Debtors and PREPA have reached an agreement in principle whereby PREPA's claims against the Debtors and its objections to the Joint Plan will be resolved and PREPA shall be deemed to vote to accept the Joint Plan as a Class 4 claimholder against each of the Debtors.

RLF1 4004884v 1

because there are no other similarly situated Classes. Class 6 consists of Intercompany Claims that differ in legal nature and priority from all other Claims, and holders of Intercompany Claims (i.e., the Debtors) have consented to their treatment under the Joint Plan. Class 7 consists of Subordinated Claims that are subordinated in right of payment to all other Classes of unsecured claims pursuant to the Bankruptcy Code or by agreement and differ in legal nature and priority from all other Claims. Classes 8 is the only Class of Equity Interests under the Joint Plan, thus there are no similarly situated Classes.

34.    Based on my understanding and discussion with the Debtors' legal advisors, the Joint Plain is fair and equitable with respect to Classes 6, 7 and 8 because (i) no Class of Claims or Equity Interests junior to these Classes will receive any value under the Joint Plan and (ii) no holder of a Claim that is senior to these Classes will receive more than full value on account of its Claim. After satisfaction of Allowed Secured Claims, Other Secured Claims, Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and General Unsecured Claims, there will be no remaining value of the Debtors' estates to distribute to the holders of Claims in Classes 6, 7 and 8. Accordingly, the Joint Plan is fair and equitable with respect to each of the Rejecting Classes.

**The Principal Purpose of the Joint Plan is Not the Avoidance of Taxes (11 U.S.C. § 1129(d))**

35.    The principal purpose of the Joint Plan is not the avoidance of taxes or the application of section 5 of the Securities Act of 1933, as amended.

**Waiver of Stay of Confirmation Order**

36.    It is my understanding, based on discussions with the Debtors' legal advisors, that Bankruptcy Rule 3020(e) provides for a fourteen day stay of a confirmation order,

18

unless the court orders otherwise.  See Fed. R. Bankr. P. 3020(e); see also Fed. R. Bankr. P. 7062.

37.    The Debtors are requesting that notwithstanding Bankruptcy Rules 3020(e) and 7062, the Bankruptcy Court waive any stay so that the Joint Plan may become effective and enforceable immediately following entry of the Confirmation Order.

38.    In light of the forgoing, the Joint Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code and should be confirmed.

RLF1 4004884v 1

Executed on this 6th day of May, 2011.

Roy Messing
Restructuring Officer