## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| CARIBBEAN PETROLEUM CORP., et al.,[1] | Case No. 10-12553 (KG) |
| Debtors. | Jointly Administered |
| | Related Docket No. 960 |
| | Hearing Date: May 9, 2011 at 10:00 a.m. (EDT) |

------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## CONFIRMATION OF THE FOURTH AMENDED JOINT PLAN
## OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY
## CODE PROPOSED BY THE DEBTORS, THE STATUTORY COMMITTEE
## OF UNSECURED CREDITORS, AND BANCO POPULAR DE PUERTO RICO

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
John J. Rapisardi
George A. Davis
Peter Friedman
Zachary H. Smith

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)

*Co-Counsel for the Debtors and Debtors in Possession*

Dated: May 6, 2011

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number) are: Caribbean Petroleum Corporation (7836), Caribbean Petroleum Refining L.P. (1421), and Gulf Petroleum Refining (Puerto Rico) Corporation (1417). The service address for all Debtors is: PO Box 361988, San Juan, Puerto Rico 00936.

# TABLE OF CONTENTS

                                                                                          **Page**

PRELIMINARY STATEMENT .............................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT ....................................................................................................................2

I.      THE JOINT PLAN WAS PROPOSED IN GOOD FAITH ..............................................2

II.     THE JOINT PLAN SATISFIES THE BEST INTERESTS
        TEST OF SECTION 1129(a)(7) OF THE BANKRUPTCY CODE.....................................3

III.    THE JOINT PLAN SATISFIES THE FEASIBILITY TEST
        OF SECTION 1129(a)(11) OF THE BANKRUPTCY CODE..........................................5

IV.     THE JOINT PLAN SATISFIES THE CRAM DOWN
        REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE .................7

        A.      The Joint Plan Does Not Discriminate
                Unfairly With Respect to the Rejecting Classes ............................................8

        B.      The Joint Plan Is Fair and Equitable
                With Respect to the Rejecting Classes..........................................................10

V.      THE EXCULPATION, RELEASE AND INJUNCTION PROVISIONS
        IN THE JOINT PLAN ARE APPROPRIATE AND SHOULD BE APPROVED..........11

        A.      The Exculpation Is Appropriate and Should Be Approved ...................................12

        B.      The Release and Injunction Are Appropriate and Should Be Approved...............13

                1.      Release by the Debtors...............................................................................14

                2.      Release by Holders of Claims and
                        Equity Interests, and the Released Parties ................................................17

VI.     THE MODIFICATIONS TO THE JOINT PLAN ARE NONMATERIAL
        AND DO NOT REQUIRE ADDITIONAL DISCLOSURE OR SOLICITATION..........18

VII.    WAIVER OF STAY OF CONFIRMATION ORDER IS APPROPRIATE .....................19

VIII.   ALL OBJECTIONS TO THE JOINT PLAN
        HAVE BEEN WITHDRAWN OR RESOLVED ..........................................................20

CONCLUSION.................................................................................................................20

RLF1 4004571v 1

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

In re 11, 111, Inc., 117 B.R. 471 (Bankr. D. Minn. 1990)...............................................................8

In re 47th and Belleview Partners, 95 B.R. 117 (Bankr. W.D. Mo. 1988)......................................6

In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986) .....................................................2

In re Aleris Int'l, Inc., No. 09-10478 (BLS), 2010 WL 3492664
(Bankr. D. Del. May 13, 2010) ...............................................................................6, 8, 9, 10

In re Am. Solar King Corp., 90 B.R. 808 (Bankr. W.D. Tex. 1988)...............................................19

In re Armstrong World Indus., Inc., 348 B.R. 111 (D. Del. 2006)...........................................2, 8, 9

Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434 (1999) ...........4

Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman), 585 F.2d 1171
(2d Cir. 1978)..........................................................................................................................6

Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson), 767 F.2d 417 (8th Cir. 1985) ..................6

In re Coram Healthcare Corp., 315 B.R. 321 (Bankr. D. Del. 2004) ................................15, 16, 17

In re Crdentia Corp., No. 10-10926 (BLS), 2010 WL 331383
(Bankr. D. Del. May 26, 2010) .........................................................................................9, 10

In re Dow Corning Corp., 244 B.R. 696 (Bankr. E.D. Mich. 1999) ................................................9

In re Drexel Burnham Lambert Group Inc., 138 B.R. 723 (Bankr. S.D.N.Y. 1992).......................6

In re Exide Techs., 303 B.R. 48 (Bankr. D. Del. 2003)...........................................................10, 17

In re Genesis Health Ventures, 266 B.R. 591 (Bankr. D. Del. 2001).....................................3, 9, 10

In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213 (Bankr. D.N.J. 2000)...................................9

Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd. II (In re the Matter of Briscoe
Enter., Ltd. II), 994 F.2d 1160 (5th Cir. 1993) ....................................................................2

John Mansville Corp., 68 B.R. 618 (Bankr. S.D.N.Y. 1986) .........................................................8

Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636 (2d Cir. 1988) ..........6

RLF1 4004571v 1

In re Lernout & Hauspie Speech Products, N.V., 301 B.R. 651 (Bankr. D. Del. 2003) ...............9

In re Master Mortgage Inv. Fund, Inc., 168 B.R. 930 (Bankr. W.D. Mo. 1994)...........................15

