**ORIGINAL**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x

In re                                          :        Chapter 11

CARIBBEAN PETROLEUM CORP., et al.,[1]          :        Case No. 10-12553 (KG)

            Debtors.        :        Jointly Administered

                                      :        **Re: Docket No. 960**

---------------------------------------------------x

## ORDER CONFIRMING THE FOURTH AMENDED JOINT PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTORS, THE STATUTORY COMMITTEE OF UNSECURED CREDITORS, AND BANCO POPULAR DE PUERTO RICO

The *Fourth Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico*, dated May 6, 2011, having been jointly proposed by Caribbean Petroleum Corporation, Caribbean Petroleum Refining L.P., and Gulf Petroleum Refining (Puerto Rico) Corporation, as debtors and debtors in possession in the Chapter 11 Cases (collectively, the "Debtors"), the statutory committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee"), and Banco Popular de Puerto Rico ("BPPR", and together with the Debtors and the Committee, the "Plan Proponents"), and filed with the United States Bankruptcy Court for the District of Delaware (the "Court") on May 6, 2011 (as may be further

---

[1] The Debtors in these chapter 11 cases (along with the last four digits of each Debtor's federal tax identification number) are: Caribbean Petroleum Corporation (7836), Caribbean Petroleum Refining L.P. (1421), and Gulf Petroleum Refining (Puerto Rico) Corporation (1417). The service address for all Debtors is: PO Box 361988, San Juan, Puerto Rico 00936.

amended in accordance with its terms, the "Plan", see D.I. 960);[2] and the Court having entered on March 22, 2011 the *Order (I) Approving the Disclosure Statement; (II) Establishing Plan Solicitation, Voting, and Tabulation Procedures; and (III) Scheduling a Hearing and Establishing Notice and Objection Procedures for Confirmation of the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* (the "Disclosure Statement Order", see D.I. 795); and the hearing to consider confirmation of the Plan having been scheduled, pursuant to the Disclosure Statement Order, for April 28, 2011 at 9:00 a.m. (Eastern Daylight Time), and subsequently adjourned to May 9, 2011 at 10:00 a.m. (Eastern Daylight Time) (as adjourned, the "Confirmation Hearing", see D.I. 916); and the Plan Proponents having distributed the solicitation materials, including the Disclosure Statement and the form of the *Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* attached as Exhibit A to the Disclosure Statement (the "Form of Plan", see D.I. 790), beginning on or about March 25, 2011 in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order; and the *Blackline Reflecting Modifications to the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* having been filed with the Court on May 6, 2011 (the "Plan Blackline", see D.I. 961), which reflects certain

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement Order (as defined below). The rules of construction in section 102 of the Bankruptcy Code shall apply to this Order.

nonmaterial, technical modifications to the Form of Plan; and the *Plan Supplement* having been filed with the Court on April 15, 2011 (the "Plan Supplement", see D.I. 884); and the *Declaration of Roy Messing In Support of the Fourth Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* having been filed with the Court on May 6, 2011 (the "Messing Declaration", see D.I. 970); and the *Declaration of Evan Gershbein Regarding Tabulation of Ballots With Respect to Vote on the Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* having been filed with the Court on May 6, 2011 (the "Vote Certification", see D.I. 958); and the *Affidavit of Service* (D.I. 813) having been filed with the Court on March 29, 2011, the *Affidavit of Service* (D.I. 815) having been filed with the Court on March 30, 2011, the *Affidavit of Publication of Alice Weber in the New York Times* (D.I. 914) having been filed with the Court on April 22, 2011, and the *Affidavit of Publication of Lissette Cortes in El Nuevo Dia* (D.I. 915) having been filed with the Court on April 22, 2011 (collectively, the "Affidavits of Service/Publication"); and the *Memorandum of Law In Support of Confirmation of, and Responses to the Objections to, the Fourth Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* (D.I. 972) having been filed with the Court on May 6, 2011; and the Court having considered the Plan, the Plan Supplement, the Vote Certification, the Affidavits of Service/Publication, the Messing Declaration, and the papers filed in support of confirmation of the Plan; and all objections and responses to confirmation of the Plan having been withdrawn or resolved, including, without limitation, the *Puerto Rico Electric Power Authority's Limited*

*Objection to Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* filed with the Court on April 21, 2011 (the "PREPA Objection", see D.I. 901), the *Objection of Westchester Surplus Lines Insurance Company to Third Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular de Puerto Rico* filed with the Court on April 22, 2011 (the "Westchester Objection", see D.I. 911), and the *United States' Objection to the Confirmation of the Third Amended Joint Plan of Liquidation Proposed by the Debtors, the Statutory Committee of Unsecured Creditors, and Banco Popular De Puerto Rico* filed with the Court on April 22, 2011 (the "IRS Objection", see D.I. 913, and collectively with the PREPA Objection, the Westchester Objection, and all other objections and responses, the "Objections"); and the Confirmation Hearing having been held before the Court on May 9, 2011; and the appearance of all interested parties having been noted in the record of the Confirmation Hearing; and the Court having considered all of the arguments of counsel and the evidence proffered, adduced, or presented at the Confirmation Hearing; and the Court having taken judicial notice of the entire record of the Chapter 11 Cases; and upon the entire record of the Chapter 11 Cases and all of the proceedings had before this Court, the Plan, the Plan Supplement, the Vote Certification, the Affidavits of Service/Publication, the Messing Declaration, the papers filed in support of confirmation of the Plan, the resolution or withdrawal of the Objections, and the record of the Confirmation Hearing; and the Court having found and determined that the Plan is in the best interests of the Debtors, their estates and creditors, and all parties in interest, and should be confirmed as reflected by this Court's rulings made in this

RLF1 4004992v. 1

Order and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES THAT:

Findings and Conclusions

A.    The findings and conclusions set forth in this Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    To the extent any of the following findings of fact constitute conclusions of law, they are, and shall be deemed to be, made and adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are, and shall be deemed to be, made and adopted as such.

Jurisdiction and Venue

C.    This Court has jurisdiction over the Chapter 11 Cases and to confirm the Plan pursuant to 28 U.S.C. §§ 157 and 1334.

D.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

E.    Venue of the Chapter 11 Cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

Commencement and Joint Administration

F.    On the Petition Date, each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 16, 2010, this Court entered an

5

order directing joint administration of the Chapter 11 Cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b). See D.I. 30. On August 27, 2010, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a five-member statutory committee of unsecured creditors. See D.I. 69. Subsequently, two members either resigned or were removed from the Committee. See D.I. 257. No trustee or examiner has been appointed in the Chapter 11 Cases.

Judicial Notice

G.    This Court has taken judicial notice of the docket of the Chapter 11 Cases maintained by the clerk of this Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments proffered, adduced, or presented at the hearings held before this Court during the pendency of the Chapter 11 Cases.

Notice and Solicitation

H.    All parties required to receive notice of the Plan, the solicitation of votes on the Form of Plan, the Plan Supplement, the modifications to the Form of Plan as reflected in the Plan Blackline, and the Confirmation Hearing, together with all deadlines for filing and serving objections to confirmation of the Plan and voting to accept or reject the Form of Plan, have received due, proper, timely, and adequate notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order, and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

I.    The modifications to the Form of Plan as reflected in the Plan Blackline (i) constitute nonmaterial, technical modifications, (ii) do not adversely change the treatment of any Claims or Equity Interests, and (iii) are in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Plan Proponents have complied with section 1125 of the

Bankruptcy Code with respect to the modifications to the Form of Plan as reflected in the Plan Blackline. No other or further disclosure or solicitation of votes is required.

