# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| CARIBBEAN PETROLEUM CORP., et al., | ) | Case No. 10-12553(KG) |
| | ) | (Jointly Administered |
| Debtors. | ) | |
| _____ | ) | **Re Dkt No. 1700** |
| | ) | |
| INTERTEK USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 12-51001(KG) |
| | ) | |
| CARIBBEAN PETROLEUM | ) | |
| CORPORATION, CARIBBEAN | ) | |
| PETROLEUM REFINING, L.P., GULF | ) | |
| PETROLEUM REFINING (PUERTO RICO) | ) | |
| CORPORATION, FTI CONSULTING, INC., | ) | |
| AS LIQUIDATING TRUSTEE, | ) | |
| | ) | |
| Defendants, | ) | **Re Dkt No. 5** |
| _____ | ) | |

## MEMORANDUM OPINION

### INTRODUCTION

On October 23, 2009, the Debtors suffered an enormous explosion and fire at their facilities in Bayamon, Puerto Rico (the "Incident"), involving storage tanks containing fuel, diesel and petroleum products. Sadly, the Incident resulted in personal injuries and property damage. Injured parties (the "Tort Claimants") filed numerous individual law suits and class actions, seeking damages from Debtors and other defendants. The Incident and subsequent

law suits forced the Debtors to file for bankruptcy, which they did on August 12, 2010.

One of the co-defendants in the Incident related litigation is Intertek USA, Inc. ("Intertek"), which is challenging a settlement (the "Settlement") between Debtors and its insurer, Chartis Insurance Company ("Chartis").[1]  In the Settlement, which the Court approved after notice and a hearing by Order, dated May 9, 2011 (the "Buyback Order," D.I. 982), Chartis bought back the policy it issued to Debtors for $24 million (the "Settlement Funds").  The present dispute involves the distribution of the Settlement Funds.  Intertek is insistent that the terms of the Buyback Order, as well as the Puerto Rican statute discussed below, require the Settlement Funds to be distributed only to Tort Claimants.  Intertek has moved to enforce its interpretation of the Buyback Order (the "Motion to Enforce") [D.I. 1700, Case No. 10-12553], and has also moved to enjoin distribution of the Settlement Funds (the "Injunction Motion") [D.I. 5, Adv. Case No. 12-51001].  In order to avoid any suspense, the Court finds that Intertek's arguments, while skillful advocacy, are neither persuasive nor timely.

FACTS

A.  The Buyback Order

On March 29, 2011, the Debtors filed a motion (the "Settlement Motion") for authority to enter into a settlement, release and buyback agreement with Chartis, which

---

[1] At the hearing on the Motion to Enforce, an attorney for certain individuals appeared and orally moved to join in Intertek's position.  The Court's rulings apply equally to such individuals.  In addition, the individuals claimed they did not receive notice of the Settlement.  The record fully supports the Trustee's assurance that Debtors provided notice to Intertek and the Certain Tort Claimants.  See D.I. 1776

provided Debtors with general liability and umbrella liability insurance (the "Chartis Policies"). D.I. 808. Subject to the Court's approval, Debtors would sell the Chartis Policies to Chartis free and clear of liens, encumbrances, claims and interests. The Settlement would, in turn, lead directly to a plan, as it had the support of the Committee of Unsecured Creditors and Debtors' secured lender, Banco Popular de Puerto Rico. The Buyback Order became final and unappealable on May 23, 2011. Intertek neither objected to the Settlement nor appealed from the Buyback Order. The Buyback Order provides that all claims under or against the Chartis Policies were channeled exclusively to the Settlement Funds and holders of claims under or against the Chartis Policies were enjoined from asserting them against the Chartis Policies or Chartis itself. The Buyback Order provides that:

> All claims and interests that were, could have been or may in the future be asserted under or against the Chartis Policies shall survive, and be channeled solely and exclusively to the proceeds of such sale as may be held by the Debtors or any Successor, which shall be distributed solely in accordance with the Plan or further order of the Court.
>
> Pursuant to section 105(a) of the Bankruptcy Code, all Persons are hereby and shall be permanently and forever enjoined, barred and estopped from asserting claims against the Chartis Policies or Chartis with respect to the Chartis Policies to the fullest extent of the Agreement.

Buyback Order, ¶¶ 7-8.

### B. The Confirmation Order

As emphasized above, the Buyback Order requires the Settlement Funds to be distributed "solely" in accordance with the Plan or further Order of the Court. On May 9,

2011, the Court also entered the Order confirming Debtors' joint plan of liquidation (the "Plan," D.I. 960) (the "Confirmation Order"). D.I. 983. The Plan provides, in relevant part,

> Class 5 consists of separate sub-Classes *for all General Unsecured Claims* against each of the Debtors. Pursuant to the BPPR Settlement Order, *each holder* of an Allowed General Unsecured Claim shall receive in full settlement, satisfaction, and release of such Claim . . . its Pro Rata share of (i) the General Unsecured Claims Reserve Amount, (ii) the product of (A) 33.33% and (B) the Excess Administrative and Priority Claims Reserve, as and when determined in accordance with Section 6.8 of the Plan, (iii) the Cash proceeds of all Causes of Action, and (iv) *to the extent that proceeds of the Liability Insurance Policies are received by the Debtors or the Liquidation Trust, as applicable, pursuant to a settlement with any of the insurers under any of the Liability Insurance Policies, and subject in all respects to Section 6.2(c)(iv) of the Plan with respect to the Chartis Liability Proceeds, the proceeds of the Liability Insurance Policies received by the Debtors and the Liquidation Trustee,* . . . .

