**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| CARIBBEAN PETROLEUM CORP., *et al.*, | : | Case No. 10-12553 (KG) |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Objection Deadline: May 30, 2014 at 5:00 p.m.** |
| | : | **Hearing Date: June 9, 2014 at 9:00 a.m.** |

**OPPOSITION OF CAPE BRUNY TANKSCHIFFARTS GMBH AND CO. KG AND CAPE BRUNY SHIPPING COMPANY LTD. TO MOTION OF GAD AND RAM ZEEVI TO ENFORCE PLAN RELEASE AND THE SETTLEMENT AGREEMENT**

Cape Bruny Tankschiffarts GmbH and Co. KG ("CBTG") and Cape Bruny Shipping Company Ltd. ("CBSC" and together with CBTG, the "Cape Bruny Entities"), by and through their undersigned counsel, hereby submit their opposition ("Opposition") to the Motion of Gad and Ram Zeevi to Enforce Plan Release and the Settlement Agreement (D.I. No. 2057) (the "Motion")[1]. In support of this Opposition, the Cape Bruny Entities state as follows:

## PRELIMINARY STATEMENT

In the Motion, Gad and Ram Zeevi (together, the "Movants") ask this Court to enter an Order enforcing the release provisions of the Plan confirmed in these cases, and to enforce the terms of a Settlement Agreement with "Tort Plaintiffs" which, they assert, contains a release of certain claims. The relief sought, however, is unavailing as to the Cape Bruny Entities.

First, the Motion seeks to enforce a settlement agreement against the Cape Bruny Entities even though they are not a party to the agreement or bound by its terms.

[1] For the convenience of the Court, capitalized terms not defined herein shall have the same meaning given such terms in the Motion.

Second, the Motion seeks to enforce plan release provisions that only release claims against Gad and Ram Zeevi that are held by the above-captioned bankruptcy estates. The claims asserted by the Cape Bruny Entities against Gad and Ram Zeevi in the Puerto Rico Action are not, and never were, property of the above-captioned bankruptcy estates or their successor. These claims include direct claims that are not, and never could be, property of the bankruptcy estate, and alter-ego claims that may be subject to applicable nonbankruptcy law that would not permit the bankruptcy estates, or their successor, to pursue such claims on behalf of creditors generally.

Finally, the Delaware Bankruptcy Court should not even address the impact of the Plan release on claims asserted by the Cape Bruny Entities against Gad and Ram Zeevi (i.e., one non-debtor against another) as it lacks jurisdiction to entertain this matter which cannot have any conceivable effect on the Debtors' estates. Moreover, the Bankruptcy Court would be required to determine the applicable nonbankruptcy law to be applied in a trial pending in another federal court. That decision should be left to the District Court in Puerto Rico that is presiding over the Puerto Rico Action.

Accordingly, any Order entered in connection with the Motion should expressly reserve the right of the Cape Bruny Entities to pursue their claims against Gad and Ram Zeevi.

## I. BACKGROUND FACTS

### A. The Incident

CBTG owns the *M/T Cape Bruny* (the "Vessel"), which is registered in the Marshall Islands. CBSC was the bareboat charterer of the Vessel, and it manned, victualed, and navigated the Vessel. Immediately prior to October 21, 2009, the Vessel was carrying a cargo of

approximately 278,658 barrels of gasoline ("Cargo") from Sines, Portugal. On the evening of October 22, 2009, the Vessel was in the process of discharging the Cargo to the Debtors' oil storage facility in San Juan, Puerto Rico (the "Facility") pursuant to the Facility's instructions. On October 23, 2009, while the Vessel continued discharging the Cargo, an explosion at the Facility caused a fire that took more than two days to extinguish (the "Incident").[2] At the time of the Incident, approximately 19,464.25 barrels of gasoline remained onboard the Vessel.

### B. Litigation Related to the Incident

More than 4,000 individual plaintiffs filed actions (the "Actions") in the United States District Court for the District of Puerto Rico stemming from the events of the Incident. Among these actions are seven class actions against, *inter alia*, certain of the Debtors, Gad and Ram Zeevi, and both of the Cape Bruny Entities. The Actions have been consolidated and are pending before the District Court in Puerto Rico under Case No. 09-2092 (the "Puerto Rico Action").

