## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| CARIBBEAN PETROLEUM CORP., *et al.*, | Case No. 10-12553 (KG)<br>Jointly Administered |
| Debtors. | **Related to Docket Nos.: 2057, 2081, 2084, 2085, 2088, and 2089** |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF GAD AND RAM ZEEVI'S MOTION TO ENFORCE PLAN RELEASE AND THE SETTLEMENT AGREEMENT

L. John Bird (No. 5310)
FOX ROTHSCHILD LLP
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, Delaware 19801-2323
Telephone:    (302) 654-7444
Facsimile:    (302) 656-8920
– and –

Yann Geron
Oksana G. Wright
100 Park Avenue, Suite 1500
New York, New York 10017
Tel:    (212) 878-7930
Fax:    (212) 692-0940

ACTIVE 25904002v2

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I.    The Tort Plaintiffs Released the Zeevis in the Settlement Agreement and They Conceded This Bankruptcv Court's Jurisdiction ........................................... 2

    II.    The Objectants' Alter Ego Claims Against The Zeevis In The Puerto Rico Action Were Property Of The Debtors' Estates And The Debtors Released Such Claims Under The Confirmed Plan................................................................. 5

CONCLUSION ..................................................................................................................... 10

ACTIVE 25904002v2

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*2632 Realty Dev. Corp. v. 299 Main St.*,
   LLC, 94 A.D.3d 743, 941 N.Y.S.2d 252 (2d Dep't 2012) ........................................................4

*Bernberg v. Health Management Systems, Inc.* (*In re HHL Financial Services, Inc.*),
   No. 97-398 (SLR), 2001 WL 34367298 (Bankr. D. Del. June 5, 2001)...............................7, 8

*In re Emoral*,
   740 F. 3d 875, 878 (3d Cir. 2014)...................................................................................6, 7, 9

*In re Enron Corp.*,
   No. 01 B 16034(AJG), 2003 WL 1889040 (Bankr. S.D.N.Y. Apr. 17, 2003) .........................8

*In re Keene Corp.*,
   164  B.R. 844, 849 (Bankr. S.D.N.Y. 1994). ..........................................................................6

*In re OODC, LLC*,
   321 B.R. 128 (Bankr. D. Del. 2005) ........................................................................................8

*Koch Ref. v. Farmers Union Cent. Exch., Inc.*,
   831 F.2d 1339 (7th Cir. 1987) ..................................................................................................8

*Matter of P.R. Hotel Corp.*,
   111 B.R. 22 (Bankr. D. Puerto Rico 1990) ...............................................................................8

*McCarthy v. Azure*,
   22 F.3d 351 (1st Cir. 1994).......................................................................................................9

*Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*,
   No. Civ. 19760, 2004 WL 415251 (Del. Ch. Mar. 4, 2004)....................................................6

*Murray v. Miner*,
   876 F.Supp. 512 (S.D.N.Y. 1995) .......................................................................................7, 8

*Sonne v. Sacks*,
   No. Civ. 4416, 1979 WL 178497 (Del. Ch. June 12, 1979) .....................................................3

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
   884 F.2d 688 (2d Cir. 1989)......................................................................................................8

*West Coast Opportunity Fund, LLC v. Credit Suisse Securities (USA), LLC*,
   12 A.3d 1128 (Del. Sup. 2010) .................................................................................................3

*Westchester County Corr. Officers Benevolent Assn., Inc. v County of Westchester*,
   99 A.d.3d 998, 953 N.Y.S.2d 623 (2d Dep't 2012)..................................................................4

ii

**OTHER AUTHORITIES**

William Meade Fletcher, Fletcher Cyclopedia of The Law of Corporations § 41.10 .....................4

Gad Zeevi and Ram Zeevi (the "Zeevis"), directors and/or officers of the above-captioned debtors (collectively, the "Debtors"), by their attorneys, Fox Rothschild LLP, submit this reply to the Opposition of Cape Bruny Tankshiffarts GmbH KG and its affiliates ("Cape Bruny") [D.I. 2085], the Limited Objection of Intertek USA, Inc. ("Intertek") [D.I. 2081], and Tort Plaintiffs[1], Opposition [D.I. 2084], respectively, to the Zeevis's Motion to Enforce [D.I. 2057] (the "Motion"), and in further support of such Motion, hereby respectfully submit as follows.

