IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re ) | | Chapter 11 |
| ) | | |
| CARIBBEAN PETROLEUM CORP., et al., ) | | Case No. 10-12553(KG) |
| ) | | (Jointly Administered |
| Debtors. ) | | |
| ) | | **Re Dkt No. 2057** |

## MEMORANDUM OPINION

The Court is opining on the post-confirmation Motion of Gad and Ram Zeevi to Enforce Plan Release and the Settlement Agreement (the "Motion"). D.I. 2057. The threshold issue is the Court's post-confirmation jurisdiction to adjudicate matters which do not in any way, shape or form relate to or impact the Debtors or the Debtors' estate. The Court will address the merits of the issue only if it has jurisdiction and finds that it is the appropriate tribunal to reach the substance of the dispute.

## BACKGROUND FACTS

The Debtors, Caribbean Petroleum Refining, L.P., Caribbean Petroleum Corporation and Gulf Petroleum Refining (Puerto Rico) Corporation, all Delaware legal entities (collectively, "Debtors" or "Caribbean"), filed for bankruptcy on August 12, 2010. The bankruptcy was necessitated by horrific explosions and fire involving twenty-one Caribbean storage tanks that occurred at its facility in Bayamon, Puerto Rico on October 23, 2009 (the "Catastrophe"). The Catastrophe ended Caribbean's operations and resulted in the bankruptcy.

Prior to the bankruptcy filing, parties filed numerous actions in Puerto Rico against Caribbean to recover damages for injuries and losses they suffered as a result of the Catastrophe (the "Tort Plaintiffs" and the "Tort Actions"). The Tort Plaintiffs have exhaustively pursued their claims first in this Court and now in the United States District Court for the District of Puerto Rico (the "Puerto Rico Court,"), The Honorable Francisco Besosa, District Court Judge, presiding. The Tort Plaintiffs are before the Puerto Rico Court because this Court lifted the automatic stay to enable them to proceed. See Order Granting Stay Relief for Consolidated Actions Pending in Puerto Rico, dated January 13, 2014 (D.I. 2012).

Gad Zeevi and Ram Zeevi (the "Zeevis") are seeking to enforce the releases contained in the Fourth Amended Joint Plan of Liquidation (the "Plan") and in a settlement agreement (the "Settlement Agreement"), dated September 30, 2013, between the Tort Plaintiffs and the Liquidation Trustee. The Zeevis are former directors (and Gad Zeevi the former President) of Caribbean.

In the Plan which the Court confirmed by Order, dated May 9, 2011, the Court approved the following releases,

> [T]he Debtors . . . shall completely, conclusively, absolutely, unconditionally, irrevocably, and forever release the Released Parties from any and all Claims ... obligations, damages, demands ... suits, Causes of Action ... based in whole or in part on any act or omission ... , whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part upon

>any act, omission, transaction, agreement, event, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtors. . . .

Plan, Section 11.6 (a). "Released Parties," as defined in the Plan, includes "Guarantors", "Guarantor Affiliates" and "officers and directors" of Caribbean in such capacity. Plan, Section 1.1. Gad Zeevi is included in the Plan as a Guarantor and Ram Zeevi is included among the Guarantor Affiliates. Plan, Section 1.1. Both were officers and/or directors. The Plan enjoins holders of claims from pursuing causes of action released under the Plan. Plan, Section 11.7.

In the Motion, the Zeevis are seeking to enforce their releases against the Tort Plaintiffs. The Tort Plaintiffs have objected to the Motion, as have Intertek USA, Inc. ("Intertek") and Cape Bruny Tankschiffarts GMBH and Co. KG and Cape Bruny Shipping Company Ltd. (collectively, the "Cape Bruny Cos."). The relationship of Intertek and the Cape Bruny Cos. To the Tort Actions and the bases for their objections to the Motion are stated below.

Tort Plaintiffs' Objection

The claims in the Tort Action are individualized claims which belong to the Tort Plaintiffs and not to the Debtors' estates. Therefore, the Debtors, through the Plan, could not release the Zeevis from such claims. Similarly, the Tort Plaintiffs did not release the Zeevis in the Settlement Agreement. The Tort Plaintiffs also challenge the jurisdiction of the Court to dismiss personal injury and wrongful death claims.

### Intertek's Objection

Intertek has interposed a limited objection to protect its contribution and/or indemnity claims against the Zeevis. It argues that its claims were not released by the Plan, did not constitute property of the Debtors' estate and were not included in the Settlement Agreement to which Intertek was not a party.

### Cape Bruny Cos.' Objection

The Cape Bruny Cos. owned the ship which was in the process of discharging gasoline at the Debtors' facility when the explosion occurred. The Cape Bruny Cos. are named defendants in the Tort Actions, and have filed a Complaint for Exoneration From or Limitation of Liability Act of 1851, 46 U.S.C. Sections 30501 - 30512 in the Puerto Rico Court. The essence of this action is to establish that the Cape Bruny Cos. are not liable or that their liability is limited to the value of the ship and its freight.