In re Nailite Int'l, Inc., No. 09-10526 (MFW), 2010 WL 6490250
(Bankr. D. Del. Jan. 21, 2010) ...........................................................................................6

In re Nickels Midway Pier, LLC, No. 03-49462 (GMB), 2010 WL 2034542
(Bankr. D.N.J. May 21, 2010) .............................................................................................12

Northwest Bank Worthington v. Ahlers, 485 U.S. 197 (1988)......................................................10

In re Pero Bros. Farms, Inc., 90 B.R. 562 (Bankr. S.D. Fla. 1988) ..............................................6

Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374
(9th Cir. 1985)....................................................................................................................6

In re PPI Enterprises (U.S.), Inc., 324 F.3d 197 (3d Cir. 2003) ...................................................3

In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000)...........................................................2, 12

In re Spansion, Inc., 426 B.R. 114 (Bankr. D. Del. 2010)................................................15, 16, 17

In re Specialty Equip. Cos., Inc., 3 F.3d 1043 (7th Cir. 1993) ...................................................17

Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.), 326 B.R. 497 (S.D.N.Y. 2005).....13

In re U.S. Truck Co., 47 B.R. 932 (D.C. Mich. 1985) ...................................................................6

In re Washington Mutual, Inc., No. 08-12229 (MFW), 2011 WL 57111
(Bankr. D. Del. Jan. 7, 2011) .............................................................................14, 15, 16, 17

In re Zenith Electronics Corp., 241 B.R. 92 (Bankr. D. Del. 1999) ..................3, 14, 15, 16, 17, 18

## FEDERAL STATUTES

11 U.S.C. § 1123(b)(3)(A)............................................................................................................11

11 U.S.C. § 1123(b)(6) .................................................................................................................11

11 U.S.C. § 1127...........................................................................................................................18

11 U.S.C. § 1129(a)(3)....................................................................................................................2

11 U.S.C. § 1129(a)(7)(A) ..............................................................................................................4

11 U.S.C. § 1129(a)(8) ................................................................................................................7

11 U.S.C. § 1129(a)(11) ...............................................................................................................5

11 U.S.C. § 1129(b) ......................................................................................................................8

11 U.S.C. § 1129(b)(2)(B)(ii) ....................................................................................................10

11 U.S.C. § 1129(b)(2)(C)(ii) ....................................................................................................10

## **FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Fed. R. Bankr. P. 3019(a) ...........................................................................................................18

Fed. R. Bankr. P. 3020(e) ...........................................................................................................19

Fed. R. Bankr. P. 7062 ............................................................................................................... 20

Caribbean Petroleum Corporation ("CPC"), Caribbean Petroleum Refining L.P. ("CPR"), and Gulf Petroleum Refining (Puerto Rico) Corporation ("GPC" and together with CPC and CPR, the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases, submit this Memorandum of Law in support of confirmation of the Fourth Amended Joint Plan of Liquidation, dated May 6, 2011 (as may be further amended in accordance with its terms, the "Joint Plan", see D.I. 960),[2] proposed by the Debtors, the Creditors Committee, and Banco Popular de Puerto Rico.

## PRELIMINARY STATEMENT

1.      The Joint Plan is the product of many months of good faith, arm's-length negotiations among the Debtors, BPPR, the Creditors Committee, the U.S. Environmental Protection Agency and other key constituencies. It has been made possible by the imminent sale of substantially all of the Debtors' assets to Puma Energy Caribe LLC, as well as comprehensive settlements with the Debtors' largest creditors, which will allow for meaningful recoveries to unsecured creditors. Further, the Joint Plan provides for the establishment of a liquidation trust to liquidate and distribute the Debtors' remaining assets and causes of action. The Joint Plan thus reflects a global resolution of all issues attendant to these cases. As set forth below and in the supporting declarations, the fully-consensual Joint Plan satisfies all of the applicable requirements of section 1129 of the Bankruptcy Code and should be confirmed.

## BACKGROUND

2.      The pertinent facts are set forth in the Disclosure Statement, the Joint Plan, the Declaration of Roy Messing in support of the Joint Plan (the "Messing Declaration"), the Affidavit of Service of solicitation materials for the Joint Plan (the "Solicitation Affidavit", see

---

[2] Capitalized terms used but not defined in this Memorandum shall have the meanings ascribed to those terms in the Joint Plan.

D.I. 815), and the sworn declaration of Evan Gershbein of Kurtzman Carson Consultants LLC describing the methodology used in tabulating votes for and against the Joint Plan (the "Voting Declaration," see D.I. 958, and, together with the Messing Declaration and the Solicitation Affidavit, the "Supporting Declarations")[3] and any evidence presented or testimony that may be presented at the Confirmation Hearing. These facts will be referenced as necessary below.

## ARGUMENT

3.     Below, the Debtors demonstrate by a preponderance of the evidence that the Joint Plan satisfies the applicable provisions of section 1129 of the Bankruptcy Code. Thus, the Joint Plan can be confirmed. See, e.g., In re Armstrong World Indus., Inc., 348 B.R. 111, 120 (D. Del. 2006) (citing Heartland Federal Savings & Loan Ass'n v. Briscoe Enter., Ltd., II (In the Matter of Briscoe Enter., Ltd., II), 994 F.2d 1160, 1165 (5th Cir. 1993)). The Supporting Declarations demonstrate that, as a factual matter, the Joint Plan complies with each applicable requirement of section 1129. This Memorandum provides supplementary legal support regarding compliance with certain provisions of section 1129.