J.      The Form of Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Hearing Notice, the appropriate Ballot and voting instructions, and the Non-Voting Status Notices, as applicable, were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.  The transmittal and service of the foregoing solicitation materials was adequate and sufficient, and no other or further notice is required.

K.      Votes to accept or reject the Form of Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation.

L.      Class 1 – Priority Non-Tax Claims[3] is not Impaired under the Plan. Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, Class 1 – Priority Non-Tax Claims, and each holder of a Claim in such Class, are conclusively presumed to have accepted the Plan, and the Plan Proponents were not required to solicit votes from the holders of Claims in Class 1 – Priority Non-Tax Claims.

M.      The Plan provides that a Claim or Equity Interest, as applicable, in Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, or Class 8 – Equity Interests does not entitle the holder of a Claim or Equity Interest, as applicable, in such Classes to receive or retain any property under the Plan on account of such Claim or Equity Interest, as applicable.

---

[3] Each reference to "Class" or "Classes" in this Order shall include all sub-Classes of the respective Class or Classes.

RLF1 4004992v. 1

Accordingly, Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, and Class 8 – Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the Plan Proponents were not required to solicit votes from the holders of Claims or Equity Interests, as applicable, in such Classes.

N.    The Plan Proponents and each of their respective representatives, agents, officers, directors, employees, professionals, advisors, and attorneys (i) have solicited and tabulated votes on the Form of Plan fairly, in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and 1125(e) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation, (ii) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and 1125(e) of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation in the offer, issuance, sale, and purchase of any and all securities offered or sold under the Plan, and (iii) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

Plan Satisfies Requirements of Bankruptcy Code

O.    The Plan complies with all applicable provisions of the Bankruptcy Code.

P.    The Plan is dated and identifies the Plan Proponents as its proponents.

Q.    Section 4.1 of the Plan designates Classes of Claims and Equity Interests. Each Claim and Equity Interest placed in a particular Class pursuant to the Plan is substantially similar to the other Claims and Equity Interests, as the case may be, in such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims

and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.

R.     Section 4.1 of the Plan specifies each Class of Claims that is not Impaired under the Plan.

S.     Article V of the Plan specifies the treatment of each Class of Claims and Equity Interests that is Impaired under the Plan.

T.     The Plan provides for the same treatment of each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to a less favorable treatment of such particular Claim or Equity Interest.

U.     The Plan provides adequate and proper means for its implementation.

V.     The Plan is a liquidating plan and does not provide for the issuance of equity or other securities by the Debtors or the Liquidation Trust.

W.     In accordance with Section 6.1 of the Plan, the Debtors shall be deemed dissolved for all purposes on the Effective Date. Accordingly, there will be no officers or directors of the Debtors after the Effective Date. Sections 6.1, 6.2, and 6.3 of the Plan and the Plan Supplement contain provisions with respect to the manner of selection of the Liquidation Trustee and any successor to the Liquidation Trustee that are consistent with the interests of creditors and equity interest holders and with public policy.

X.     The provisions of the Plan are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

Y.     The Plan does not propose to cure any default.

Z.     The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code.

RLF1 4004992v. 1

AA.    The Debtors are proper debtors under section 109 of the Bankruptcy Code, and the Plan Proponents are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

BB.    The Plan Proponents complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and any applicable nonbankruptcy law, rule, or regulation in the solicitation of votes to accept or reject the Form of Plan.

CC.    The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law.  The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates for the benefit of all parties in interest. Implementation of the Plan will achieve a result that is consistent with the objectives and purposes of the Bankruptcy Code.   The Plan Proponents and each of their respective representatives, agents, officers, directors, employees, professionals, advisors, and attorneys have acted in good faith and with fundamental fairness in the negotiation and formulation of the Plan, and the Plan is the product of good faith, arm's length negotiations among the Debtors, the Committee, BPPR, and each of their respective representatives, agents, officers, directors, employees, professionals, advisors, and attorneys.

DD.    Any payment made or to be made by the Plan Proponents or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

EE.    As set forth in paragraph W of this Order, there will be no officers or directors of the Debtors after the Effective Date.  Pursuant to Sections 6.1, 6.2, and 6.3 of the

Plan and the Plan Supplement, FTI Consulting, Inc. is appointed as the Liquidation Trustee for the Liquidation Trust and any additional trusts established in accordance with Section 6.3 of the Plan. FTI Consulting, Inc. is not an individual. The appointment of FTI Consulting, Inc. as the Liquidation Trustee for the Liquidation Trust and any additional trusts established in accordance with Section 6.3 of the Plan is consistent with the interests of creditors and equity interest holders and with public policy.

FF.    The Plan does not contemplate the employment or retention of any insider after the occurrence of the Effective Date.

GG.    Pursuant to Section 13.18 of the Plan, the Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

HH.    The Liquidation Analysis, the Messing Declaration, and all other evidence proffered, adduced, or presented at the Confirmation Hearing regarding hypothetical chapter 7 liquidation values of the Debtors (i) is persuasive and credible and has not been controverted by other evidence, (ii) is based upon reasonable and sound assumptions, (iii) provides a reasonable estimate of the liquidation values of the Debtors in the event that the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date, and (iv) establishes that, with respect to each Impaired Class of Claims or Equity Interests, each holder of a Claim or Equity Interest in such Class either (a) has accepted the Plan or (b) as established by the Liquidation Analysis, the Messing Declaration, and all other evidence proffered, adduced, or presented at the Confirmation Hearing regarding hypothetical chapter 7 liquidation values of the Debtors, will receive or retain under the Plan on account of such Claim or Equity Interest property of a value,

RLF1 4004992v. 1

as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

II.    Each of Class 1 – Priority Non-Tax Claims, Class 2 – FirstBank Secured Claims, Class 3 – BPPR Secured Claims, Class 4 – Other Secured Claims, and Class 5 – General Unsecured Claims either (i) has accepted the Plan or (ii) is not Impaired under the Plan. As set forth in paragraph M of this Order, Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, and Class 8 – Equity Interests are deemed to have rejected the Plan. Notwithstanding the deemed rejection by Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, and Class 8 – Equity Interests, the Plan may be confirmed because, as set forth in paragraphs RR – VV of this Order, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

JJ.    The treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims pursuant to Sections 3.1, 3.2, and 5.1 of the Plan, respectively, satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

KK.    Class 2 – FirstBank Secured Claims, Class 3 – BPPR Secured Claims, Class 4 – Other Secured Claims, Class 5 – General Unsecured Claims, Class 6 – Intercompany Claims, and Class 7 – Subordinated Claims are Impaired under the Plan. With respect to each Debtor, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, as determined without acceptance of the Plan by any insider of such Debtor.

LL.    With respect to Caribbean Petroleum Corporation, the Plan has been accepted in writing by the holders of more than two-thirds in amount and one-half in number of Class 3 – BPPR Secured Claims, Class 4 – Other Secured Claims, and Class 5 – General Unsecured Claims voting on the Plan, as determined without including any acceptance of the

12

Plan by any insider. With respect to Caribbean Petroleum Refining L.P., the Plan has been accepted in writing by the holders of more than two-thirds in amount and one-half in number of Class 2 – FirstBank Secured Claims, Class 3 – BPPR Secured Claims, Class 4 – Other Secured Claims, and Class 5 – General Unsecured Claims voting on the Plan, as determined without including any acceptance of the Plan by any insider. With respect to Gulf Petroleum Refining (Puerto Rico) Corporation, the Plan has been accepted in writing by the holders of more than two-thirds in amount and one-half in number of Class 3 – BPPR Secured Claims, Class 4 – Other Secured Claims, and Class 5 – General Unsecured Claims voting on the Plan, as determined without including any acceptance of the Plan by any insider.