Plan, § 5.5(a) (emphasis added). Section 6.2(c)(iv) of the Plan also provides that certain Settlement Funds were available to pay the claims of administrative and priority claims. *Id.* § 6.2(c)(iv).

On May 23, 2011, the Confirmation Order became final and non-appealable, pursuant to Fed. R. Bankr. P. 8002. Intertek neither objected to the Plan, nor appealed from the Confirmation Order. The Plan became effective on June 3, 2011 (the "Effective Date").

### C. Further Developments

As the Plan provides, on the Effective Date the Debtors were dissolved. The Caribbean Petroleum Liquidation Trust (the "Trust") was created to hold Debtors' residual

assets for administration and, eventually, distribution. FTI Consulting, Inc. was named Trustee (the "Trustee")

Several months after the Effective Date, Intertek sought leave to file late proofs of claim. Debtors consented and the Court entered an Order granting Intertek leave. D.I. 1183. Through its claims, Intertek sought reimbursement or contribution. The Trustee objected to the claims (D.I. 1303 and 1353). The Court sustained Debtors' objection. D.I. 1469.

## DISCUSSION

### A. The Merits

Intertek is seeking to preserve the Settlement Funds distribution to the Tort Claimants. Intertek is a co-defendant, not a party injured in the Incident. As such, and as it concedes, "every dollar of insurance proceeds that are paid out by the Trust to non-tort claimants represents an additional dollar of damages that Intertek and the other co-defendants may have to shoulder."[2] Intertek Reply at p.7. Intertek quotes language from the Buyback Order which provides that the Settlement "preserved 'all interests that were, or could have been, or may in the future be asserted against the Chartis Policies.'" *Id at 8*, citing to the Buyback Order at ¶7. However, Intertek does not quote the provision in its entirety. Doing so invalidates Intertek's argument. The Buyback Order in proper context states:

---

[2] The Trustee does not challenge Intertek's standing to make its claim on the basis that it is not a Tort Claimant. It is clear that as an alleged co-tort feasor, Intertek has a direct pecuniary interest in the Chartis insurance proceeds. *Ruiz-Troche v. Pepsi Cola of P.R. Bottl. Co.*, 161 F.3d77, 87 (1st Cir. 1998).

> All claims and interests that were, could have been or may in the future be asserted under or against the Chartis Policies shall survive, and be channeled solely and exclusively to the proceeds of such sale as may be held by the Debtors or any Successor, **which shall be distributed solely in accordance with the Plan or further order of the Court**.
>
> Pursuant to Section 105(a) of the Bankruptcy Code, all Persons are hereby and shall be permanently and forever enjoined, barred and estopped from asserting claims against the Chartis Policies or Chartis with respect to the Chartis Policies to the fullest extent of the Agreement.

Buyback Order, ¶ 7, emphasis supplied. The Buyback Order also states among its preamble paragraphs that:

> The consideration to be paid by Chartis under the [Settlement] Agreement is fair, equitable, and reasonable to the Debtors **and to all persons who hold claims against the Debtors for all relevant purposes under the Bankruptcy Code**, and constitutes reasonably equivalent value.

See Buyback Order, ¶ W (emphasis supplied).

These provisions of the Buyback Order should and could have taken no one by surprise, or have been more transparent, given the Settlement Motion which resulted in the Buyback Order. There, in the Preliminary Statement, Debtors stated in plain English that:

> The settlement embodied in the Agreement represents an important and immediate step toward the Debtors' realization of substantial additional value for their estates. Pursuant to the Agreement, Chartis, an insurer under certain of the Debtors' third party liability insurance policies, and in full and final settlement of all disputes between the Debtors and Chartis related to the amount and scope of coverage available under those policies and other related matters, will pay approximately $24 million directly to the Debtors' estates. **This significant**

>  **cash consideration will provide a valuable and certain source of recovery for the economic stakeholders in these chapter 11 cases – and in particular, the holders of general unsecured claims** – while enabling the Debtors to avoid costly, complex, protracted, and uncertain litigation with Chartis that ultimately may not yield any benefit to the Debtors' estates or creditors.

Settlement Motion, page 2. (D.I. 808).

It is fair to observe that Intertek's principal argument is that the Settlement and the Plan do not comport with the law. Intertek argues that the settlement and the Plan violate the following legal concepts:

(1) Puerto Rico is a direct action jurisdiction, whereby the proceeds of liability policies do not become property of the estate, available to general creditors, but must be paid on behalf of the insured. Intertek cites to provisions of Louisiana statutes[3] 26 L.P.R.A. §§ 2001-2003. Section 2003 provides, in part, that:

> (1) Any individual sustaining damages and losses shall have, at his option, a direct action against the insurer under the terms and limitations of the policy which action he may exercise against the insurer only or against the insurer and the insured jointly.