On April 22, 2010, the Cape Bruny Entities filed a Complaint for Exoneration From or Limitation of Liability (the "Limitation Complaint") pursuant to the Limitation of Liability Act of 1851 (46 U.S.C. §§ 30501 – 30512) (the "Limitation of Liability Act") thereby commencing an action under Case No. 10-1337 in the District Court in Puerto Rico (the "Limitation of Liability Action"). In the Limitation of Liability Action, the Cape Bruny Entities seek, *inter alia*, the District Court's adjudication that: (i) the Cape Bruny Entities are not liable for damages, demands, or claims relating to the Incident or, (ii) in the alternative, that the Cape

---

[2] The Incident and the resulting losses, damages, injuries and expenses, if any, were neither caused, nor contributed to, by any fault, error, omission or negligence of the Cape Bruny Entities.

Bruny Entities' liability is limited to the value of the Vessel and its freight under the Act. A copy of the Limitation Complaint is attached as Exhibit A.

Pursuant to the Limitation of Liability Act and related Rules, on April 22, 2010, the Cape Bruny Entities posted with the District Court security in the amount of $27,017,275.58, which amount equals the value of the Vessel and its freight at the time of the Incident. As set forth in the District Court's Order Approving Plaintiffs-Petitioners' Stipulation for Value, Directing Issuance of Notice and Monition, and Restraining Prosecution of Claims, dated May 10, 2010 (the "Limitation Injunction Order"), any plaintiffs/claimants subject to the Limitation Injunction Order (the "Plaintiffs/Claimants") were to file their claims with the Clerk of the District Court in Puerto Rico on or before June 16, 2010. Claims were filed in the Limitation of Liability Action on behalf of thousands of individuals and entities.

On March 28, 2014, the Cape Bruny Entities, as third-party plaintiffs, filed in the Limitation of Liability Action their third-party complaint pursuant to Rule 14(c) of the Fed. R. Civ. P. ("Third-Party Complaint") against various entities and persons including, *inter alia*, Gad and Ram Zeevi (all such third-party defendants, the "Third-Party Defendants"). A true and correct copy of the Third-Party Complaint is attached as Exhibit B. As set forth in the Third-Party Complaint, the Plaintiffs/Claimants in the Limitation of Liability Action have asserted against Gad and Ram Zeevi **both** direct claims and claims founded on alter-ego liability. Specifically, paragraph 36 of the Third-Party Complaint alleges that:

> As to Gad Zeevi and Ram Zeevi the Plaintiffs/Claimants have made allegations, among others, that they were the alter egos of the various CPC/CPR related firms and entities which owned, operated and controlled the Gulf Oil Facility, and are thus vicariously liable for the negligence and fault of CPC/CPR with respect to the "Gulf Oil Facility."

> In addition to, and separate from, the above, Ram Zeevi and Gad Zeevi were the chief executives, managers, supervisors and overseers of the policy, operations and day-to-day workings of the "Gulf Oil Facility," **and in this they were directly and personally negligent, responsible and liable for the condition and operational deficiencies of the "Gulf Oil Facility" on October 23, 2009**.

Third-Party Complaint at ¶ 36 (emphasis added).

### C. Confirmation of the Plan and Establishment of Liquidating Trust

On August 12, 2010, the Debtors commenced their respective bankruptcy cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code. On May 9, 2011, the Bankruptcy Court entered an Order confirming the Debtors' joint plan of liquidation, which became effective on June 3, 2011 (the "Effective Date"). A copy of the Plan has been previously provided to the Court as Exhibit 6 of the Declaration of L. John Bird, Esq. in support of the Motion ("Bird Declaration"). Among other things, the Plan provides for the Debtors' release of the following claims against certain parties:

> On the Effective Date, . . . the **Debtors and any entity seeking to exercise the rights of the Debtors or the Estates, including without limitation, any successor to the Debtors,** shall completely, conclusively, absolutely, unconditionally, irrevocably, and forever release the Released Parties from any and all Claims . . . that are based in whole or in part upon any act, omissions, transaction, agreement, event, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors . . . .

Plan, § 11.6 (emphasis added).