## PRELIMINARY STATEMENT

Tort Plaintiffs admit that they released the Zeevis in the Settlement Agreement, but argue, without any factual or legal support, that they did not release the Zeevis "as individuals for their own individual torts committed against the Tort Plaintiffs." As evidenced by the language of the Fourth Amended Complaint, the Tort Plaintiffs' claims asserted against the Zeevis in the Puerto Rico Action are pure *alter ego* claims. If these claims are arguably anything other than *alter ego* claims, at most they may be seen as claims against the Zeevis for actions taken in their official capacities as officers and directors of the company, not individually. Under the plain language of the Settlement Agreement, which does not contain any conditions or reservations, the Tort Plaintiffs released the Zeevis from all claims (not just *alter ego* claims), including any claims relating to the explosions.

Cape Bruny and Intertek do not dispute that Tort Plaintiffs fully released the Zeevis in the Settlement Agreement. However, they seem to argue that they asserted both *alter ego* and direct claims against the Zeevis. They further claim (as do Tort Plaintiffs) that their *alter ego* claims are not general, could not have been alleged by any creditor, and, therefore, did not constitute

---

[1] Defined terms are set forth in the Zeevi's Motion and are incorporated herein by reference. The Tort Plaintiffs, Cape Bruny, and Intertek are collectively referred hereto as "the Objectants".

1

property of the Debtors' estate.  This argument is belied by the fact that all three Objectants

allege essentially identical *alter ego* claims against the Zeevis arising from their alleged control

of the Debtors, thus demonstrating that these claims are not individualized to any one of the

Objectants, but rather, are generalized to the Debtors' creditor body.  Moreover, as held by the

majority of courts, including the Third Circuit, such claims constitute property of the debtor's

estate and could only be brought by the bankruptcy trustee or debtor-in-possession.  Any *alter

ego* claims existing against the Zeevis (which the Zeevis dispute vigorously), were property of

the Debtors' estates and were released under the Plan and the Confirmation Order.

As a result, for the reasons stated below, this Court should grant the Zeevis' motion and

enforce its Order confirming the Plan, as well as the Settlement Agreement, and compel the Tort

Plaintiffs to dismiss the Puerto Rico Action against the Zeevis with prejudice.

## ARGUMENT

### I.   The Tort Plaintiffs Released the Zeevis in the Settlement Agreement and They Conceded This Bankruptcy Court's Jurisdiction

The Tort Plaintiffs concede that they released the Zeevis in the Settlement Agreement

("The Tort Plaintiffs released the Zeevis in their capacity as officers and directors"), but try to

distinguish this release by arguing that they did not release the Zeevis "as individuals for their

own individual torts committed against the Tort Plaintiffs."  *See* Tort Pls Opp. at p. 23.  In

support, the Tort Plaintiffs quote extensively from an examiner's report, dated October 31, 2002,

in a prior case commenced in 2001 (ten years prior to this case), and from their own Fourth

Amended Complaint.

The examiner's report in the prior case predates the explosion by seven years, and

predates this case by eight years.  Upon information and belief, the report does not even address

Ram Zeevi.  The examiner's report is plainly irrelevant and has no probative value to the Motion.

2

Contrary to their conclusory statements, the language which the Tort Plaintiffs quote at length from their Fourth Amended Complaint actually proves the point that the claims against the Zeevis are pure *alter ego* claims which were released under the Settlement Agreement and pursuant to the Plan.   Without exception, each of the allegations in the Fourth Amended Complaint against the Zeevis is aimed at their conduct as officers or directors of the Debtors. There are plainly no direct tort allegations in the Tort Plaintiffs' Amended Complaint as to the Zeevis individually.   *See, e.g.*, Tort Pls Opp. at p. 8 (claiming that the Zeevis control the Debtors without adherence to normal corporate formalities), p. 11 (alleging that the Zeevis controlled operations of the Debtors); p.14 (allegations that "Mr. Zeevi…controls [the Debtors] without adherence to normal corporate formalities"), p.16 (alleging that Mr. Zeevi disregarded the corporate form of the Debtors).