## **JURISDICTION**

The Court will begin its analysis of the Motion with the argument contained in each of the objections that the Court does not have jurisdiction to determine the applicability of the releases because the decision will only affect non-debtor parties and there is no conceivable effect on the administration of the bankrupt estate. In the Settlement Agreement, the Tort Plaintiffs dismissed Debtors as defendants in the Tort Actions. Accordingly, the Debtors are not involved in any way and the outcome of the Tort Actions and the impact on the parties to the Motion will not touch the Debtors' estate. That being so, it would at first

glance appear that the cases from the Third Circuit Court of Appeals which instruct against a bankruptcy court exercising jurisdiction in such instances should apply here.  *See*, *e.g.*, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  The Third Circuit even more directly cautioned against a bankruptcy court exercising its jurisdiction in the absence of a debtors' interest in the outcome of the dispute in *In re Resorts Int'l, Inc.* 372 F.3d 154, 169 (3d Cir. 2004).  There, the Third Circuit ruled that an accounting malpractice action brought by a litigation trust established under a confirmed plan did not come within the bankruptcy court's post-confirmation "related to" jurisdiction and upheld the bankruptcy court's dismissal of the action for lack of subject matter jurisdiction (and, in turn, reversed the district court's ruling that the bankruptcy court had jurisdiction).  The Third Circuit thoroughly reviewed many precedents addressing a bankruptcy court's jurisdiction over post-confirmation disputes and found that the malpractice claims at issue did not constitute claims with the requisite nexus to the bankruptcy case and therefore did not qualify for the bankruptcy court's "related to" jurisdiction.  The Third Circuit found that:

> [T]his proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process.  The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan ... and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. *Id.* at 169.

The Court, of course, readily accepts the Third Circuit's statement of the law. However, the matter at issue is not the same as in *Resorts* or other cases cited therein. Here, the Court is being asked to interpret and grant relief based on terms contained in the Plan which it considered and confirmed, namely, releases to the Zeevis. The Third Circuit in *Resorts* distinguished its ruling from what confronts the Court. As the Third Circuit wrote:

> Resolution of this matter will not require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement. Whether Price Waterhouse was negligent or breached its contract will not be determined by reference to those documents.

*Id.* at 170. The Zeevis are not asking the Court to address the merits of the claims of the Tort Plaintiffs, Intertek and Cape Bruny Cos. The issues before the Court involve releases the Court granted. Determining the applicability of the releases to the Tort Actions and the related claims of Intertek and Cape Bruny Cos. requires the Court to "interpret or construe the Plan" (*Id.*) and the Court is therefore satisfied that it has jurisdiction to make the assessment.

In a related argument, the Tort Plaintiffs suggest that the Court should defer to the Puerto Rico Court which, the Tort Plaintiffs argue, is fully capable of deciding whether the Zeevis should have the benefit of the releases in the Plan. The Court certainly has the utmost respect for the Puerto Rico Court, but is of the view that it would be inappropriate and an unwarranted imposition to defer to the Puerto Rico Court on the issues presented. It is the burden and province of this Court to interpret and, if appropriate, enforce this Court's

Confirmation Order. To be clear, this is not a situation in which a judge is jealously guarding his "turf." Rather, the judge is honoring his responsibility to litigants and another court to decide a dispute over language he approved.

As for the Settlement Agreement, the Court will defer to the Puerto Rico Court. The Court did not review or approve the Settlement Agreement, and also did not oversee its implementation. The *Resorts* rationale clearly applies.

## DISCUSSION

There is no question that the releases provided to the Zeevis pursuant to the Plan were and are proper. The question before the Court is not the propriety of the releases granted to the Zeevis, but their extent and scope and, specifically, whether the releases apply to the Tort Actions and the litigation interests of Intertek and/or the Cape Bruny Cos.

The Zeevis provided Debtors with substantial consideration in exchange for the releases, providing the justification for the Court approving the releases. This consideration included the Zeevis subordinating their guarantor claims and foregoing distribution; agreeing to pursue the collection of insurance proceeds on behalf of Debtors and contributing the proceeds for the benefit of creditors. The releases were proper, given the Zeevis' contributions which resulted in confirmation of the Plan. *See, e.g., In re Washington Mutual, Inc.*, 442 B.R. 341, 346, (Bankr. D. Del. 2011).

Whether those releases extend to the Tort Actions is an entirely different issue and the Court concludes that they do not. This is because the claims asserted in the Tort Actions were not property of Debtors' estate, despite the Zeevis assertions to the contrary.