## I.     THE JOINT PLAN WAS PROPOSED IN GOOD FAITH

4.     Section 1129(a)(3) of the Bankruptcy Code provides that to be confirmed a plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re PWS Holding Corp., 228 F.3d 224, 242 (3d Cir. 2000) (citing In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 150 n.5 (3d Cir. 1986)). A plan is proposed in good faith where it is proposed with honesty and good

_____

[3] The Messing Declaration is being filed contemporaneously with the filing of this Memorandum.

intentions and a reasonable likelihood that it will achieve a result consistent with the Bankruptcy Code's objectives. See In re Genesis Health Ventures, 266 B.R. 591, 609 (Bankr. D. Del. 2001); In re Zenith Electronics Corp., 241 B.R. 92, 107-08 (Bankr. D. Del. 1999). "A good faith determination must be a fact-intensive, case-by-case inquiry." In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 211 (3d Cir. 2003).

   5. The Proponents have proposed the Joint Plan in good faith and with the legitimate and honest purpose of liquidating the Debtors' assets and maximizing value for the benefit of creditors. As reflected in its title, the Joint Plan reflects an unusual tri-lateral consensus negotiated and proposed by the Debtors, BPPR and the Creditors Committee – the key constituencies in these cases. Moreover, as set forth in the liquidation analysis attached as Exhibit C to the Disclosure Statement (the "Liquidation Analysis"), the Joint Plan provides each holder of a Claim or Equity Interest (other than BPPR and FirstBank, who have agreed to less favorable treatment) who does not otherwise vote in favor of the Joint Plan with at least as much under the Joint Plan as they would receive in a chapter 7 liquidation of the Debtors' assets. Accordingly, the Joint Plan has been proposed in good faith and not by any means prohibited by law and therefore, satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

## II. THE JOINT PLAN SATISFIES THE BEST INTERESTS TEST OF SECTION 1129(a)(7) OF THE BANKRUPTCY CODE

   6. Section 1129(a)(7) of the Bankruptcy Code is commonly known as the "best interests" test and requires that:

> With respect to each impaired class of claims or interests –
>
>  (A) each holder of a claim or interest of such class –
>
>    (i) has accepted the plan; or
>
>    (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the

> effective date of the plan, that is not less than the
> amount that such holder would so receive or retain
> if the debtor were liquidated under chapter 7 of this
> title on such date . . . .

11 U.S.C. § 1129(a)(7)(A). As section 1129(a)(7) makes clear, the liquidation analysis applies

only to individual holders of impaired claims or interests that do not accept the plan. See Bank

of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999)

("The 'best interests' test applies to individual creditors holding impaired claims, even if the

class as a whole votes to accept the plan.").

       7.     Under the Joint Plan, the Claims in Class 1 (Priority Non-Tax Claims) are

unimpaired and therefore, the best interests test is not applicable to holders of such Claims. With

respect to holders of Claims or Equity Interests in all other Classes, the best interests test has

been satisfied.

       8.     First, the holders of Claims in Class 2 (FirstBank Secured Claims) and

Class 3 (BPPR Secured Claims) have voted unanimously to accept the Joint Plan. Second, the

holders of Claims or Equity Interests in Class 4 (Other Secured Claims), Class 5 (General

Unsecured Claims), Class 6 (Intercompany Claims), Class 7 (Subordinated Claims) and Class 8

(Equity Interests) (collectively, the "Subject Classes") will receive at least as much under the

Joint Plan as they would receive in a liquidation of the Debtors' assets under chapter 7.

       9.     The Messing Declaration and the Liquidation Analysis demonstrate that

the value of distributions to holders of Claims or Equity Interests in the Subject Classes would be

significantly less in a chapter 7 liquidation than under the Joint Plan. Under the Joint Plan,

BPPR has agreed, in accordance with the BPPR Settlement, that certain proceeds of the Sale to

Puma which it would otherwise receive as the proceeds of its collateral may be used to pay

Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-

Tax Claims, and Allowed General Unsecured Claims. These distributions would not be available in a chapter 7 liquidation of the Debtors' estates. See Messing Declaration, ¶ 19. Moreover, the proposed administration of the Debtors' assets under the Joint Plan is more efficient, less expensive, and more likely to result in maximum distributions to holders of Allowed Claims.

10. As a result, although holders of Allowed Other Secured Claims are projected to receive the same recovery in a chapter 7 liquidation as provided under the Joint Plan, holders of Allowed General Unsecured Claims, Intercompany Claims, Subordinated Claims and Equity Interests would receive no distributions whatsoever. Accordingly, each non-accepting holder of a Claim or Equity Interest in the Subject Classes will receive or retain under the Joint Plan, on account of its Claim or Equity Interest, property of a value that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7. Therefore, the Joint Plan satisfies the "best interests" test of section 1129(a)(7) of the Bankruptcy Code.