MM. The evidence proffered, adduced, or presented at the Confirmation Hearing regarding the feasibility of the Plan (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Debtors will have sufficient funds to satisfy any distributions required to made under the Plan, and that, as the Plan is a liquidating plan, confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors.

NN. Section 13.1 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code that are due and payable as of the Effective Date shall be paid by the Liquidation Trustee on the Effective Date, and that all such fees that become due and payable after the Effective Date shall be paid by the Liquidation Trustee with funds from the Plan Expenses Reserve when such fees become due and payable.

OO. The Debtors do not have any obligations on account of retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code).

PP. The Debtors are moneyed businesses or commercial corporations.

QQ.    All applicable requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8), have been satisfied.

RR.    There is no Class of Claims or Equity Interests, as applicable, that is similarly situated to Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, or Class 8 – Equity Interests. The Plan does not discriminate unfairly against Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, or Class 8 – Equity Interests, as required by section 1129(b)(1) of the Bankruptcy Code.

SS.    The Plan is fair and equitable as to Class 6 – Intercompany Claims, Class 7 – Subordinated Claims, and Class 8 – Equity Interests, as required by section 1129(b)(1) and (2) of the Bankruptcy Code. No holder of a Claim or Equity Interest, as applicable, that is junior in right of payment to the Claims in Class 6 – Intercompany Claims or Class 7 – Subordinated Claims will receive or retain under the Plan any property on account of such junior interest. There are no Claims or Equity Interests that are junior in right of payment to the Equity Interests in Class 8 – Equity Interests. Accordingly, no holder of a Claim or an Equity Interest that is junior in right of payment to the Equity Interests in Class 8 – Equity Interests will receive or retain any property under the Plan on account of such junior interest.

TT.    No holder of a Claim or Equity Interest in any Class will receive or retain under the Plan value greater than the Allowed amount of its Claim or Equity Interest.

UU.    All applicable requirements of section 1129(b) of the Bankruptcy Code have been satisfied.

VV.    Accordingly, notwithstanding the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable and may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because the Plan does not discriminate unfairly and is

14

fair and equitable with respect to the Classes that are deemed to reject the Plan (the "Rejecting Classes"). Upon entry of this Order, the Plan shall be binding upon all holders of Claims and Equity Interests, as applicable, in the Rejecting Classes.

WW. Other than the Plan (including previous versions of the Plan), no chapter 11 plan has been filed in the Chapter 11 Cases.

XX. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933.

Good Faith

YY. All documents necessary to consummate and implement the Plan, including, without limitation, the Liquidation Trust Documents, have been negotiated in good faith and at arm's length and, upon the execution of such documents, shall be valid, binding, and enforceable and shall not be in conflict with any federal or state law. The Debtors have exercised reasonable business judgment in determining to enter into all such documents, and have provided adequate notice of such documents.

ZZ. The Plan Proponents, the Liquidation Trustee, and each of their respective representatives, agents, officers, directors, employees, professionals, advisors, and attorneys will be acting in good faith if they proceed to consummate and implement the Plan, and take the actions authorized and directed by this Order.

Executory Contracts and Unexpired Leases

AAA. The Debtors have exercised reasonable business judgment in determining to reject the Debtors' executory contracts and unexpired leases as set forth in Article 9 of the Plan.

RLF1 4004992v. 1

BBB.   Each executory contract and unexpired lease rejected pursuant to Article 9 of the Plan is burdensome, and the rejection of such executory contracts and unexpired leases is in the best interests of the Debtors, their estates and creditors, and all parties in interest.

Exculpation, Releases, and Injunction

CCC.   The exculpation set forth in Section 11.5 of the Plan exculpates parties critical to the formulation and implementation of the Plan.   Such exculpation is (i) a limited exculpation, which includes an appropriate carve-out for fraud, gross negligence, and willful misconduct, (ii) appropriate under the circumstances, fair, equitable, reasonable, supported by adequate consideration, and in the best interests of the Debtors, their estates and creditors, and all parties in interest, (iii) consistent with the prevailing standard for exculpations in the Third Circuit and this District, and (iv) approved by the Court as appropriate and in accordance with applicable law.   The exculpation set forth in Section 11.5 of the Plan is necessary to protect parties who have made substantial contributions to the Chapter 11 Cases, and whose efforts have conferred significant value upon the Debtors' estates.

DDD.   The releases by the Debtors set forth in Section 11.6(a) of the Plan are (i) appropriate under the circumstances, fair, equitable, reasonable, supported by adequate consideration, and in the best interests of the Debtors, their estates and creditors, and all parties in interest, (ii) consistent with the prevailing standard for releases by Debtors in the Third Circuit and this District, and (iii) approved by the Court as appropriate and in accordance with applicable law.   The Released Parties have made substantial contributions to the Chapter 11 Cases, and these efforts have conferred significant value upon the Debtors' estates.   The releases by the Debtors set forth in Section 11.6(a) of the Plan are essential consideration for the substantial contributions made by the Released Parties throughout the Chapter 11 Cases.

16

Pursuing any claims released by the Debtors pursuant to Section 11.6(a) of the Plan would not be in the best interest of the Debtors' various constituencies, and the associated costs likely outweigh any potential benefit from pursuing such claims. No party objects to the releases by the Debtors set forth in Section 11.6(a) of the Plan.

EEE. The releases by the holders of Claims and the Released Parties set forth in Section 11.6(b) of the Plan are (i) consensual, (ii) appropriate under the circumstances, fair, equitable, reasonable, supported by adequate consideration, and in the best interests of the Debtors, their estates and creditors, and all parties in interest, (iii) consistent with the prevailing standard for releases by third parties in the Third Circuit and this District, and (iv) approved by the Court as appropriate and in accordance with applicable law. The Released Parties have made substantial contributions to the Chapter 11 Cases, and these efforts have conferred significant value upon the Debtors' estates. The ballots that were provided to the holder of Claims entitled to vote on the Plan explicitly stated that, if a holder submitted a ballot without checking the opt-out box and otherwise voted to accept the Plan, such holder would be deemed to consent to the releases set forth in Section 11.6(b) of the Plan. Thus, the holders of Claims that did not check the opt-out box and otherwise voted to accept the Plan received adequate notice that, by doing so, they would be granting the releases set forth in Section 11.6(b) of the Plan. The extensive efforts of the Released Parties in the Chapter 11 Cases, and the magnitude of the recoveries provided under the Plan to the holders of Allowed Claims constitute extraordinary circumstances, warranting the releases set forth in Section 11.6(b) of the Plan. No party objects to the releases by the holders of Claims and the Released Parties set forth in Section 11.6(b) of the Plan.

17

FFF.    The injunction set forth in Section 11.7 of the Plan is (i) an essential provision of the Plan, (ii) necessary to preserve and enforce the exculpation and the releases set forth in Article XI of the Plan, and (iii) narrowly tailored to achieve that purpose.

GGG.    The injunction, exculpation, and releases set forth in Article XI of the Plan (i) are within the jurisdiction of the Court under 28 U.S.C. § 1334, (ii) are an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code, (iii) confer material benefits on, and are in the best interests of, the Debtors, their estates and creditors, and all parties in interest, and (iv) are consistent with the Bankruptcy Code, including sections 105, 1123, and 1129 of the Bankruptcy Code, and other applicable law.  The record of the Chapter 11 Cases is sufficient to support the issuance of the injunction and the approval of the exculpation and the releases set forth in Article XI of the Plan, and the failure to implement such injunction, exculpation, and releases would seriously impair the Debtors' ability to confirm the Plan.