Section 2001 provides, in part, that:

> The insurer... shall become liable whenever a loss covered by the policy occurs, and payment of such loss by the insurer ... shall not depend upon payment by the insured of or upon any final judgment ....

(2) Intertek also urges the Court to consider the distinction between a debtor's

---

[3] Intertek claims that Puerto Rico courts look to Louisiana law for guidance. *Gonzalez v. Caribbean Carriers, Ltd.*, 379 F. Supp. 634, 637 (D.P.R. 1974).

ownership of liability insurance policies themselves, and the proceeds which, according to Intertek and the cases Intertek cites, are to be held for the benefit of claimants for such proceeds. *See*, e.g., *Landry v. Exxon Pipeline Co.*, 260 B.R. 769 (M.D. La. 2001).

The Trustee opposes these suggestions. Ultimately, however, Intertek's arguments come far too late.

## B. <u>Untimeliness</u>

The Court again refers to critical dates:

- March 29, 2011: Debtors filed motion for approval of Settlement

- May 9, 2011: Court entered Buyback Order and Confirmation Order for the Plan

- May 23, 2011: Buyback Order and Confirmation Order became final and non-appealable

- August 17, 2011: Intertek's Motion to file proof of claim (D.I. 1178).

- September 8, 2011: Order Deeming Intertek's Proofs of Claim Timely Filed (D.I. 1183)

- November 21, 2012: Motion to Enforce (D.I. 1700)

Intertek never objected or appealed to/from the Settlement, the Buyback Order, the Plan and the Confirmation Order. As the Court discussed above, all of the pertinent events took place after notice and in open proceedings. Intertek sat idle. Therefore, 11 U.S.C. § 1327(a) is invoked. The Bankruptcy Code section provides that "the provisions of a confirmed plan bind the debtor and each creditor."

The Third Circuit Court of Appeals addressed the timeliness issue presented here in *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989), emphasizing the risk of not objecting. In *Szostek*, the debtors' plan did not pay the secured creditor its present value on the claim. The secured creditor did not object but, instead, four months after confirmation challenged the plan for violating the Bankruptcy code. Although the secured creditor was correct that the plan violated the code, the Third Circuit held that "once the ... plan was confirmed, it became final under § 1327 and, absent a showing of fraud under § 1330(a), it could not be challenged ...." *Id.* at 1413. The Third Circuit also opined that:

> [T]he purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*Id.* at 1409 (quoting from *In re Penn Central Transportation Co.* 771 F.2d 762, 767 (3d Cir. 1985). *See also*, *In re Fili*, 257 B.R. 370, 372 (1st Cir. BAP 2001). *Szostek* therefore stands for the proposition that even a plan "which would not be confirmable due to provisions that do not conform to applicable law will nonetheless be given effect if an objection is not raised prior to entry of the confirmation order." *In re Bryant*, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005).

Accordingly, Intertek's effort to challenge the Plan as well as the Settlement, which is incorporated into the Plan on the basis that they are not in accordance with the law is not viable. When a creditor such as Intertek "ignores the bankruptcy proceedings, he does so at his peril." *Penn Central* 771 F.2d at 1410.

C. <u>Motion for Preliminary Injunction</u>

Intertek has also commenced an adversary proceeding[4] raising the issues which the Court previously discussed, and has moved to enjoin distribution of the Settlement Funds (the "Injunction Motion"). The factors addressed to the Court's discretion and which the Court must balance are whether: (1) movant has demonstrated a reasonable probability of success on the merits; (2) movant will suffer irreparable harm if the court denies the relief; (3) relief will result in greater hardship to the nonmovant than not granting relief to the movant; and (4) the relief is in the public interest. *See, e.g., Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999). The Court is satisfied that consideration of all of these factors requires denial of injunctive relief.

The Court's decision on the Motion to Enforce determines that Intertek has little probability of success on the merits. Intertek will not suffer irreparable harm. Nonmovant (the Trustee) will suffer harm if the injunction issues because it will delay distribution to creditors. Finally, the relief is not in the public interest because it would place finality of plan confirmation at risk and the uncertainty would indeed be disruptive of the bankruptcy

---

[4] The Trustee's papers indicate it was also moving to dismiss the adversary proceeding. The matter was not fully noticed or addressed and the Court is therefore not addressing it at this time.

process.

Accordingly, the Court will deny the Injunction Motion.

### D.  Request for Stay

Intertek has also requested a stay if the Court denies the relief it requested. The Court will deny the stay given the absence of merit to Intertek's positions, the delay already existing since the Court entered the Orders Intertek challenges and the prematurity of the request. *In re Cancelosi*, 456 B.R. 515, 520 (Bankr. D.OR. 2011).

## CONCLUSION

The Court hereby denies the Motion to Enforce and the Injunction Motion for the stated reasons. An Order will issue.

Dated: March 11, 2013

*[signature]*
KEVIN GROSS, U.S.B.J.