The Plan defines Released Parties as, among others, "(a) the Debtors and the Estates, (b) the Guarantors, [and] (c) the Guarantor Affiliates." *Id.*, p. 13. In turn, "Guarantors" is defined to include Gad and Ram Zeevi. *Id.*, p. 10. The Plan releases went effective on the Effective Date. Also on the Effective Date, *inter alia*, the Caribbean Petroleum Liquidation Trust (the "Liquidating Trust") was established to hold the Debtors' residual assets for the

benefit of their creditors and FTI Consulting, Inc. was appointed Liquidating Trustee of the Liquidating Trust (the "Liquidating Trustee").

On December 2, 2013, the Liquidating Trustee moved the Bankruptcy Court for an order lifting the automatic stay to allow the continuation of the Puerto Rico Action [D.I. 1984]. On January 13, 2014, the Bankruptcy Court entered its Order Granting Stay Relief From Consolidated Actions Pending in Puerto Rico [D.I. 2012]. Then, on January 15, 2014, the District Court in Puerto Rico entered an order vacating the stay in effect in the Puerto Rico Action, permitting those actions to proceed.

**D. The Settlement Agreement**

On or about September 30, 2013, the Liquidating Trustee and certain plaintiffs in actions pending in the District Court in Puerto Rico and assigned Case Nos. 09-cv-2092, 09-cv-2095, 09-cv-2096, 09-cv-2215, 10-cv-1030, and 10-cv-2036 (collectively, but excluding any actions jointly administered in the Puerto Rico Action that are not specifically listed among the foregoing, the "Tort Plaintiffs") entered into a settlement agreement (the "Settlement Agreement") whereby the parties thereto agreed, *inter alia*, that in exchange for cash in the amount of $1,200,015 to be distributed *pro rata* to the Tort Plaintiffs, those Tort Plaintiffs released any and all claims against the Liquidating Trust, the Debtors, and the Debtors' directors, officers, and employees. *See* Bird Declaration, Exhibit 7. The Cape Bruny Entities are not parties to the Settlement Agreement.

## II. ARGUMENT

### A. The Cape Bruny Entities Did Not Release Gad and Ram Zeevi in the Settlement Agreement

A settlement agreement (and any releases contained therein) does not bind individuals or entities that are not parties. *See, e.g.*, *City of Syracuse v. Williams*, 45 A.D.3d 1491, 1492, 846 N.Y.S.2d 526, 528 (4th Dep't 2007). Thus, the Cape Bruny Entities, non-parties to the Settlement Agreement, are not bound by its terms including, without limitation, the purported release of Gad and Ram Zeevi.

The Movants argue that by the "clear and unambiguous" language of the release in the Settlement Agreement, the Tort Plaintiffs released the officers and directors of the Debtors (including Gad and Ram Zeevi) from "claims related to the Explosions and Puerto Rico Action." Motion p. 19. By extension, they reason, the Tort Plaintiffs can no longer pursue any claims against "alter egos" of the Debtors as the two are one and the same. *Id.* The Settlement Agreement's definition of "Tort Plaintiffs," however, clearly excludes the Cape Bruny Entities and, indeed, does not include all Plaintiffs/Claimants in the Puerto Rico Action.

### B. The Plan Did Not Release Gad and Ram Zeevi of Direct Claims Brought Against Them in the Puerto Rico Action

The release language in the Plan only releases claims held by the Debtors or their bankruptcy estates. It does not release claims held by a non-debtor against another non-debtor. Accordingly, the claims held by the Cape Bruny Entities against Gad and Ram Zeevi were not released pursuant to the Plan.

The Movants nevertheless assert that the claims brought against them in the Puerto Rico Action are predicated on alter-ego, or veil piercing, principals and, as such, are claims of the

Debtors' estates, which were released pursuant to the Plan. *See* Motion pp. 13-18 (citing *In re Emoral*, 740 F.3d 875 (3d Cir. 2014)). This argument ignores the direct, personal claims brought against Gad and Ram Zeevi and inappropriately collapses all claims against them into an "alter-ego" bucket. It is clear from the relevant pleadings in the Puerto Rico Action that there remain numerous direct claims against Gad and Ram Zeevi that are not, and never have been, property of the bankruptcy estate and have not been released or waived under the Plan.