The very core of the Tort Plaintiffs' allegations against the Zeevis sounds in *alter ego* claims.   *Compare* Fourth Amended Complaint ¶3(e) and (g) (claiming that the Zeevis "[have] disregarded the corporate formalities of [the Debtors] for [their] own benefit, which makes [them] personally liable"), *with Sonne v. Sacks*, No. Civ. 4416, 1979 WL 178497 (Del. Ch. June 12, 1979) ("To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud."); *see also West Coast Opportunity Fund, LLC v. Credit Suisse Securities (USA), LLC*, 12 A.3d 1128, 1132 (Del. Supr. 2010) ("The alter ego theory applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased. Under the alter ego doctrine, when a corporation is the mere

3

instrumentality or business conduit of another corporation or person, the corporate form may be disregarded.") (quoting William Meade Fletcher, Fletcher Cyclopedia of The Law of Corporations § 41.10).

As admitted by the Tort Plaintiffs, Section 7 of the Settlement Agreement further provides that "the Tort Plaintiffs reserve their rights against any and all *other* parties to the [Puerto Rico Action]." Bird Dec., Exhibit 7 (emphasis added). As a result, pursuant to unambiguous language of the Settlement Agreement, the Tort Plaintiffs released the Debtors and the Zeevis from, among other things, all claims in the Puerto Rico Action, while reserving their right to pursue the action against numerous (over thirty) other parties, including Cape Bruny and Intertek, which are not mentioned in Section 7 of the Settlement Agreement.

Under the plain language of the Settlement Agreement, the Tort Plaintiffs released the Zeevis from all claims relating to the Explosions. Bird Dec., Exhibit 7. The Settlement Agreement does not contain any conditions or reservations as to the release of the Zeevis. Specifically, the Settlement Agreement does not provide that the Tort Plaintiffs did not release certain claims against the Zeevis. *Westchester County Corr. Officers Benevolent Assn., Inc. v County of Westchester*, 99 A.d.3d 998, 953 N.Y.S.2d 623 (2d Dep't 2012) ("When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations. Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms"); *see also 2632 Realty Dev. Corp. v. 299 Main St.*, LLC, 94 A.D.3d 743, 745, 941 N.Y.S.2d 252 (2d Dep't 2012) ("A court should not imply a term which the parties themselves failed to include").

ACTIVE 25904002v2

Notably, Cape Bruny and Intertek do not dispute the fact that the Tort Plaintiffs fully released the Zeevis in the Settlement Agreement. CB Opp. at 6 ("Tort Plaintiffs released any and all claims against…the Debtors' directors, officers, and employees."); *see also* Intertek Opp., ¶6.

Finally, the Tort Plaintiffs' claim that this Court does not have jurisdiction over this Motion is without merit. The Tort Plaintiffs expressly agreed to this Court's jurisdiction to enforce the Settlement Agreement. *See* Settlement Agreement, ¶9 ("Any dispute to this Settlement Agreement shall be resolved by the Bankruptcy Court or any other court having jurisdiction over the Bankruptcy Cases.").

Therefore, under the Settlement Agreement, the Tort Plaintiffs have released all claims against the Zeevis, and the further pursuit of any such claims is a violation of the Settlement Agreement, which is subject to this Court's jurisdiction.

## II. The Objectants' *Alter Ego* Claims Against The Zeevis In The Puerto Rico Action Were Property Of The Debtors' Estates And The Debtors Released Such Claims Under The Confirmed Plan

The Objectants allege that their *alter ego* claims against the Zeevis are not generalized but somehow individualized. Tort Pl Opp. at p. 23; CB Opp. at p. 11; and Intertek Opp. at pp. 8-9. The plain fact that all three Objectants allege same claims against the Zeevis evidences that such claims are general *alter ego* claims which are not specific to any one of the creditors. The Tort Plaintiffs (who allegedly suffered injuries as a result of the explosions), defendant Cape Bruny (owner of the vessel that was involved in the explosion and is now being sued by the Tort Plaintiffs), and defendant Intertek (a named defendant allegedly responsible for overseeing delivery of oil from Cape Bruny into the Debtors' tank farm) are not similarly-situated parties. Yet they allege same claims against the Zeevis, namely that the Zeevis, as directors and officers of the Debtors, were *alter egos* of the Debtors because they controlled the Debtors "without adherence to normal corporate formalities, reasonable internal controls, or due consideration of