The claims against the Zeevis in the Tort Actions are premised on claims of both alter ego liability and liability for wrongful actions which the Zeevis committed themselves. The Amended Complaint in the Tort Actions contains allegations that the Zeevis are liable for their control of Debtors and disregard of corporate formalities, i.e., as alter egos of Debtors; and also that the Zeevis were individually and directly negligent and that such negligence contributed to the Catastrophe and the resulting injuries.

The Zeevis contend that alter ego claims are general in nature and constitute property of Debtors' estate. They argue that creditors lack standing to assert claims that are property of a debtor's estate, and that property of the estate is defined broadly and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

For the proposition that the claims in the Tort Actions are property of Debtors' estate, the Zeevis rely heavily on a recent decision from the Third Circuit Court of Appeals in *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014). The Court must therefore discuss the decision at length.

In *Emoral*, the Third Circuit stated that it was determining "whether personal injury causes of action arising from the alleged wrongful conduct of a debtor corporation, asserted

8

against a third-party non-debtor corporation on a 'mere continuation' theory of successor liability under state law, are properly characterized as 'generalized claims' constituting property of the bankruptcy estate." *Id.* at 876. The bankruptcy court previously had held that the personal injury causes of action were not property of the estate but, instead, particular injuries as opposed to generalized injuries suffered by all of Emoral Inc's ("Emoral") creditors. Factually, Aaroma Holdings LLC ("Aaroma") had purchased certain assets from Emoral's bankruptcy and assumed certain liabilities of Emoral, a manufacturer of a chemical used in the food flavoring industry. Both Emoral and Aaroma were aware at the time of the purchase of potential claims against Emoral resulting from chemical exposure. The purchase agreement provided that Aaroma was not assuming any liabilities related to tort claims and was not purchasing Emoral's insurance coverage. Emoral filed for bankruptcy protection and thereafter Aaroma settled claims brought by the bankruptcy trustee. The trustee agreed to release Aaroma from any causes of action that belonged to Emoral's estate. The parties submitted the settlement to the bankruptcy court for its approval. The Tort Plaintiffs objected to the releases which they viewed as barring them from bringing claims against Aaroma for their personal injuries. The trustee and Aaroma thereafter added language to their settlement agreement, stating, "Nothing contained in this Order or in the Aaroma Settlement Agreement will operate as a release of, or a bar to prosecution of any claims held by any person which do not constitute Estate's Released Claims as defined ...." *Id.* at 877. When injured parties brought suit against Aaroma asserting that Aaroma was a "mere continuation" of Emoral,

Aaroma sought to enforce the release in the settlement agreement. The bankruptcy court denied Aaroma's request, finding that the plaintiffs were alleging "particular injury, not generalized injury suffered by all shareholders or creditors of Emoral." *Id.* at 878.

On appeal, the district court reversed, holding that the cause of action for successor liability was a "generalized" claim belonging to the estate. If the plaintiffs succeeded on its "mere continuation" argument, it would benefit the creditors of Emoral generally. *Id.*

On appeal, the Third Circuit affirmed the district court's ruling. The Third Circuit framed the issue succinctly as follows:

> To determine whether the Diacetyl Plaintiffs' cause of action against Aaroma constitutes property of Emoral's bankruptcy estate, we must examine the nature of the cause of action itself. While the Diacetyl Plaintiffs focus on the individualized nature of their personal injury claims against *Emoral*, we cannot ignore the fact, and fact it be, that their only theory of liability as against *Aaroma*, a third party that is not alleged to have caused any direct injury to the Diacetyl Plaintiffs, is that, as a matter of state law, Aaroma constitutes a "mere continuation" of Emoral such that it has also succeeded to all of Emoral's liabilities.

*Id.* at 879.

The Third Circuit, applying New York and New Jersey law, found that the factual allegations by the plaintiffs seeking to establish a successor liability cause of action did not state claims unique to the plaintiffs as opposed to all creditors of Emoral. The plaintiffs also failed to establish that their recovery based on successor liability would not benefit all of Emoral's creditors since Aaroma was a mere continuation of Emoral and therefore assumed

Aaroma sought to enforce the release in the settlement agreement. The bankruptcy court denied Aaroma's request, finding that the plaintiffs were alleging "particular injury, not generalized injury suffered by all shareholders or creditors of Emoral." *Id.* at 878.

On appeal, the district court reversed, holding that the cause of action for successor liability was a "generalized" claim belonging to the estate. If the plaintiffs succeeded on its "mere continuation" argument, it would benefit the creditors of Emoral generally. *Id.*

On appeal, the Third Circuit affirmed the district court's ruling. The Third Circuit framed the issue succinctly as follows:

> To determine whether the Diacetyl Plaintiffs' cause of action against Aaroma constitutes property of Emoral's bankruptcy estate, we must examine the nature of the cause of action itself. While the Diacetyl Plaintiffs focus on the individualized nature of their personal injury claims against *Emoral*, we cannot ignore the fact, and fact it be, that their only theory of liability as against *Aaroma*, a third party that is not alleged to have caused any direct injury to the Diacetyl Plaintiffs, is that, as a matter of state law, Aaroma constitutes a "mere continuation" of Emoral such that it has also succeeded to all of Emoral's liabilities.