## III. THE JOINT PLAN SATISFIES THE FEASIBILITY TEST OF SECTION 1129(a)(11) OF THE BANKRUPTCY CODE

11. Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition precedent to confirmation of the Joint Plan, the Proponents must demonstrate that the Joint Plan is feasible. 11 U.S.C. § 1129(a)(11). Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

12. "[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed." Kane v. Johns-Manville Corp. (In re

Johns-Manville Corp.), 843 F.2d 636, 649 (2d Cir. 1988). The key element of feasibility is whether there exists a reasonable probability that the provisions of the Joint Plan can be performed. See In re Aleris Int'l, Inc., No. 09-10478 (BLS), 2010 WL 3492664, *28 (Bankr. D. Del. May 13, 2010); see also Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson), 767 F.2d 417, 420 (8th Cir. 1985) ("[T]he feasibility test contemplates 'the probability of actual performance of the provisions of the plan. . . . The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.'") (citing Chase Manhattan Mortgage & Realty Trust v. Bergman (In re Bergman), 585 F.2d 1171, 1179 (2d Cir. 1978)). The purpose of the feasibility test is to protect against visionary or speculative plans. See Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985). However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility. See In re Drexel Burnham Lambert Group Inc., 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.") (citing In re U.S. Truck Co., 47 B.R. 932, 944 (D.C. Mich. 1985), aff'd 800 F.2d 581 (6th Cir. 1986)).

13. Because the Joint Plan is a plan of liquidation, it is inherently feasible. See In re Nailite Int'l, Inc., No. 09-10526 (MFW), 2010 WL 6490250, *5 (Bankr. D. Del. Jan. 21, 2010) ("Because the Joint Plan is a plan of liquidation, pursuant to section 1129(a)(11), the Joint Plan is feasible."); see also In re 47th and Belleview Partners, 95 B.R. 117, 120 (Bankr. W.D. Mo. 1988) ("[F]easibility, under the literal wording of § 1129(a)(11) of the Bankruptcy Code, is unnecessary to be shown when 'liquidation . . . is proposed in the plan.'"); In re Pero Bros. Farms, Inc., 90 B.R. 562, 563 (Bankr. S.D. Fla. 1988) ("The feasibility test has no application to a liquidation plan.").

14.     To implement the Joint Plan, the Debtors will establish three cash reserves: (i) the Administrative and Priority Claims Reserve in the amount of $33.2 million to satisfy Allowed Other Secured Claims, Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims; (ii) the General Unsecured Claims Reserve in the amount of $8.2 million to satisfy Allowed General Unsecured Claims; and (iii) the Plan Expenses Reserve in the amount of $1 million as initial funding for the Liquidation Trust.

15.     As set forth in the Messing Declaration, the Debtors maintain that these reserves will be sufficient to satisfy the respective obligations. See Messing Declaration, ¶ 28. Specifically, the Debtors estimate that the amount of (i) Allowed Other Secured Claims will total $1,007,389.89, (ii) Allowed Priority Tax Claims will total $1,860,515.88, (iii) Allowed Priority Non-Tax Claims will total $150,424.00, and (iv) Allowed Administrative Expense Claims will total $29,859,923.03; for an aggregate amount of $32,878,252.80. See id. Thus, the Administrative and Priority Claims Reserve will be sufficient to satisfy all of the aforementioned Claims as well as any other Administrative Expense Claims that may arise through the Effective Date of the Joint Plan.

16.     Based upon the uncontested record, the Debtors have demonstrated that the Joint Plan is workable and has a reasonable likelihood of success, and satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

## IV.    THE JOINT PLAN SATISFIES THE CRAM DOWN REQUIREMENTS OF SECTION 1129(b) OF THE BANKRUPTCY CODE

17.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or not be impaired under such plan. 11 U.S.C. § 1129(a)(8). Pursuant to section 1129(b) of the Bankruptcy Code, however, the Court may confirm a plan notwithstanding the requirements of section 1129(a)(8) if the plan does not

"discriminate unfairly" and is "fair and equitable" with respect to each non-accepting impaired class. 11 U.S.C. § 1129(b). The only impaired Classes that have not accepted the Joint Plan are Classes 6, 7 and 8 (collectively, the "Rejecting Classes").[4] As set forth in the Messing Declaration and below, the Joint Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Rejecting Class and therefore, the Debtors request that the Joint Plan be confirmed under section 1129(b).

### A. The Joint Plan Does Not Discriminate Unfairly With Respect to the Rejecting Classes

18. The unfair discrimination standard of section 1129(b) "ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." Armstrong, 348 B.R. at 121 (citing In re Johns-Manville Corp., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986)); see also In re Aleris Int'l, Inc., No. 09-10478 (BLS), 2010 WL 3492664, *31 (Bankr. D. Del. May 13, 2010). "Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination between classes; it prohibits only discrimination that is unfair." Aleris, 2010 WL 3492664, at *31 (citing Armstrong, 348 B.R. at 121 and In re 11,111, Inc., 117 B.R. 471, 478 (Bankr. D. Minn. 1990)).