BPPR Settlement

HHH.    The BPPR Settlement, as previously approved by this Court pursuant to the BPPR Settlement Order, provides for a compromise and release of possible Challenges, Claims or Defenses against BPPR by the Committee, the allowance of the BPPR Secured Claims and BPPR Liens, and the general release of the BPPR Released Parties by the Debtors and their estates.  The terms of the BPPR Settlement, as set forth in the BPPR Settlement Order and in the Plan, are fair, equitable, reasonable, and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Nothing in this Order shall, or shall be deemed to, amend or alter the findings of fact and conclusions of law set forth in the BPPR Settlement Order, and each such finding of fact and conclusion of law is hereby ratified by entry of this Order.

18

Claims Administration Procedure

III.    The Claims Administration Procedure is fair, equitable, reasonable, within the Debtors' sound business judgment, and in the best interests of the Debtors, their estates and creditors, and all parties in interest.

Liquidation Trust

JJJ.    The continuation of the Debtors' estates through the Liquidation Trust is an essential element of the Plan. The establishment of the Liquidation Trust, the appointment of FTI Consulting, Inc. as the Liquidation Trustee for the Liquidation Trust, the selection of Nicolás López Peña, the Debtors' Chief Financial Officer, as the Debtors' appointee to the Liquidation Trust Oversight Board, and the Debtors' entry into the Liquidation Trust Documents, as the same may be subsequently amended, modified, or supplemented, constitute the sound exercise of the Debtors' business judgment, and are in the best interests of the Debtors, their estates and creditors, and all parties in interest.

Preservation of Causes of Action and Accounts Receivable

KKK.    The provisions of the Plan, including, without limitation, Section 6.10 of the Plan, regarding the preservation of certain Causes of Action and Accounts Receivable are appropriate and in the best interests of the Debtors, their estates and creditors, and all parties in interest.

Cap on Amount of Sale Proceeds Used to Pay Certain Claims

LLL.    No more than $33,200,000 of Sale Proceeds will be used to pay Allowed Other Secured Clams, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims that must be paid under the Plan.

RLF1 4004992v. 1

Vessel Parties Stipulation

MMM. On April 20, 2011, the Stipulation Concerning Applicability of Stays Imposed by Bankruptcy Code or Bankruptcy Court (the "Vessel Parties Stipulation") (Exhibit 1 to D.I. 894) among the Debtors, Cape Bruny Tankschiffarts GmbH and Co. KG ("CBTG"), and Cape Bruny Shipping Company Ltd. ("CBSC" and together with CBTG, the "Vessel Parties") was approved by this Court. The Vessel Parties Stipulation resolves a dispute between the Debtors and the Vessel Parties with respect to the applicability of certain stays and injunctions concerning the Vessel Parties' Complaint (the "Limitation Complaint"), filed April 22, 2010 in the United States District Court for the District of Puerto Rico, commencing an action initially docketed under Case No. 10-1337. In the Limitation Complaint, the Vessel Parties seek exoneration from or limitation of liability pursuant to 46 U.S.C. §§ 30501-30512 and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims and all statutes and rules amendatory thereof and supplementary thereto, and related relief; and made such request for exoneration from or limitation of liability on behalf of any of the Vessel Parties' liability insurers and underwriters, shareholders, managers and agents that would be entitled to exoneration from or limitation of liability to the same extent as the owner and the bareboat charterer (collectively, the "Exoneration or Limitation Request"). The Vessel Parties Stipulation provides that in the event of any inconsistency between the terms of the Plan, this Order and any documents implementing the Plan and the terms of the Vessel Parties Stipulation, the terms of the Vessel Parties Stipulation shall control.

Retention of Jurisdiction

NNN. The Court may properly retain jurisdiction over the matters set forth in Section 12.1 of the Plan.

Waiver of Stay

       OOO. The Debtors have made a sufficient and uncontroverted showing of substantial cost and harm that would result if the Plan is not consummated as soon as practicable after entry of this Order.

       For all of the foregoing reasons, and after due deliberation, the Court FINDS, ADJUDGES, AND DECREES THAT:

Confirmation of Plan

       1.     The Plan, attached as Exhibit A, is CONFIRMED.

       2.     Pursuant to Bankruptcy Rule 3020(e), for good cause shown, the fourteen-day stay of this Order imposed by Bankruptcy Rule 3020(e) is waived.  The Debtors are authorized to consummate and implement the Plan immediately upon, concurrently with, or as soon as practicable following satisfaction or waiver, as applicable, of the conditions set forth in Section 10.1 of the Plan.

       3.     Pursuant to Bankruptcy Rule 3020(e), for good cause shown, this Order is a final order and the period in which an appeal must be filed shall commence upon entry of this Order.

       4.     The Effective Date shall not occur and the Plan shall not become effective and binding unless and until the conditions set forth in Section 10.1 of the Plan have been satisfied or waived, as applicable, in accordance with Section 10.2 of the Plan.

       5.     The Plan is a separate chapter 11 plan for each Debtor.  Accordingly, the provisions of the Plan, including, without limitation, the provisions governing distributions to the holders of Claims and Equity Interests, shall apply to the respective assets of, Claims against, and Equity Interests in, each Debtor's separate estate.

21

6.    In accordance with sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the modifications to the Form of Plan as reflected in the Plan Blackline are approved in all respects.  The Plan, as modified in accordance with the Plan Blackline, is deemed accepted by all of the holders of Claims that accepted the Form of Plan.

7.    The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by holders of Claims in connection with voting on the Form of Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Form of Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, and (c) shall not be binding on the Debtors or the Liquidation Trust.

8.    All parties have had a full and fair opportunity to be heard with respect to all issues raised, and all issues that may have been raised, by the Objections.  Any Objection that has been withdrawn is deemed withdrawn with prejudice.

Payment to BPPR on Effective Date

9.    The DIP Financing Claims Amount is $7,603,111.11, plus such additional amounts as BPPR may be entitled to receive under the Plan and/or the Final DIP Order as agreed to by and between the Plan Proponents or ordered by the Court.  On the Effective Date, in accordance with the Plan, including, without limitation, Sections 3.1(c) and 5.3 of the Plan, the Debtors shall pay to BPPR Cash in an amount not less than $35,693,111.11, plus such additional amounts as BPPR may be entitled to receive under the Plan and/or the Final DIP Order as agreed to by and between the Plan Proponents or ordered by the Court; provided, however, that in the event that the Effective Date is to occur before receipt of the Chartis Administrative Expense Funds (as defined in paragraph 10 below), BPPR may in its sole and absolute discretion elect on

22

or prior to the Effective Date to direct the Debtors and Liquidation Trustee to defer payment of up to $3.9 million of the DIP Financing Claims until after the Chartis Administrative Expense Funds are received and/or used to pay Administrative Expense Claims; provided, further, that notwithstanding the foregoing and BPPR making such election, BPPR may in its sole and absolute discretion at any time on or after the Effective Date direct the Debtors and Liquidation Trustee (as applicable) to make immediate payment of any or all of any deferred DIP Financing Claims payment amount and the Debtors or Liquidation Trustee (as applicable) shall immediately make such directed payment; and provided, further, that until the DIP Financing Claims are actually paid in full, the Debtor and/or Liquidation Trustee (as applicable) shall reserve for the payment of Administrative Expense Claims an amount not less than the amount of unpaid DIP Financing Claims, and such reserved funds shall and shall be deemed to remain subject to BPPR's superpriority liens under the Final DIP Order until unpaid DIP Financing Claims are paid in full.