As set forth in the Third-Party Complaint, because the Incident may have been caused in whole, or in part, by the acts, omissions, or culpable conduct of the Third-Party Defendants, the Plaintiffs/Claimants must assert their claims (the "Limitation Claims") against the Third-Party Defendants, and the Third-Party Defendants must file responsive pleadings to all Limitation Claims pursuant to Fed. R. Civ. P. 14(c). Third-Party Complaint, ¶ 30. The Limitation Claims will then proceed as if the Plaintiffs/Claimants had sued the Third-Party Defendants directly. *Id.* As noted in the Third-Party Complaint, Plaintiffs/Claimants have generally alleged the following as to Gad and Ram Zeevi:

> As to Gad Zeevi and Ram Zeevi the Plaintiffs/Claimants have made allegations, among others, that they were the alter egos of the various CPC/CPR related firms and entities which owned, operated and controlled the Gulf Oil Facility, and are thus vicariously liable for the negligence and fault of CPC/CPR with respect to the "Gulf Oil Facility."
>
> In addition to, and separate from, the above, Ram Zeevi and Gad Zeevi were the chief executives, managers, supervisors and overseers of the policy, operations and day-to-day workings of the "Gulf Oil Facility," **and in this they were directly and personally negligent, responsible and liable for the condition and operational deficiencies of the "Gulf Oil Facility" on October 23, 2009**.

Third-Party Complaint, ¶ 36 (emphasis added).

Accordingly, Plaintiffs/Claimants have asserted against Gad and Ram Zeevi claims premised on an alter-ego theory of liability as well as direct claims. These latter claims,

premised on the acts and omissions of Gad and Ram Zeevi do not require a finding that Gad or Ram Zeevi and Debtors were alter-egos of one another to impose liability.[3]

The direct claims asserted against Gad and Ram Zeevi by numerous Third-Party Defendants, and that give rise to the allegations in paragraph 36 of the Third-Party Complaint filed in the Limitation of Liability Action, are personal to the respective claimants and, as such, those claims cannot be properly characterized as general claims belonging to the Debtors' estates. Contrary to the Movants' assertions, such claims were not released under the Plan and may be pursued against Gad and Ram Zeevi in the Puerto Rico Action and elsewhere.

### C. The Alter-Ego Claims Against Gad and Ram Zeevi Are Not Property of the Debtors' Estates and Any Questions as to Applicable Non-Bankruptcy Law is Most Appropriately Determined by the District Court in Puerto Rico

The Movants argue that alter ego claims asserted against them in the Puerto Rico Action were property of the Debtors' estates and, as such, were released pursuant to the Plan. In making

---

[3] By way of example, Third-Party Defendant Antares Oil Services, LLC ("Antares") has asserted cross-claims against Gad and Ram Zeevi alleging liability under an alter-ego theory as well as direct liability for the Zeevies' alleged negligence:

> Crossclaim Defendant Gad Zeevi . . . at all material times was the chief executive, manager, and/or person in direct control of the operations of the CAPECO facility located in Bayamón, Puerto Rico. Gad Zeevi was the alter ego of the various CAPECO/CPR related firms and entities and, as such, is vicariously liable for the negligence and fault of CAPECO and CPR with respect to the CAPECO facility. In addition, as the chief executive, manger, supervisor, and overseer of the polices, operations, and day-to-day workings of the CAPECO facility, he is also directly and personally negligent, responsible, and liable for any damages suffered by the plaintiffs/claimants as a result of the sub-standard condition and operational deficiencies of the CAPECO facility on October 23, 2009. Consequently, Antares is entitled to contribution and/or indemnity from Gad Zeevi.

*See* Antares Oil Services LLC's Answer to Petitioners' Amended Rule 14(c) Third-Party Complaint, Counterclaims, and Cross-Claims (D. P.R., Case No. 09-cv-02092-FAB, D.I. No. 983 (filed April 28, 2014)), attached as Exhibit C,¶ 14.

Antares asserts nearly identical claims against Ram Zeevi. *See id.*, ¶ 16. Similarly, Third-Party Defendants AOT Limited and Astra Oil Company LLC assert identical cross-claims against Gad and Ram Zeevi. *See* Answer, Counterclaims, and Crossclaims of AOT Limited and Astra Oil Company LLC (D. P.R., Case No. 09-cv-02092-FAB, D.I. No. 943 (filed April 28, 2014)), attached as Exhibit D, ¶¶ 19 and 21.