5

the financial well-being of [the debtors]" and "disregarded the corporate formalities in order to serve [their] own interests or those of [their] organization as a whole without regard to the individual corporate entities of the involved entities." *See* Fourth Amended Complaint (Bird Dec., Exhibit 1), §3(e) and (g); *see also* Intertek's Answer, Counterclaims and Cross-Claims (D.I. 2081-1), ¶¶23 and 25 (alleging general *alter ego* claims against the Zeevis); *see also* CB's Amended Rule 14(c) Third Party Complaint, ¶¶11-12; 36.

Each and all of the Objectants claims that the Zeevis are liable for the Debtors' obligations to them for allegedly running the Debtors without adhering to the corporate form. *See, e.g.,Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical,* 2004 WL 415251, at *7 (Del. Ch. Mar. 4, 2004) (holding that "[f]or this Court to pierce the corporate veil or hold that [a party] is the alter ego ... [the party seeking to pierce the corporate veil] must prove that some 'fraud or injustice' would be perpetrated through misuse of the corporate form"). Such claims are indisputably based on the *alter ego* theory, and are the classic 'generalized' claims belonging to the Debtors' estate. As a matter of law, such generalized *alter ego* claims constitute property of the Debtors' estate "because the facts giving rise to the cause of action were not specific to [Objectants] but common to all creditors," and because, if Objectants were to succeed in establishing that the Debtors were mere "alter egos" of the Zeevis, this would benefit the Debtors' creditors generally. *See In re Emoral*, 740 F. 3d, 875, 878 (3d Cir. 2014); *see also In re Keene Corp.*, 164  B.R. 844, 849 (Bankr. S.D.N.Y. 1994) ("[T]he remedy against a successor corporation for the tort liability of the predecessor is, like the piercing remedy, an equitable means of expanding the assets available to satisfy creditor claims. The class action plaintiffs that invoke it allege a general injury, their standing depends on their status as creditors of [the debtor], and their success would have the effect of increasing the assets available for distribution

6

to all creditors."); *Buildings by Jamie,* 230 B.R. at 43 (holding that a debtor's individual creditors lacked standing to bring an alter ego veil-piercing cause of action seeking recovery from non-debtor third-party defendants, because that cause of action constituted property of the bankruptcy estate).

For example, if the Tort Plaintiffs were successful in establishing their alleged *alter ego* claims against the Zeevis (i.e. that the Zeevis "disregarded corporate formalities" and fraudulently ran the Debtors for their "personal benefit"), this would directly benefit Cape Bruny, Intertek and all other alleged creditors of the Debtors in gaining their own claims against the Zeevis. By contrast, in order to pursue an *individual* (direct and non-estate) action, creditors must allege some wrong against them that is distinct from that suffered by the Debtors, which the Objectants failed to do. *See Bernberg v. Health Management Systems, Inc.* (*In re HHL Financial Services, Inc.*), No. 97-398 (SLR), 2001 WL 34367298, at *2 (Bankr. D. Del. June 5, 2001) ("[I]t would appear that the Third Circuit would find that plaintiffs at bar, although creditors, are required to allege some wrong distinct from that suffered by the corporation in order to pursue an individual action.").

There is nothing "personal" about the Tort Plaintiffs' claims, nor have they sued the Zeevis in any other capacity than officers and directors of the Debtors. Similarly, Intertek or Cape Bruny's contribution claims are premised on the general *alter ego* liability and therefore must be dismissed as well.[2]

Further, the argument by each of the Objectants that *In re Emoral* decision does not apply is without merit. *In re Emoral* does not only reflect the prevailing law in this Circuit (in

---

[2] To the extent Cape Bruny and Intertek alleged any direct claims for common law contribution against the Zeevis (which they did not), such claims shall be decided in the Puerto Rico Action. However, such claims, which are premised on establishing the Zeevis' liability to the Tort Plaintiffs first, will clearly fail.