*Id.* at 879.

The Third Circuit, applying New York and New Jersey law, found that the factual allegations by the plaintiffs seeking to establish a successor liability cause of action did not state claims unique to the plaintiffs as opposed to all creditors of Emoral. The plaintiffs also failed to establish that their recovery based on successor liability would not benefit all of Emoral's creditors since Aaroma was a mere continuation of Emoral and therefore assumed

all of Emoral's liabilities. The Third Circuit went on to write that "other courts applying New York and New Jersey law have held that state law causes of action for successor liability, just as for alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate," citing *In re Keene Corp.*, 164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994). The Third Circuit, discussing other similar holdings at length, found that corporate continuation claims belonged to the trustee to pursue. Finally, the Third Circuit held that because the personal injury claims belonged to the bankruptcy estate, they constituted released claims.

The *Emoral* decision creates an apparent but false impediment to the Tort Plaintiffs' claims against the Zeevis. This case is not *Emoral*. *Emoral* is based on a continuation, successor liability fact pattern. The case before the Court involves a liquidation in which all of the creditor claims in the bankruptcy have already been addressed. The concerns which the Third circuit raised in *Emoral* about creditors and shareholders of the successor corporation do not exist here. There are no creditors or shareholders to either benefit or suffer any harm from the results of the Tort Actions. Thus, the Third Circuit's concern expressed in *Emoral* for an innocent successor corporation and the rights of its creditors and shareholders does not exist here. Unlike the claims at issue against *Aaroma*, the acquiror, there is no continuity in management, shareholders, personnel, physical location, assets and general business operation. And here, unlike in *Emoral*, the Tort Plaintiffs are not seeking to enforce the rights or entitlements of the corporation, i.e., Debtors. The Tort Plaintiffs are

seeking to enforce their individual claims.  The Tort Plaintiffs are seeking recourse for their injuries with relief from any stay, an Order which the Zeevis did not oppose.  As *Emoral* makes clear, allegations based on "direct, particularized conduct and injury" in contrast to a mere continuation theory are not generalized and do not belong to the debtors' estate.  The claims brought by the Tort Plaintiffs are not claims which could have been brought by any creditor.  The claims for injuries raised in the Tort Action are thus personal, not generalized.

The limitation of the holding in *Emoral* is highlighted by the Third Circuit's definition of personal and generalized claims.  The Court explained that:

> In order for a cause of action to be considered "property of the estate,"
>
> the claim must be a "general one, with no particularized injury arising from it."  On the other hand, if the claim is specific to the creditor, it is a "personal" one and is a legal or equitable interest only of the creditor.  A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.

*Emoral*, 740 F.3d at 879, quoting from *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 169-70 (3d Cir. 2002).  Only the Tort Plaintiffs have an interest in the personal injury claims.

The Court's reasoning for the releases not barring the Tort Actions applies equally to Intertek and Cape Bruny Cos..  Intertek's claims for contribution and indemnity arise only after payment, if any, to the Tort Plaintiffs.  *Corning Glass Works v. Puerto Rico Water resources Authority, Inc.*, 396 F.2d 421, 423 (1st Cir. 1968).  Accordingly, any releases

which the Zeevis obtained under the Plan do not apply to Intertek's claims. Intertek's claims against the Zeevis are direct in nature. They are based on the direct involvement of the Zeevis in the actions resulting in the Catastrophe. Intertek's complaint for contribution alleges that the Zeevis were directly negligent and responsible for the Catastrophe. Intertek's claims will arise only if the Tort Plaintiffs obtain a judgment. Intertek's rights arise from payments it may make in the future, claims which Debtors did not own and therefore could not bring.

Cape Bruny Cos. are also covered by the Court's ruling on the right of the Tort Plaintiffs to pursue their claims in the Tort Actions. Like the Tort Plaintiffs, the Cape Bruny Cos. have brought both direct and alter ego premised claims against the Zeevis. For the reasons explained above relating to the Tort Plaintiffs, the Cape Bruny Cos.' claims did not belong to the Debtors' estate and were therefore not released in the Plan.

## CONCLUSION

The Motion is denied for the reasons stated. The Tort Plaintiffs, Intertek and the Cape Bruny Cos. may proceed with their actions in the Puerto Rico Court unimpeded by the Plan releases.

Dated: July 9, 2014

_____
KEVIN GROSS, U.S.B.J.