19. "In considering whether a plan unfairly discriminates, courts apply a rebuttable presumption that unfair discrimination exists if there are (1) a dissenting class, (2) another class of the same priority, and (3) a difference in the plan's treatment of the two

---

[4] Class 4 initially rejected the Joint Plan as a result of the vote of the Puerto Rico Electric Power Authority ("PREPA"), the only creditor who submitted a ballot in each sub-Class of Class 4. However, the Debtors and PREPA have reached an agreement in principle whereby PREPA's claims against the Debtors and its objections to the Joint Plan will be resolved and PREPA shall be deemed to vote to accept the Joint Plan as a Class 4 claimholder against each of the Debtors. The Debtors anticipate that this agreement will be memorialized pursuant to an agreed order to be filed with the Court prior to the Confirmation Hearing. If this agreement is not finalized prior to then, the Debtors will be prepared to confirm the Joint Plan over the rejection of Class 4 and will file any further pleadings that are necessary.

classes that results in either (a) a materially lower percentage recovery for the dissenting class (measured in terms of net present value of all payments) or (b) regardless of percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution." <u>Aleris</u>, 2010 WL 3492664, at *31 (<u>citing</u> <u>Armstrong</u>, 348 B.R. at 121 and <u>In re Dow Corning Corp.</u>, 244 B.R. 696, 701 (Bankr. E.D. Mich. 1999)); <u>see also</u> <u>In re Lernout & Hauspie Speech Products, N.V.</u>, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (explaining rebuttable presumption test); <u>In re Greate Bay Hotel & Casino, Inc.</u>, 251 B.R. 213, 228 (Bankr. D.N.J. 2000) (adopting rebuttable presumption test). Absent such factors, there cannot be unfair discrimination. Further, the presumption can be rebutted by a showing that there is a reasonable basis for disparate treatment. <u>See</u> <u>Armstrong</u>, 348 B.R. at 121; <u>Lernout</u>, 301 B.R. at 661; <u>In re Genesis Health Ventures</u>, 266 B.R. 591, 611-12 (Bankr. D. Del. 2001).

20.     The Joint Plan does not discriminate unfairly with respect to the Rejecting Classes. With respect to Class 6 (Intercompany Claims), there are no other similarly situated Classes. <u>See</u> <u>In re Crdentia Corp.</u>, No. 10-10926 (BLS), 2010 WL 331383, *10 (Bankr. D. Del. May 26, 2010) (holding that intercompany claims were not similarly situated to any other classes). Regardless, the holders of the Intercompany Claims (i.e., the Debtors) have consented to the treatment under the Joint Plan.

21.     The Claims in Class 7 (Subordinated Claims) have been subordinated either by consent of the claimant or pursuant to section 510(b) of the Bankruptcy Code. <u>See</u> Joint Plan, § 1.1. Accordingly, there are no similarly situated Classes to Class 7 and, if there were, there is a sufficient basis for the disparate treatment afforded to that Class. <u>See, e.g.</u>, <u>Lernout</u>, 301 B.R. at 661-62 (approving disparate treatment of subordinated claims as not discriminating unfairly).

22.     Lastly, Class 8 is the only Class of Equity Interests under the Joint Plan and therefore, there are no similarly situated Classes for purposes of section 1129(b).  See Crdentia, 2010 WL 3313383, at *10 (approving disparate treatment of classes of equity interests as not discriminating unfairly); Aleris, 2010 WL 3492664, at *31 (same).

23.     Based upon the foregoing, the Joint Plan does not "discriminate unfairly" with respect to any of the Rejecting Classes.

### B.     The Joint Plan Is Fair and Equitable With Respect to the Rejecting Classes

24.     Sections 1129(b)(2)(B) and (C) of the Bankruptcy Code define the "fair and equitable" standard as applied to classes of unsecured claims and interests.  Colloquially referred to as the "absolute priority rule," these sections provide that a plan is fair and equitable with respect to a class of impaired unsecured claims or interests if it provides that the holder of any claim or interest in a class junior to the claims or interests of such class will not receive or retain under the plan on account of such junior claim or interest any property.  11 U.S.C. §§ 1129(b)(2)(B)(ii) and (C)(ii); Northwest Bank Worthington v. Ahlers, 485 U.S. 197, 202 (1988) (absolute priority rule "provides that dissenting class of unsecured creditors must be provided for in full before any junior class can recover or retain any property [under a reorganization] plan.") (citation omitted).  "[A] corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims." In re Exide Techs., 303 B.R. 48, 61 (Bankr. D. Del. 2003) (citing Genesis, 266 B.R. at 612).

25.     The Joint Plan satisfies the "fair and equitable" requirement with respect to Classes 6, 7 and 8 because (i) no Class of Claims or Equity Interests junior to these Classes will receive any value under the Joint Plan and (ii) no holder of a Claim that is senior to these Classes will receive more than full value on account of its Claim.  See Messing

-10-

Declaration, ¶ 34. Indeed, after satisfaction of Allowed Secured Claims, Other Secured Claims, Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and General Unsecured Claims, there shall be no remaining value of the Debtors' estates to distribute to the holders of Claims in Classes 6, 7 and 8. See id. Further, Section 7.9 of the Joint Plan expressly provides that "[n]otwithstanding any other provision of the Plan, no holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim." Joint Plan, § 7.9.

26.　　Accordingly, the Joint Plan is "fair and equitable" with respect to the Rejecting Classes, and the Court should confirm the Joint Plan pursuant to section 1129(b).