Subordinated Claims

10.   Pursuant to Section 5.7 of the Plan, subject only to (a) the Debtors' or the Liquidation Trustee's, as applicable, receipt of at least $3.9 million of Chartis Liability Proceeds (the "Chartis Administrative Expense Funds") and payment of Administrative Expense Claims with such Chartis Administrative Expense Funds and (b) approval of Sections 6.2(c), 11.6, and 11.7 of the Plan, the Lexel Claim and the Inpecos Claim shall be Subordinated Claims, and the holders of such Claims shall not receive or retain any property or interest in property on account of such Claims.  Pending the Debtors' or the Liquidation Trustee's, as applicable, receipt of the Chartis Administrative Expense Funds or in the event that such funds are not received for any reason, the Lexel Claim and the Inpecos Claim shall constitute Disputed Claims under the Plan.

23

Allowance of Certain Claims

11.    Proof of claim number 1574 filed by Centro de Recaudacion de Ingresos Municipales (the "CRIM Proof of Claim") is Allowed in the amounts asserted in the CRIM Proof of Claim.

12.    Notwithstanding anything in the Plan or this Order to the contrary, the claims asserted by the Department of Treasury of the Commonwealth of Puerto Rico ("Hacienda") that are fixed and Allowed as Administrative Expense Claims, Priority Tax Claims, or Other Secured Claims pursuant to the *Agreed Order Resolving Debtors' First Omnibus (Substantive) Objection with Respect to Claim Numbers 1534, 1535, 1536 and 1537 Filed By the Puerto Rico Treasury Department* (the "Hacienda Order", see D.I. 898) shall be paid in full in Cash on the Effective Date, or with respect to those claims referenced in paragraphs 1(a)(v)(x), (b)(ii), and (d)(ii)(x) of the Hacienda Order, such later date that the Allowed amounts of such claims are fixed.  For the avoidance of doubt, Hacienda shall be considered a state or local authority for purposes of Section 11.8 of the Plan.

Executory Contracts and Unexpired Leases

13.    The rejection of executory contracts and unexpired leases of the Debtors pursuant to Article 9 of the Plan is approved in all respects pursuant to sections 365 and 1123(b) of the Bankruptcy Code.  For the avoidance of doubt, the Liability Insurance Policies and the Property and Casualty Insurance Policies are not, and shall not be, rejected by the Plan.

14.    All proofs of claim with respect to Rejection Damage Claims must be filed with the Court and served on the Liquidation Trustee on or before (a) the first Business Day that is thirty (30) calendar days after the Effective Date, with respect to the executory contracts and unexpired leases rejected pursuant to the Plan, (b) the first Business Day that is thirty (30)

24

calendar days after entry of an order authorizing the rejection of the respective executory contract or unexpired lease, with respect to the executory contracts and unexpired leases rejected by the Debtors other than pursuant to the Plan, or (c) such other date as is ordered by the Bankruptcy Court. The failure to properly file and serve a proof of claim with respect to a Rejection Damage Claim by the applicable deadline set forth in this paragraph 14 shall result in such Claim being deemed forever barred and Disallowed as of the Effective Date without the need for any objection by the Debtors or the Liquidation Trustee or any action by the Court.

Exculpation, Releases, and Injunction

15.    The exculpation, release, and injunction provisions in the Plan, including, without limitation, those set forth in Article XI of the Plan, (a) are expressly incorporated into this Order, (b) are authorized and approved in all respects, and (c) shall be, and hereby are, effective and binding on all persons and entities who may have had standing to assert released Claims or Causes of Action, and no person or entity shall possess such standing to assert such Claims or Causes of Action after the Effective Date.

16.    Notwithstanding anything in the Plan or this Order to the contrary, the *Order Approving Stipulation By And Among The Debtors And Chartis Insurance Company – Puerto Rico Resolving Motion of Chartis Insurance Company – Puerto Rico For Relief From the Automatic Stay* entered on March 31, 2011 (the "Chartis Stipulation", see D.I. 821) shall control any stay imposed by section 362 of the Bankruptcy Code or the Plan solely with respect to those specific actions addressed in the Chartis Stipulation, including the Declaratory Judgment Action in the Superior Court and the prosecution of any claims or declaratory relief in connection with the Tank 105 Claim in the Superior Court (all as defined in the Chartis Stipulation).

RLF1 4004992v. 1

Claims Administration Procedure

17.     The Claims Administration Procedure, substantially in the form attached as Exhibit B, is approved in all respects.  The Debtors and the Liquidation Trustee are authorized to make nonmaterial changes to the Claims Administration Procedure without further notice or order of the Court, including, without limitation, changes to the identity of the Arbitration/Mediation Organization, and are authorized to utilize the Claims Administration Procedure to liquidate and settle Tort Claims through direct negotiation or alternative dispute resolution.

18.     On or before the date that is the first Business Day that is ninety (90) days after the Effective Date, the Liquidation Trustee shall serve a copy of the Confirmation Order, the Claims Administration Procedure, and the Questionnaire on all Eligible Claimants whom the Liquidation Trustee is reasonably able to identify and locate.

19.     Upon service of the Confirmation Order, the Claims Administration Procedure, and the Questionnaire on an Eligible Claimant, the Claims Administration Procedure shall be binding on such Eligible Claimant.

20.     In the event that an Eligible Claimant does not serve the Questionnaire on the Liquidation Trustee by the date that is the first Business Day that is one hundred twenty (120) days after the Effective Date or serves an incomplete and/or non-responsive Questionnaire on the Liquidation Trustee by the date that is the first Business Day that is one hundred twenty (120) days after the Effective Date, the Liquidation Trustee shall have the right, for that reason alone, to seek to Disallow and expunge such Eligible Claimant's proof of claim with respect to the applicable Tort Claim.

RLF1 4004992v. 1

21.     The form of the Questionnaire attached as <u>Exhibit 1</u> to the Claims Administration Procedure is approved in all respects.

22.     The form of Settlement Agreement attached as <u>Exhibit 2</u> to the Claims Administration Procedure is approved in all respects.

23.     The form of stay relief order attached as <u>Exhibit 3</u> to the Claims Administration Procedure is approved in all respects.

24.     No Eligible Claimant shall be entitled to relief from the automatic stay to establish, liquidate, or otherwise engage in any collection of any Tort Claim from the Debtors, the Liquidation Trust, or any insurer under the Liability Insurance Policies or the Property and Casualty Insurance Policies until such Eligible Claimant has exhausted the Claims Administration Procedure.

25.     The Exoneration or Limitation Request is not subject to the Claims Administration Procedure.

<u>Liquidation Trust</u>

26.     The Liquidation Trust Documents, substantially in the form attached as <u>Exhibit C</u>, are approved in all respects. The Debtors and the Liquidation Trustee are authorized to make nonmaterial changes to the Liquidation Trust Documents without further notice or order of the Court, including, without limitation, changes to the identity of the Delaware Trustee (as defined in the Liquidation Trust Documents).

27.     On and after the Effective Date, the Liquidation Trustee, FTI Consulting, Inc., is appointed to serve as trustee for the Liquidation Trust in accordance with the Plan and the Liquidation Trust Documents. The Liquidation Trustee shall have all powers and duties as set forth in the Plan and the Liquidation Trust Documents.

28.    In accordance with Section 6.2(d) of the Plan, the Debtors' appointment of Nicolás López Peña, the Debtors' Chief Financial Officer, to the Liquidation Trust Oversight Board, and the Committee's appointment of AOT, Ltd. and National Response Corporation to the Liquidation Trust Oversight Board are approved in all respects.    The Liquidation Trust Oversight Board shall have all powers and duties as set forth in the Plan and the Liquidation Trust Documents

29.    On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Documents, the Liquidation Trust shall assume all obligations of the Debtors under the Plan, and the Debtors shall transfer the Liquidation Trust Assets to the Liquidation Trust. Except as otherwise provided in the Plan, title to the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all liens, Claims, encumbrances, charges, and other interests without the need for further action of any kind, including, without limitation, the execution or recordation of any documents or issuance of any order by any court purporting to effect such transfer and vesting in the Liquidation Trust.