this argument they rely primarily upon the holding of *In re Emoral, Inc.*, 740 F.3d 875, wherein the Court of Appeals for the Third Circuit held that successor liability claims asserted under the state laws of New Jersey and New York constitute property of the bankruptcy estate. As noted by the Third Circuit in *Emoral*, "To determine whether the . . . cause of action . . . constitute[s] property of [the] . . . bankruptcy estate, we must examine the nature of the cause of action itself." *Id.* at 779. To engage in this examination, applicable nonbankruptcy law must be considered. For example, undoubtedly, the Third Circuit's holding would have been different if it were applying the alter ego laws of the states of Michigan or Arkansas, where courts have held that alter ego claims are not property of the estate because under the applicable state law a subsidiary cannot proceed against a parent on an alter ego theory. *See In re RCS Engineered Prods. Co, Inc.*, 102 F.3d 223, 226 (6th Cir. 1996) ("Since it is axiomatic that one cannot commit a fraud or wrong against oneself, a subsidiary would never be able to satisfy the standard for disregarding corporate identity under Michigan law."); *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987) ("Because the corporate entity will be disregarded under Arkansas law only if it has been abused to the detriment of a third person, and because the nature of the alter ego theory of piercing the corporate veil makes it one personal to the corporate creditors rather than the corporation itself, it is axiomatic that the claim does not become property of the estate . . . ."). In the Puerto Rico Action, it is unfathomable that either New York or New Jersey law would apply to the claims. Therefore, the specific holding of *Emoral* does not apply to these facts.

Accordingly, a determination of whether the underlying claims constitute property of the estate and the applicability of the release in the Plan requires a determination of the underlying applicable non-bankruptcy law. In light of the hundreds of claims asserted in the Puerto Rico

Action, thousands of parties and the complicated disputed facts surrounding those claims, it would be wholly inappropriate for the Delaware Bankruptcy Court to determine the applicable non-bankruptcy law. In doing so, the Delaware Bankruptcy Court would be improperly usurping the authority and jurisdiction of the District Court in Puerto Rico. Accordingly, it would be inappropriate for the Delaware Bankruptcy Court to grant the requested relief with regard to the Cape Bruny Entities and the claims asserted in paragraph 36 of the Third-Party Complaint. To the extent they deem it appropriate, the Movants should, as they already have numerous times, simply assert the Plan's release as a defense in the Puerto Rico Action. *See* Answers filed by Gad and Ram Zeevi (D. P.R., Case No. 09-cv-02092-FAB, D.I. Nos. 959-963 (answers filed by Gad Zeevi) (filed April 28, 2014)) and (D. P.R., Case No. 09-cv-02092-FAB, D.I. Nos. 965-969 (answers filed by Ram Zeevi) (filed April 28, 2014)).

Assuming, *arguendo*, that the Delaware Bankruptcy Court decides that it would be appropriate for it to determine the appropriate applicable nonbankruptcy law with regard to these claims and the applicability of the release in the Plan, a course of action that the Cape Bruny Entities vehemently oppose, the Bankruptcy Court should determine that the Claims asserted in paragraph 36 of the Third-Party Complaint survive in their entirety and have not been released. This is because the applicable non-bankruptcy law under these circumstances would support a finding that the veil-piercing remedy is reserved to aggrieved third-parties and thus could not be property of the Debtors' estates. *See, e.g., McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994) (noting the equitable remedy of veil-piercing doctrine can be invoked "only where equity requires the action to assist a third party" and "lies with third parties") (citations omitted).

It is well-settled that when a federal court, such as the District Court in Puerto Rico, is sitting in admiralty, any alter ego claim ancillary to the maritime claim will be governed by

federal common law. *See Pink Goose (Cayman) Ltd. v. Sunway Traders LLC*, No. 08-2351, 2008 WL 4619880, *2 (S.D.N.Y. Oct. 17, 2008) ("[A]lter-ego theories of liability are prima facie admiralty claims so long as the underlying claim arose in admiralty."); *United States v. Afram Lines (Int'l), Inc.*, No. 91-1062, 1997 WL 423063, *1 (S.D.N.Y. July 29, 1997) (applying federal common law to an alter ego claim where the underlying contract at issue was a maritime contract); *Holborn Oil Trading Ltd. and Interpetrol Bermuda Ltd.*, 774 F. Supp. 840, 844 n.4 (S.D.N.Y. 1991) (noting that the court "clearly ha[d] the power to pierce the corporate veil when sitting in admiralty"). Notwithstanding the foregoing, particularly where federal common law has not previously addressed an issue related to alter ego liability, federal courts sitting in admiralty may look towards state law as a persuasive source when analyzing an alter ego claim. *See Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*, 575 F. Supp. 1442, 1446 (E.D. Tex. 1983). This is most frequently the case where diversity jurisdiction or additional state law claims are alleged in addition to admiralty jurisdiction. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457-60 (2d Cir. 1995); *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1389-92 (7th Cir. 1994); *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988).