7

particular in Delaware where the Debtors were incorporated), but also federal bankruptcy law (applicable in Puerto Rico and Delaware), which provides that *alter ego* allegations constitute "general claims" that could only be raised by the bankruptcy trustee on behalf of all creditors.[3] *See id.* (agreeing with the Second Circuit that "when examining common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion," where a claim is "a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."); *see also In re OODC, LLC*, 321 B.R. 128, 136 (Bankr. D. Del. 2005) (noting that "most courts have found that the trustee in bankruptcy has standing to bring successor liability (or alter ego) suits on behalf of all creditors."); *see also St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 703–04 (2d Cir. 1989) (same); *Koch Ref. v. Farmers Union Cent. Exch., Inc.,* 831 F.2d 1339, 1350 (7th Cir. 1987) (same); *In re Enron Corp.*, No. 01 B 16034(AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) ("Based on the fact that Delaware law allows a subsidiary to maintain an action against a corporate parent, courts have found that a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil"); *Murray v. Miner*, 876 F. Supp. 512, 517 (S.D.N.Y. 1995) ("[F]or purposes of applying federal bankruptcy law, Delaware courts would permit a debtor corporation to 'assert[ ] an alter ego claim to pierce its own corporate veil.'"); *see also Matter of P.R. Hotel Corp.*, 111 B.R. 22, 25 (Bankr. D. Puerto Rico 1990) (bankruptcy trustee has standing to invoke the "alter ego" claims against the principal of the debtor).

---

[3] Delaware law is the applicable state law as the Debtors were incorporated and filed for bankruptcy in Delaware. *See, e.g., Murray v. Miner*, 876 F.Supp. 512, 516 (S.D.N.Y. 1995) (finding that Delaware law is governing the "alter ego" issues where place of incorporation was Delaware).

Moreover, there is no choice of law issue here because if certain states do not allow such general "alter ego" claims then the Objectants cannot bring them either.

Finally, the cases cited by the Objectants in support of their choice of law argument are inapposite. For example, decision in *McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994) cited by Cape Bruny (p.11) is based on New Hampshire and Illinois law.

The Tort Plaintiffs' claim that *In re Emoral* only applies to continuation liability is plainly controverted by the language of the Third Circuit's decision. *See, e.g., In re Emoral*, 740 F.3d 879 ("when examining common *claims against the debtor's alter ego* or others who have misused the debtor's property in some fashion," where a claim is "a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."); 881 ("most other courts have found that the trustee in bankruptcy has standing to bring successor liability (or *alter ego*) suits on behalf of all creditors") (quoting Delaware Bankruptcy Court's decision) (emphasis added).

Any finding that the *alter ego* claims were not released by the Debtors under the Plan would affect all the creditors of the estate, because then, the Plan release would be subject to collateral attack in different courts by each of the creditors of the Debtor, as Cape Bruni, Intertek and the Tort Plaintiffs are seeking to do. The release was granted by this bankruptcy court, for good and valuable consideration from the Zeevis, in a Plan that is binding on all creditors on notice, including the Objectants. In approving the releases in the Plan Confirmation Order, the bankruptcy court evaluated the consideration given by the Zeevis to the debtors and their creditors. The Plan confirmation order contains an injunction barring further actions by creditors against the released parties or in violation of the Plan. The Plan confirmation order expressly

preserves jurisdiction in the bankruptcy court to enforce the terms of the Plan.  This court must

enforce the Plan and stop collateral attacks on its confirmation order sought by these parties.

## **CONCLUSION**

For all the foregoing reasons, movants Gad and Ram Zeevi respectfully request that this

Court grant the Zeevis motion to enforce in its entirety.

Dated: June 5, 2014
      Wilmington, Delaware      **FOX ROTHSCHILD LLP**

                          */s/ L. John Bird*
                          L. John Bird (No. 5310)
                          Citizens Bank Center
                          919 North Market Street, Suite 300
                          Wilmington, Delaware 19801
                          Telephone:   (302) 654-7444
                          Facsimile:    (302) 656-8920
                          Email:  lbird@foxrothschild.com

                          – and –

                          Yann Geron
                          Oksana G. Wright
                          100 Park Avenue, Suite 1500
                          New York, New York 10017
                          Tel:     (212) 878-7930
                          Fax:     (212) 692-0940
                          Email: ygeron@foxrothschild.com
                          owright@foxrothschild.com

                          *Counsel to Gad Zeevi and Ram Zeevi*

ACTIVE 25904002v2