## V.　　THE EXCULPATION, RELEASE AND INJUNCTION PROVISIONS IN THE JOINT PLAN ARE APPROPRIATE AND SHOULD BE APPROVED

27.　　Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan, including (i) provisions that provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate", 11 U.S.C. § 1123(b)(3)(A), and (ii) "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]", 11 U.S.C. § 1123(b)(6). Under this authority, the Joint Plan includes certain exculpation (the "Exculpation", see Section 11.5), release (the "Release", see Section 11.6), and injunction (the "Injunction", see Section 11.7) provisions with respect to certain Claims and Causes of Action against the Released Parties, who include (i) the Debtors and the Estates, (ii) the Guarantors, (iii) the Guarantor Affiliates, (iv) First Oil International, Ltd., (v) the Liquidation Trustee, (vi) the Creditors Committee and its members, (vii) the DIP Lender, (viii) BPPR, in its capacity as lender under the BPPR Credit Facility, (ix) BPPR's predecessors in interest under the BPPR Credit Facility, including, without limitation, Westernbank Puerto Rico, (x) FirstBank, and (xi) any of the representatives, agents,

officers, directors, employees, professionals, advisors, attorneys, successors, or assigns of the foregoing (in their capacities as such). See Joint Plan, § 1.1.

28.     As an initial matter, no party has objected to the Joint Plan's release provisions. Additionally, the Exculpation, Release and Injunction are appropriate because, among other things, they are the product of arm's-length negotiations between key constituencies in the Chapter 11 Cases and were critical to obtaining support of those constituencies for the Joint Plan. Further, these provisions are fair and equitable, given for valuable consideration, and consistent with applicable provisions of the Bankruptcy Code and related precedent. Therefore, the Court should approve these provisions.

A.     The Exculpation Is Appropriate and Should Be Approved

29.     Section 11.5 of the Joint Plan includes a customary exculpation provision which, with certain limitations, protects the Released Parties and their successors and assigns from liability relating only to, or that otherwise might arise from the administration of, the Chapter 11 Cases, including, inter alia, the operation of the Debtors' businesses during the Chapter 11 Cases and the development, negotiation and implementation of the Joint Plan. See Joint Plan, § 11.5. The Exculpation, however, expressly excludes acts constituting fraud, gross negligence or willful misconduct by the Released Parties.

30.     The Third Circuit has held that similar exculpation provisions are permissible and commonplace in chapter 11 plans. PWS, 228 F.3d at 235, 246-47; see also In re Nickels Midway Pier, LLC, No. 03-49462 (GMB), 2010 WL 2034542, *14 (Bankr. D.N.J. May 21, 2010) (approving exculpation provision similar to that approved in PWS). These protections are instrumental to chapter 11 cases: without them "negotiation of a [plan of reorganization in a chapter 11 case] would not . . . [be] possible." Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.), 326 B.R. 497, 501 (S.D.N.Y. 2005) (endorsing the findings of

the bankruptcy court concerning the propriety and justification for the limited exculpation provision contained in debtor's chapter 11 plan).

31.     The Exculpation here falls well within the established parameters of what is appropriate in a chapter 11 plan.

**B.     The Release and Injunction Are Appropriate and Should Be Approved**

32.     The Release is governed by Section 11.6 of the Joint Plan. The Release has two components. One is a release by the Debtors, and any party seeking to act on their behalf, of all claims against certain parties based on conduct occurring during the cases (Section 11.6(a)) and the other is a release by individual claim holders granting releases for all conduct occurring during the cases as well as conduct occurring prior to the commencement of these cases (Section 11.6(b)). Section 11.6(b) has an opt-out provision, so a party that does not wish to grant a release under it cannot be forced to.

33.     Section 11.6(a) provides a release by the Debtors (and any entity seeking to exercise the rights of the Debtors or the Estates) of the Released Parties from, inter alia, all Claims and Causes of Action in connection with or related to the Debtors, the Chapter 11 Cases, the Joint Plan (other than the rights of the Debtors or their successors to enforce the Joint Plan and the contracts, instruments, releases, indentures, agreements and other documents delivered thereunder), the Asset Purchase Agreement, the business or contractual arrangements between any Debtor and any Released Party, or any other act or omission in connection with the Debtors' bankruptcy, to the fullest extent permissible under applicable law.

34.     Section 11.6(b) of the Joint Plan provides for a release by (i) each holder of a Claim or Equity Interest who (a) votes to accept the Joint Plan and (b) does not elect to opt-out of the release by checking the appropriate box on their respective ballot, and (ii) the Released Parties, of, inter alia, all Claims and Causes of Action based in whole or in part of any act,

-13-

omission, transaction, event, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the business arrangements with any Debtor, the Joint Plan (other than the right to enforce the terms of the Joint Plan), the Asset Purchase Agreement, the restructuring of any Claim or Equity Interest, the property to be distributed under the Joint Plan, or any other act or omission in connection with the Debtors' bankruptcy, to the fullest extent permissible under applicable law and subject to certain specified limitations.

35. To be clear, the release in Section 11.6(b) is completely consensual; no holder of a Claim or Equity Interest shall be subject to the release unless such holder has both voted to accept the Joint Plan and elected not to opt-out of the release.

36. The Injunction of Section 11.7 of the Joint Plan complements the Release and only enjoins the assertion of Claims and Causes of Action released pursuant to Section 11.6.

37. As set forth below, no party has objected to the Release or the Injunction provision, they are permissible under applicable precedent and should be approved.