30.    In accordance with Section 6.2(g) of the Plan and the Liquidation Trust Documents, the Liquidation Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Court, pay any accrued but unpaid Plan Expenses. The Court shall retain jurisdiction to adjudicate any dispute concerning the payment of any Plan Expenses.

Preservation of Causes of Action and Accounts Receivable

31.    Except as otherwise provided in the Final DIP Order, the BPPR Settlement Order, the Plan, or this Order, all Causes of Action and Accounts Receivable that are not

RLF1 4004992v. 1

Purchased Assets, including, without limitation, those described in the Plan Supplement, are preserved in accordance with Section 6.10 of the Plan.

Plan Related Settlements

32.     All settlements and compromises that are embodied in the Plan, including, without limitation, the BPPR Settlement and the FirstBank Settlement, are approved in all respects. In accordance with the Plan, the BPPR Settlement Order, and the FirstBank Settlement Order, as applicable, the Debtors and the Liquidation Trustee shall, and are hereby directed to, implement the BPPR Settlement and the FirstBank Settlement.

33.     On the Effective Date, the BPPR Settlement and the FirstBank Settlement shall be effectuated in accordance with, and as set forth in, the Plan. On the Effective Date, (a) the Settled Creditors Committee Challenge Right shall be forever and irrevocably extinguished and of no further force and effect and (b) none of the Committee, the Debtors, the Liquidation Trustee, any chapter 7 trustee appointed in the Chapter 11 Cases, or any other party in interest shall assert against BPPR any Challenge or any other Claim or Cause of Action resolved or released by the BPPR Settlement.

Implementation

34.     On and after the Effective Date, the Debtors and the Liquidation Trustee are hereby authorized to take all actions necessary or appropriate to consummate and implement the Plan, without further application to, or order of, this Court, provided that such actions are consistent with the terms and provisions of the Plan and this Order.

35.     Upon receipt of the Chartis Liability Proceeds, and pursuant to, and in accordance with, Section 6.2(c)(iv) of the Plan, the Chartis Administrative Expense Funds shall be transferred to the Administrative and Priority Claims Reserve.

36.    On and after the Effective Date, the Debtors and the Liquidation Trustee are authorized and empowered to issue, execute, deliver, file, or record any and all documents, instruments, and agreements, whether or not specifically referred to in the Plan or any exhibit or supplement to the Plan, and to take any action necessary or appropriate to consummate and implement the Plan all without further application to, or order of, this Court, provided that such actions are consistent with the terms and provisions of the Plan or this Order.

37.    Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any security under, in furtherance of, or in connection with, the Plan or (b) the assignment or surrender of any lease or sublease, or the delivery of any instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, any deed, asset purchase agreement, bill of sale, assignment, mortgage, deed of trust or similar document executed in connection with any disposition of assets contemplated by the Plan (including real and personal property), shall not be subject to any stamp tax, real estate transfer tax, recording tax, sales tax, personal property tax, mortgage tax, use tax, or other similar tax, or any Uniform Commercial Code filing or recording fee or similar or other government assessment. All filing or recording officers (or any other entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, forego the collection of any such tax or governmental assessment, and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including, without limitation, any and all stamp taxes or similar taxes

30

and any interest, penalties and additions to the tax that may be required to be paid in connection with the consummation and implementation of the Plan) pursuant to sections 1146(a), 505(a), 106, and 1141 of the Bankruptcy Code.

38.     Each federal, state, local, and foreign governmental agency or department, or other governmental agency or department is authorized to accept any and all documents and instruments necessary or appropriate to consummate and implement the Plan and the transactions contemplated thereby.

39.     The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur on the Effective Date.

Vessel Parties Stipulation

40.     Notwithstanding any provision to the contrary in the Plan, this Order, and any documents implementing the Plan, and consistent with the Vessel Parties Stipulation: (a) at any time from and after *the earliest to occur of* (i) the Effective Date, (ii) thirty (30) days after entry of this Confirmation Order; *and* (iii) May 30, 2011, the automatic stay, Section 11.4 of the Plan, and any other injunction or stay of this Court or the Plan shall not apply to any determination(s) by the United States District Court for the District of Puerto Rico regarding whether it has subject matter jurisdiction to hear and adjudicate the Exoneration or Limitation Request; *and* (b) at any time from and after the *earlier to occur of* (i) the ninety-first (91st) day after the Effective Date; *and* (ii) September 30, 2011, the automatic stay, Section 11.4 of the Plan, and any other injunction or stay of this Court or the Plan shall not apply to the adjudication of the Exoneration or Limitation Request by the United States District Court for the District of Puerto Rico. In the event of any inconsistency between the terms of the Plan, this Order, and any documents implementing the Plan and the terms of the Vessel Parties Stipulation, the terms of the Vessel Parties Stipulation shall control.

31

Resolution of Astra Entities Informal Objection

      41.     If the United States District Court for the District of Puerto Rico (the "District Court") determines that it has jurisdiction to hear the limitation of liability action filed on April 22, 2010 by Cape Bruny Tankschiffarts GmbH and Co. KG, and Cape Bruny Shipping Company Ltd. (the "Limitation Action", Case No. 10-1337), the automatic stay pursuant to section 362 of the Bankruptcy Code, Section 11.4 of the Plan, and any other injunction or stay of the Bankruptcy Court or the Plan shall not apply to the District Court's adjudication of the consolidated civil actions, including the Limitation Action, pending in the District Court under Civil Action No. 09-2092 (the "Consolidated Action") or the additional actions filed against Astra Oil Trading NV, Astra Oil Company, LLC, or AOT Limited (collectively, the "Astra Entities") in the District Court under Civil Action Numbers 10-2077-FAB, 10-2063-FAB, 10-2105-FAB, 10-2040-FAB, 10-2202-FAB, 10-2088 FAB, 10-2059-FAB, 10-2097-FAB, 10-2070-FAB, 10-2214-FAB, 11-1206-FAB, 10-2036-FAB, and 10-2030-FAB (the "Additional Actions") and will not bar the Astra Entities from participating in or asserting claims against the Debtors, or any successor, within the Consolidated Action (including the Limitation Action) or the Additional Actions; provided however, that the Debtors and the Liquidation Trust, as applicable, reserve all rights and defenses with respect to any claim asserted by the Astra Entities against the Debtors or the Liquidation Trust.

      42.     For the avoidance of doubt, proof of claim numbers 1582, 1583, 1584, 1585, 1586, 1587, 1588, 1589, and 1590 filed by the Astra Entities (the "Astra Claims") shall be subject to the Claims Administration Procedures and any recovery by the Astra Entities from the Debtors or the Liquidation Trust, as applicable, shall be limited solely to the Astra Claims if and when Allowed as General Unsecured Claims under the Plan; provided however, that the fact that

the Astra Claims are subject to the Claims Administration Procedures shall not bar the Astra

Entities from participating in or asserting claims against the Debtors or the Liquidation Trust, as

applicable, in the Consolidated Action (including the Limitation Action) or the Additional

Actions if and when such actions proceed; provided further, however, that the Debtors and the

Liquidation Trust, as applicable, reserve all rights and defenses with respect to any claim

asserted by the Astra Entities against the Debtors or the Liquidation Trust.  If the Claims

Administration Procedures do not result in the settlement of the Astra Claims, then the Astra

Entities may proceed to liquidate the Astra Claims in the Consolidated Action and/or the

Additional Actions, subject to all rights or defenses available to the Debtors and the Liquidation

Trust, as applicable.