It is indisputable that the District Court's jurisdiction in the Limitation of Liability Action is premised on admiralty law as that action involves admiralty and maritime claims pursuant to and within the meaning of Rule 9(h) of the Fed. R. Civ. P. and 28 U.S.C. § 1333. Accordingly, any claims before that court founded on alter ego liability must be examined through the lens of federal common law, where available. *See Holborn Oil*, 774 F. Supp. at 844 ("Federal Courts sitting in admiralty must apply federal common law when examining corporate identity."). Courts applying federal law to alter ego claims have not, based on our review of applicable precedent, addressed the issue of whether a corporation may pierce its own veil; that is, whether

alter ego claims are a remedy available only to third parties that have suffered a harm or loss. In the absence of precedential federal common law, it is clear that the Puerto Rico District Court, before whom this issue has already been raised numerous times by Gad and Ram Zeevi, is the court most appropriately charged with determining the applicable standard, which will affect so many parties in the Puerto Rico Action. Any separate ruling by the Bankruptcy Court on this issue will be an usurpation of the District Court's jurisdiction and authority and further risk inconsistent results that will interfere with the adjudication of the Puerto Rico Action.

### D. The Bankruptcy Court Lacks Jurisdiction Over This Matter

The limited jurisdiction of this Court prevents its determination of this matter, the outcome of which only impacts non-debtor parties and therefore cannot "conceivably have any effect on the estate being administered in bankruptcy." *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). Gad and Ram Zeevi allege that the Plan's release provisions absolve them from liability related to any alter ego claims asserted against them in the Puerto Rico Action. As discussed, *supra*, whether these alter ego claims were "owned" by the Debtors is a question of applicable non-bankruptcy law. A determination that these claims did not belong to the Debtors (and therefore were not released) will have no more or less impact on the Debtors' estates than if they were released. Because resolution of this matter will not, and cannot, affect the Debtors' estates, there is not the requisite nexus to these bankruptcy cases to give this Court "related to" jurisdiction post-confirmation. *See, e.g., In re Resorts Int'l, Inc.*, 372 F.3d 154, 169 (3d Cir. 2004). Accordingly, this Court lacks jurisdiction over the Motion under 28 U.S.C. § 1334, or otherwise.

## III. CONCLUSION

For the foregoing reasons, the Cape Bruny Entities respectfully request that the Court find it lacks jurisdiction to rule on the Motion. In the event the Court finds such jurisdiction exists, the Cape Bruny Entities request that the Court enter an Order (i) denying the Motion or, alternatively, expressly permitting the Cape Bruny Entities and other non-settling parties in the Puerto Rico Action to pursue their claims against Gad and Ram Zeevi; and (ii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 30, 2014

REED SMITH LLP

By: /s/ Richard Robinson

Richard Robinson (No. 5059)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Email: rrobinson@reedsmith.com

Christopher Lynch (CL-3290)
599 Lexington Avenue
22nd Floor
New York, NY 10022
Email: clynch@reedsmith.com

Counsel for Cape Bruny Tankschiffarts GmbH and Co. KG and Cape Bruny Shipping Company Ltd.

**CERTIFICATE OF SERVICE**

I, Christopher Lynch, an attorney, certify that on May 30, 2014, I filed a the foregoing **Opposition of Cape Bruny Tankschiffarts Gmbh and Co. KG and Cape Bruny Shipping Company Ltd. to Motion of Gad and Ram Zeevi to Enforce Plan Release and the Settlement Agreement** (the "Opposition") with the United States Bankruptcy Court for the District of Delaware, and electronically served interested parties by operation of the Courts CM/ECF system. Additionally, I caused a copy of the Opposition to be served by Hand Delivery to the Movants counsel at the address below:

John L. Bird, Esq.
Fox Rothschild LLP
Citizens Bank Center
919 North Market Street
Suite 300
Wilmington, DE 19899

/s/ Christopher Lynch