1. Release by the Debtors

38. Courts in the Third Court have identified five factors that are relevant to determine whether a debtor's release of a non-debtor is appropriate: "(1) an identity of interest between the debtors and non-debtor such that a suit against the non-debtor will deplete the estate's resources; (2) a substantial contribution to the plan by the non-debtor; (3) the necessity of the release to the reorganization; (4) the overwhelming acceptance of the plan and release by creditors and interest holders; and (5) the payment of all or substantially all of the claims of the creditors and interest holders under the plan." In re Washington Mutual, Inc., No. 08-12229 (MFW), 2011 WL 57111, *24 (Bankr. D. Del. Jan. 7, 2011) (citing In re Zenith Elecs. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999)); In re Spansion, Inc., 426 B.R. 114, 143 (Bankr. D. Del. 2010); In re Coram Healthcare Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004); In re Master

Mortgage Inv. Fund, Inc., 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994). "These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." Washington Mutual, 2011 WL 57111, at \*24 (citing Master Mortgage, 168 B.R. at 935).

39. The Debtors submit that the release by the Debtors under the Joint Plan is appropriate. First, the Debtors and the Released Parties share an identity of interest. The largest stakeholders in these cases – including BPPR, FirstBank, the Creditors Committee, the EPA and Lexel – all share in the common goal of resolving their interrelated and competing claims and achieving a fair and equitable distribution of the Debtors' assets, which is being accomplished through the Joint Plan. See Washington Mutual, 2011 WL 57111, at \*25-26; see also Coram, 315 B.R. at 335. Further, BPPR, as funder of the Joint Plan, as well as the Creditors Committee and its professionals, who were instrumental in formulating the Joint Plan and whose constituents will only obtain a recovery through the Joint Plan, share an identify of interest with the Debtors in seeing that the Joint Plan succeed. See Zenith, 241 B.R. at 111. There is also an identity of interest between the Debtors and their directors and officers to the extent that they have indemnification agreements with the Debtors through the Debtors' charters and/or bylaws. See Zenith, 241 B.R. at 110.

40. Second, many of the Released Parties have made substantial contributions to the Joint Plan. Specifically, BPPR and FirstBank have waived significant claims against the Estates and agreed to allocate portions of their recoveries to pay other Claims under the Joint Plan. See D.I. 785, 786; see also Washington Mutual, 2011 WL 57111, at \*25; Zenith, 241 B.R. at 111. Without these contributions, there would be no basis for the Joint Plan, which provides for full payment of all Allowed Administrative Expense Claims, Other Secured Claims, Priority Tax Claims, and Priority Non-Tax Claims as well as a recovery for holders of Allowed General

-15-

Unsecured Claims. See Washington Mutual, 2011 WL 57111, at *25. Lexel Establishment, Lexel Ltd. and Inpecos, as Guarantor Affiliates, have agreed to subordinate their claims in order to facilitate implementation of the Joint Plan. Additionally, the Guarantors (Oil Resources International, Limited, Gad Zeevi and Talia Zeevi) and First Oil International, Ltd. have executed a plan support agreement whereby they agreed to support and not object to or otherwise contest the Joint Plan. See Disclosure Statement, § IV(R). Further, Gad Zeevi has agreed to facilitate the collection of insurance proceeds to be used to fund distributions under the Joint Plan. See Disclosure Statement, § IV(R). The Released Parties also actively participated in the marketing and sale of the Debtors' assets to Puma as well as the negotiation and formulation of the Joint Plan and it is a valid exercise of the Debtors' business judgment to include a settlement of claims they might hold against such parties. See Spansion, 426 B.R. at 143; Zenith, 241 B.R. at 111. Thus, the Release is given in exchange for, and supported by, fair, sufficient and adequate consideration.

41. Third, the release by the Debtors pursuant to Section 11.6(a) was necessary to the success of the Joint Plan. As stated, the support, settlements and contributions provided by the Released Parties are an essential part of the Joint Plan and could not have been obtained without the proposed release of the Released Parties. See Coram, 315 B.R. at 335.

42. Fourth, the release by the Debtors is consensual and supported by the key constituencies in the Chapter 11 Cases, including the Creditors Committee and BPPR.

43. Accordingly, for the foregoing reasons, the Court should approve the release by the Debtors in Section 11.6(a) of the Joint Plan.

2.   Release by Holders of Claims and
     Equity Interests, and the Released Parties

44.   In the Third Circuit, "[c]ourts have determined that a third party release may be included in a plan if the release is consensual and binds only those creditors voting in favor of the plan." Spansion, 426 B.R. at 144 (citing In re Specialty Equip. Cos., Inc., 3 F.3d 1043, 1047 (7th Cir. 1993)); see also Washington Mutual, 2011 WL 57111, at *30 (holding that a third party release of a non-debtor "must be based on consent of the releasing party (by contract or the mechanism of voting in favor of the plan."); Coram, 315 B.R. at 335 ("[A] plan is a contract that may bind those who vote in favor of it. . . . Therefore, to the extent creditors or shareholders voted in favor of the Trustee's Plan, which provides for the release of claims they may have against the Noteholders, they are bound by that."); In re Exide Technologies, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were only binding on those creditors and equity holders who accepted the terms of the plan); Zenith, 241 B.R. at 111 (finding that a release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

45.   As stated above, the third-party release provided in Section 11.6(b) of the Joint Plan is strictly consensual. The Released Parties have each consented to the release and holders of a Claim or Equity Interest are only bound by it to the extent that they both voted to accept the Joint Plan and elected not to opt-out of the release. The language of the Exculpation and Release were included in the Joint Plan and Disclosure Statement in *italicized* typeface, and were specifically referenced on the ballots sent to creditors, to draw attention to these provisions and ensure their due consideration by holders of Claims and Equity Interests entitled to vote on the Plan. It is, therefore, a fair inference to conclude that creditors, who elected not to opt-out of the Release, did so knowing the terms of these provisions.