Resolution of IRS Objection

       43.    Notwithstanding any provision to the contrary in the Plan, this Order, and

any documents implementing the Plan, (a) the Internal Revenue Service ("IRS") shall not be

required to file a request for the payment of an expense described in 11 U.S.C. § 503(b)(1), as a

condition of its being an allowed administrative expense, provided that, for the avoidance of

doubt, the Debtors and the Liquidation Trust (as applicable) reserve all rights with respect to any

such administrative expense, if and when asserted; (b) an objection to a Claim filed by the IRS

shall be deemed properly served only if such service is made in accordance with rule 4 of the

Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004;

and (c) the IRS shall not be required to seek prior authorization from the Bankruptcy Court, the

Debtors or the Liquidation Trustee, to properly amend a timely filed proof of claim.

Notwithstanding any provision to the contrary in the Plan, this Order, and any documents

implementing the Plan, the Debtors and the Liquidation Trustee agree that they do not seek any

33

prospective tax relief with respect to any transaction set forth in Section 13.6 of the Plan or the Liquidation Trust Agreement. The IRS has no objection to confirmation of the Plan, as modified by this paragraph.

Resolution of Westchester Objection

44.     Notwithstanding anything to the contrary in this Order, the Disclosure Statement, the Plan, the Plan Supplement, any other Plan-related document, or any other order entered in the Chapter 11 Cases, nothing in this Order, the Disclosure Statement, the Plan, the Plan Supplement, any other Plan-related document, or any other order entered in the Chapter 11 Cases (including any other provision that purports to be preemptory or supervening), shall, unless consented to in writing by the affected insurer, alter or impair, or have the effect of, altering or impairing in any respect the legal, equitable, or contractual rights, duties, obligations, or defenses of any insurer under any insurance policy issued to the Debtors, including without limitation the Insurance Policies. Regardless of whether any such insurance policy is executory, on and after the Effective Date, (a) such insurance policy shall remain valid and enforceable, and shall not be impaired, modified, affected, discharged, or released in any respect by the Plan and (b) subject to all applicable defenses and limitations, the insurers shall continue to perform their respective obligations under such insurance policy (to the extent they have not already been satisfied), and the Liquidation Trust shall perform the Debtors' continuing obligations under such insurance policy, in each case as though such insurance policy had been assumed and assigned to the Liquidation Trust pursuant to section 365 of the Bankruptcy Code. Unless consented to in writing by the affected insurer, the rights, duties, and obligations of the insurers, the Liquidation Trust, and any third party under any insurance policy shall be determined under the respective insurance policy and any related agreements, including the terms, conditions, limitations, exclusions, and endorsements thereof, and shall be governed by applicable

34

nonbankruptcy law.   For the avoidance of doubt, (a) Westchester Surplus Lines Insurance Company hereby consents to the assignment and transfer of the Debtors' interests in the premises pollution liability policy bearing policy number PPL G22087861-003 (the "Westchester Policy") to the Liquidation Trust pursuant to Sections 6.1, 9.1, and 11.11 of the Plan, and any other insurer that has (i) not filed an objection to the Plan or (ii) filed an objection to the Plan, and such objection is either withdrawn or overruled is deemed to have consented in writing to the assignment and transfer of the Debtors' interests in the insurance policies to the Liquidation Trust pursuant to Sections 6.1, 9.1, and 11.11 of the Plan and (b) the assignment and transfer of the Debtors' and the Estates' rights under the insurance policies, pursuant to Sections 6.1, 9.1, and 11.11 of the Plan (i) is hereby approved in all respects, (ii) as consented to pursuant to the immediately preceding clause (a) of this paragraph 44, is, and shall be deemed to be, valid, enforceable, and binding upon each respective insurer and with respect to each insurance policy notwithstanding applicable nonbankruptcy law or any anti-assignment provision in any such insurance policy, and (iii) except with respect to the transfer of the Debtors' interests in such policies, such assignment and transfer shall not (A) alter or impair, or have the effect of, altering or impairing in any respect the legal, equitable, or contractual rights of the Debtors prior to such assignment and transfer (it being expressly understood that the Debtors shall have no rights whatsoever with respect to the insurance policies, including the Westchester Policy, at any time after such assignment and transfer), the Liquidation Trust after such assignment and transfer (it being expressly understood that the Liquidation Trust shall have no rights whatsoever with respect to the insurance policies, including the Westchester Policy, at any time prior to such assignment and transfer), or the respective insurers under any insurance policy or (B) otherwise operate as a defense to coverage under any insurance policy.   Notwithstanding the foregoing

provisions of this paragraph 44, in the event an insurer and the Debtors (or once appointed, the Liquidating Trustee) enter into a binding settlement agreement or buyback agreement, and such agreement becomes effective by Court approval or otherwise, such agreement shall be binding and fully enforceable in accordance with its terms and in accordance with the terms of any Final Order of this Court approving same, and nothing herein shall prejudice the rights of such parties to negotiate and agree upon such a settlement or buyback agreement.

45.     The Westchester Policy is not an Acquired Asset (as defined in the Asset Purchase Agreement).   Accordingly, the *Motion of Westchester Surplus Lines Insurance Company for Clarification of Sale Order* (D.I. 900) is hereby deemed resolved as moot.

EQB/EPA Storage Tank Fund

46.     Notwithstanding any provision in the Plan to the contrary, the Debtors or the Liquidation Trustee shall transfer $850,000.00 within ten days of the Effective Date from the Administrative and Priority Claims Reserve to a fund or account to be established or designated by the Puerto Rico Environmental Quality Board ("EQB") and/or the United States Environmental Protection Agency ("EPA"), for purposes relating to the investigation and remediation of any contamination associated with (a) the assets subject to the Debtors' Motion for Entry of an Order Pursuant to Section 554(a) of the Bankruptcy Code Authorizing the Debtors to Abandon Certain Storage Tanks and Related Equipment, D.I. 824, (b) the assets subject to the Debtors' Motion for Entry of an Order Pursuant to Sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code Authorizing the Debtors to Sell Certain Storage Tanks and Related Equipment Free and Clear of Liens, Claims, Interests and Encumbrances, D.I. 931, or (c) any other underground storage tanks, aboveground storage tanks, or related equipment located in the Commonwealth of Puerto Rico that were owned by any of the Debtors as of the Petition Date and that are not being transferred to the Purchaser pursuant to the Sale.  If EQB/EPA have not

RLF1 4004992v. 1

established or designated the fund or account described above within ten days of the Effective Date, the Debtors or the Liquidation Trustee shall, notwithstanding any provision in the Plan to the contrary, transfer the $850,000.00 into an account within fifteen days after the effective date of the Plan (the "Account"); provided, for the avoidance of doubt, any and all costs associated with the establishment of the Account shall be borne solely by EQB/EPA, and not by the Debtors, Liquidation Trustee, or BPPR. The purpose of this Account shall be to hold those funds pending designation by EQB/EPA of the fund(s) or account(s) into which those payments should ultimately be transferred. The transfer of the $850,000.00, and matters pertaining to the establishment and administration of the Account, shall be further governed by a Stipulation to be entered into by the Debtors, EQB, EPA, and the Purchaser that shall be submitted to the Court for approval.

Administrative Expense Claim Bar Date

47.    Pursuant to Section 3.1(a) of the Plan, except as otherwise provided in the Plan, the General Bar Date Order, the Administrative Bar Date Order, or any other order of the Court (and excluding, for the avoidance of doubt, any Administrative Expense Claims that have been fully satisfied or Allowed on or before the Effective Date), all Administrative Expense Claims that accrue from January 1, 2011 through the Effective Date must be filed with Kurtzman Carson Consultants, the Debtors' claims agent, and served on counsel for the Debtors (if filed and served before the Effective Date) or the Liquidation Trustee (if filed and served on or after the Effective Date) by the Administrative Expense Claim Bar Date. The failure to properly file and serve an Administrative Expense Claim on or before the Administrative Expense Claim Bar Date shall result in such Administrative Expense Claim being deemed forever barred and Disallowed as of the Effective Date automatically without the need for any objection from the Debtors, the Liquidation Trustee, or any other party in interest or any action by the Court.