46.     Moreover, the Release and Injunction are an integral and necessary component for the confirmation and ultimate success of the Joint Plan itself, and as set forth above, are given in exchange for real contributions of value by the Released Parties. Indeed, the Debtors share an "identity of interest" with the Released Parties because each of these parties are invested in the success of the Joint Plan. See Zenith, 241 B.R. at 111 (parties being released "who were instrumental in formulating the Plan, similarly share an identity of interest with [the Debtor] in seeing that the Plan succeed . . ."). Accordingly, the third-party release in Section 11.6(b) is appropriate and consistent with applicable law and should be approved by the Court.

47.     Based on the foregoing, each of the Exculpation, Release and Injunction provisions embodied in the Joint Plan are fair and equitable, integral to the success of the Joint Plan, given in exchange for valuable consideration, and are in the best interests of the Debtors and all parties in interest.

## VI.     THE MODIFICATIONS TO THE JOINT PLAN ARE NONMATERIAL AND DO NOT REQUIRE ADDITIONAL DISCLOSURE OR SOLICITATION

48.     Section 1127 of the Bankruptcy Code provides that a proponent of a plan may modify such plan at any time before confirmation so long as the modifications comply with sections 1122, 1123 and 1125 of the Bankruptcy Code. 11 U.S.C. § 1127.

49.     Bankruptcy Rule 3019(a) further provides that:

[A]fter a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the [Bankruptcy] Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019(a).

50.    On May 6, 2011, the Proponents filed the Joint Plan, which incorporated the following nonmaterial modifications from the version distributed with the Disclosure Statement:

- clarification of the deadlines for filing Rejection Damage Claims;

- clarification of the Liquidation Trustee's reporting requirements to Medicare if the Debtors' settlement with Chartis Insurance Company – Puerto Rico is approved;

- addition of Cadwalader, Wickersham & Taft LLP as counsel for the Liquidation Trust; and

- modification of amount of Chartis Liability Proceeds that must be allocated to satisfy Allowed Administrative Expense Claims if the Debtors' settlement with Chartis Insurance Company – Puerto Rico, and the Debtors' related settlement with BP Products North America Inc., RLI Insurance Company, and Total Petroleum Puerto Rico Corp., are approved.

51.    Each of these modifications is technical in nature and not material, and does not adversely change the treatment of any Claims or Equity Interests. Accordingly, the Debtors submit that they have complied with section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019(a) and Section 13.10 of the Joint Plan. The modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or additional solicitation of votes, and therefore, the Joint Plan should be deemed accepted by all creditors that voted to accept the version of the Joint Plan distributed with the Disclosure Statement. See In re Am. Solar King Corp., 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988) (holding that resolicitation is required only where modifications materially and adversely affect voting creditors).

## VII.    WAIVER OF STAY OF CONFIRMATION ORDER IS APPROPRIATE

52.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). Rule 62 of the Federal Rules of Civil Procedure, as incorporated by

-19-

Bankruptcy Rule 7062, provides that "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry." Fed. R. Bankr. P. 7062.

53.     The Debtors request that notwithstanding Bankruptcy Rules 3020(e) and 7062, any order confirming the Joint Plan be effective and enforceable immediately following entry of the Confirmation Order.

## VIII.   ALL OBJECTIONS TO THE JOINT PLAN HAVE BEEN WITHDRAWN OR RESOLVED

54.     As discussed above, the Debtors reached a settlement with all key creditor constituencies in these cases. Further, only 3 objections to the Joint Plan were filed, and each has either been withdrawn or resolved. Specifically, as stated above, the objection of PREPA (see D.I. 901) has been resolved by an agreement in principle with the Debtors and will be memorialized in an agreed order to be filed with the Court. The objection of Westchester Surplus Lines Insurance Company (see D.I. 911) has been resolved by the addition of language to the Confirmation Order at ¶¶ 44-45, and was subsequently withdrawn (see D.I. 957). The objection of the United States, on behalf of the Internal Revenue Service (see D.I. 913), has been resolved by the addition of language in the Confirmation Order at ¶43, and was subsequently withdrawn (see D.I. 925). The Debtors request that the Court approve the resolution of these objections.

## CONCLUSION

For the reasons set forth above and in the Supporting Declarations, the Joint Plan complies with and satisfies all of the applicable requirements of section 1129 of the Bankruptcy Code and should be confirmed.

RLF1 4004571v 1

Dated: May 6, 2011
      Wilmington, Delaware



Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

John J. Rapisardi
George A. Davis
Peter Friedman
Zachary H. Smith
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666

*Co-Attorneys for Debtors
and Debtors in Possession*

-21-