37

48.    The Liquidation Trustee shall have the right to object to any Administrative Expense Claim (other than Administrative Expense Claims that are Allowed as of the Effective Date) on or before the Claims Objection Deadline, subject to extension from time to time by order of the Court.  Unless the Debtors or the Liquidation Trustee objects to a timely-filed and properly-served Administrative Expense Claim, such Claim shall be deemed Allowed in the amount requested.  In the event that the Debtors or the Liquidation Trustee objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Court shall determine whether such Claim should be Allowed and, if so, in what amount.

Professional Compensation and Reimbursement

49.    Pursuant to Section 3.1(b) of the Plan, any holder of a Professional Claim shall (a) file its application for final allowance of such Claim on or before the Administrative Expense Claim Bar Date and (b) unless such holder agrees to less favorable treatment, be paid in full, in Cash, in such amounts as are Allowed by the Court, upon (x) the date of entry of an order granting such award, or as soon as practicable thereafter or (y) such other terms as may be mutually agreed upon by such holder and BPPR and the Debtors and the Liquidation Trustee, as applicable.

50.    Objections to any applications for final allowance of a Professional Claim must be filed and served on the professional that filed such application on or before the Professional Claims Objection Deadline, subject to extension from time to time by order of the Court.  As soon as practicable following the seventh Business Day after the occurrence of the Professional Claims Objection Deadline, a hearing will be held to consider all timely-filed and properly-served applications for final allowance of a Professional Claim.

38

Retention of Jurisdiction

51.    The Court shall retain jurisdiction as provided in Section 12.1 of the Plan to the fullest extent permitted by law.

52.    In addition to any other provisions of this Order, that certain order entered by the Court on December 22, 2010, as Docket No. 511 shall remain in full force and effect (the "Sale Order"). The Court has and retains exclusive jurisdiction and authority to, among other things, interpret, implement, enforce, hear, and adjudicate any and all disputes concerning or in anyway relating to the terms and provisions of the Sale Order and that certain Asset Purchase Agreement entered into by and among the Debtors and Puma Energy International B.V. ("Puma Energy International"), and as subsequently assigned by Puma Energy International to Puma Energy Caribe LLC (as amended from time to time, the "Asset Purchase Agreement"), all amendments and agreements related thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer under the Asset Purchase Agreement or the Sale Order, including, but not limited to, any disputes regarding (a) assumption, assumption and assignment, or rejection of executory contracts, collective bargaining agreements, or unexpired leases, (b) claims of or causes of action regarding successor liability issues, and (c) state, local, and/or federal tax claims or liens released pursuant to the Sale Order.

Efficacy of Plan

53.    The failure to specifically include any particular provision of the Plan, the Plan Supplement, or any related agreement in this Order shall not diminish or impair the efficacy of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan, it being the intent of this Court that the Plan

39

is confirmed in its entirety, and the Plan, the Plan Supplement, and any related agreement are incorporated into this Order by reference. To the extent of any inconsistency between the Plan and this Order, the terms and conditions of this Order shall govern. The provisions of this Order and the provisions of the Plan are integrated with each other, and are hereby deemed nonseverable and mutually dependent.

Exhibits

54.    Each reference to a document, agreement, or summary description in this Order or in the Plan that is in the form attached as an exhibit to the Plan shall be deemed to be a reference to such document, agreement, or summary description in substantially the form of the latest version of such document, agreement, or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

Binding Effect of Confirmation Order and Plan

55.    On and after the Effective Date, except as otherwise provided in this Order or the Plan, (a) the provisions of this Order and the Plan bind (i) the Plan Proponents, (ii) each holder of a Claim or an Equity Interest, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan, (iii) any other entity giving, acquiring, or receiving property under the Plan, (iv) all counterparties to the Debtors' executory contracts and unexpired leases rejected pursuant to the Plan, and (v) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors, and assigns, if any, of the foregoing (in their capacities as such) and (b) all settlements, compromises, waivers, exculpations, releases, and injunctions set forth in the Plan shall be effective and binding on all entities who may have had standing to assert any settled, released, exculpated, or enjoined Claims or Causes of Action, and

40

no other person or entity shall possess such standing to assert such Claims or Causes of Action after the Effective Date.

Notice

56.     Within four (4) calendar days of the Effective Date, the Liquidation Trustee shall (a) serve notice of entry of this Order, any hearing scheduled by the Court to consider any application for final allowance of a Professional Claim, the time fixed for filing requests for the allowance of certain Administrative Expense Claims, the time fixed for filing proofs of claim with respect to Rejection Damage Claims arising from the rejection of executory contracts and unexpired leases pursuant to the Plan, and the occurrence of the Effective Date, substantially in the form attached as Exhibit D, which notice is hereby approved in all respects (the "Combined Notice"), upon each of the following parties at their respective addresses last known to the Debtors: (i) the U.S. Trustee, (ii) each of the Debtors' prepetition secured lenders, (iii) counsel to Banco Popular de Puerto Rico, (iv) counsel to FirstBank, (v) counsel to the Committee, (vii) the Securities and Exchange Commission, (viii) the Internal Revenue Service, (ix) the United States Department of Justice, (x) the United States Environmental Protection Agency, (xi) the Pension Benefit Guaranty Corporation, (xii) all counterparties to the Debtors' executory contracts and unexpired leases rejected pursuant to the Plan, (xiii) all parties having filed requests for notices in the Chapter 11 Cases, (xiv) all plaintiffs and co-defendants of record in any pending litigation involving the Debtors, (xv) all parties listed on the Debtors' creditor matrix, (xvi) all parties having filed proofs of claim in the Chapter 11 Cases, and (xvii) any other known holders of claims or equity interests in the Debtors and (b) post the Combined Notice on the website maintained in these cases by the Debtors' noticing agent: http://www.kccllc.net/Caribbean.

57.    Within four (4) calendar days of the Effective Date, the Liquidation Trustee shall publish the Combined Notice, modified for publication substantially in the form attached as Exhibit E, which notice is hereby approved in all respects (the "Publication Notice"), once in each of The New York Times (National Edition, in English) and El Nuevo Día (in Spanish).  The Liquidation Trustee is authorized to enter into such transactions to effectuate publication of the Publication Notice as provided in this Order, including, making reasonable payments required for such publication and causing the translation of the Publication Notice into Spanish.

58.    Service and posting of the Combined Notice, and publishing of the Publication Notice in accordance with this Order shall, for purposes of Bankruptcy Rule 3020(c), be deemed to have occurred promptly after entry of this Order, and shall constitute good and sufficient notice (a) pursuant to Bankruptcy Rules 2002(f)(7), 2002(j), 2002(k), and 3020(c)(2), of confirmation of the Plan and entry of this Order, (b) pursuant to Bankruptcy Rule 2002(a)(6), of any hearing scheduled by the Court to consider any application for final allowance of a Professional Claim, (c) of the time fixed for filing requests for the allowance of certain Administrative Expense Claim, (d) pursuant to Bankruptcy Rule 2002(a)(7), of the time fixed for filing proofs of claim with respect to Rejection Damage Claims arising from the rejection of executory contracts and unexpired leases pursuant to the Plan, and (e) of the occurrence of the Effective Date, and no other or further notice is required.

Dated: May 9, 2011
      Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

RLF1 4004992v. 1